1  Marc Primo (SBN 216796)
   MPrimo@InitiativeLegal.com
2  Matthew T. Theriault (SBN 244037)
   MTheriault@InitiativeLegal.com
3  Jennifer Grock (SBN 245671)
   JGrock@InitiativeLegal.com
4  Initiative Legal Group LLP
   1800 Century Park East, 2nd Floor
5  Los Angeles, California 90067
   Telephone:  (310) 556-5637
6  Facsimile:  (310) 861-9051
   Attorneys for Plaintiff Summer York
7

8

9              **UNITED STATES DISTRICT COURT**

10     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12 | SUMMER YORK, individually, and on behalf of other members of the general public similarly situated, | Case Number: 08-CV-07919-GAF (PJWx) |

Plaintiff,

vs.

STARBUCKS CORPORATION, a Washington corporation, and STARBUCKS COFFEE COMPANY, a Washington corporation,

Defendants.

**AMENDED JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO INTERROGATORY NOS. 1 AND 3**

[Filed concurrently with the Notice of Motion and Motion; Declaration of Matthew Theriault; Declaration of Mark R. Curiel; Compendium of Foreign Authority; and [Proposed] Order]

Date:        July 2, 2009
Time:        11 a.m.
Location:    Courtroom 827-A
             (Spring Street Courthouse)

Discovery Cutoff:        March 15, 2010
Pre-Trial Conference:    April 19, 2010
Trial Date:              May 18, 2010

-1-

# **TABLE OF CONTENTS**

PAGE

I.    INTRODUCTORY STATEMENTS ..................................................1

    A.    Moving Party's (Plaintiff's) Introduction ..............................1

        1.  Defendant Should Be Compelled to Produce Class Member Identities and Contact Information .....................................1

        2.  Meet and Confer Efforts, and Plaintiff's Proposal to Resolve This Dispute ......................................2

    B.    Responding Party's (Defendant's) Introduction .....................2

II.   INTERROGATORY NO. 1 AND STARBUCK'S RESPONSE ......................3

    A.    Interrogatory No. 1 Propounded by Plaintiff .........................3

    B.    Starbuck's Response to Interrogatory No. 1 ..........................4

III.  CONTENTIONS OF THE RESPECTIVE PARTIES .......................4

    A.    Moving Party (Plaintiff)'s Contention: Starbucks Should Be Compelled to Produce the Names and Contact Information of All Class Members Subject to a Protective Order ..................4

        1.  Class Member Identities and Contact Information Are Relevant, Pre-Certification Discovery ................................4

        2.  Defendant's "Overbroad" and "Unduly Burdensome" Objections Should Be Overruled .....................................12

        3.  Starbuck's Privacy Objection Should Be Overruled .....................13

    B.    Objecting Party (Starbuck)'s Contentions .............................15

        1.  An Opt-Out Process is Appropriate ..................................16

        2.  A Sampling of the Putative Class is Appropriate ...........................19

IV.   INTERROGATORY NO. 3 AND STARBUCKS' RESPONSE ...................20

    A.    Interrogatory No. 3 Propounded by Plaintiff .........................20

    B.    Starbuck's Response to Interrogatory No. 3 ..........................21

V.    CONTENTIONS OF THE RESPECTIVE PARTIES ......................21

A.    Moving Party (Plaintiff)'s Contentions: Starbucks Should Simply Identify Which Class Members Included Above Have Been Employed Within One Year ........................................................21

B.    Objecting Party's (Starbuck's) Contentions .........................................22

**TABLE OF CONTENTS**

## I.    INTRODUCTORY STATEMENTS

### A.    Moving Party's (Plaintiff's) Introduction

#### 1.    <u>Defendant Should Be Compelled to Produce Class Member Identities and Contact Information</u>

On December 2, 2008, Plaintiff Summer York brought this wage and hour class action alleging violations arising under the California Labor Code.  Plaintiff seeks to support an anticipated motion for certification under Federal Rule of Civil Procedure 23 with testimony obtainable only with access to the putative class members' names and contact information.  Accordingly Plaintiff propounded interrogatories seeking all putative class members' names and contact information. In response, on March 30, 2009, Plaintiff's former employer, Defendant Starbucks Corporation, objected.

However, both state and federal law provide that class members' names and identities are discoverable – even pre-certification – and, moreover, that this information is necessary to filing a properly supported class certification motion, particularly when, as here, the prospective class members are also the case's key witnesses.  Yet despite meet and confer efforts, Defendant has refused to provide the 124,606 putative class members' names and contact information and, instead, has offered only a sample of only 2,000 or 3,000.

The implication of Defendant's position is that Starbucks alone will be permitted access to all 124,606 witnesses, while Plaintiff's counsel is limited to building the case for certification with access to only a handful of them.  Particularly with regard to the "off-the-clock" allegations, unpaid rest period premiums, and unpaid rest break premiums, direct witness testimony is essential because there will rarely be adequate documentary evidence.

Plaintiff thus seeks an order compelling Defendant to produce names and contact information for all non-exempt California retail store employees, and without an unnecessary and dilatory "opt-in" or "opt-out" procedure.

2.    <u>Meet and Confer Efforts, and Plaintiff's Proposal to Resolve</u>
      <u>This Dispute</u>

Following the receipt of Starbuck's objections on March 30, 2009, Plaintiff's counsel faxed a letter to Starbuck's counsel on April 27, 2009 requesting a meet and confer.  [Declaration of Matthew T. Theriault (Theriault Decl.), ¶ 3.]  To facilitate the discussion, the letter also explained Plaintiff's position as to each objection.  [*See* Ex. C to Theriault Decl.]  Prior to the meeting, on May 7, 2009, Starbucks' counsel faxed a response outlining Starbucks' position.  [*See* Ex. D to Theriault Decl.]

Counsel for the parties met in-person on May 7, 2009.  [*See* Theriault Decl.]  Starbucks offered to provide only between 2,000 and 3,000 randomly-sampled class members, or approximately two percent of the entire class.  Additionally, Starbucks's initial position was that this fractional sample only be turned over only after the class members received notice advising them of their rights to opt-out from providing their contact information to Plaintiff, and providing them with opportunity to in fact do so.

Plaintiff's position, as reflected more fully below, was that any privacy interests could be protected by the parties entering into a stipulated protective order prohibiting the public or private dissemination of the class members' identities and contact information.  Additionally, Plaintiff rejected the use of any sampling because names and contact information of ***all*** class members is necessary both to substantiate the elements of class certification and to anticipate Starbucks' defenses to certification.

**B.    Responding Party's (Defendant's) Introduction**

Plaintiff claims that she is entitled to the names, addresses, and work history of 124,606 people – people who are not currently parties to this action – simply because she filed a lawsuit.  Yet, a person's contact information is protected by the

"inalienable right of privacy" set forth in Article I, Section I of the California Constitution. *Board of Trustees v. Sup. Ct.*, 119 Cal. App. 3d 516, 528-30 (1981). Starbucks does not object to producing contact information to Plaintiff, but it suggests a reasonable sampling with an opt-out procedure in order to protect the privacy rights of thousands of its current and former employees and to reduce the burden on the parties. Moreover, Plaintiff has failed to show why the "names and contact information of ***all*** class members is necessary both to substantiate the elements of class certification and to anticipate Starbucks defenses to certification," given that the need for such extensive individual inquiries would preclude class treatment.

## II.    INTERROGATORY NO. 1 AND STARBUCK'S RESPONSE

### A.    Interrogatory No. 1 Propounded by Plaintiff:

Set forth the full name, last known address, telephone numbers, position and dates of employment of each and every COVERED EMPLOYEE who was employed by DEFENDANT, during the RELEVANT TIME PERIOD (for purposes of these interrogatories the term "COVERED EMPLOYEE(S)" means and refers to all non- exempt or hourly paid persons employed by DEFENDANT in the State of California at any time during the period commencing four (4) years prior to the filing of this matter to final judgment; the term "DEFENDANT" means and refers to Defendant Starbucks Corporation, and any of its parents, subsidiaries, successors and predecessors, directors, officers, agents, investigators, personnel, and employees; the term "PLAINTIFF" means and refers to Plaintiff Summer York; the phrase "RELEVANT TIME PERIOD" means and refers to the period of time commencing four (4) years prior to the filing of the COMPLAINT to the present; the term "COMPLAINT" means and refers to Plaintiff's Complaint filed in this action on December 2, 2008).

[Exhibit A to Theriault Decl.]

**B.    Starbuck's Response to Interrogatory No. 1:**

Starbucks objects to this interrogatory on the grounds that it is overbroad and unduly burdensome. Starbucks further objects to this interrogatory on the ground that it seeks disclosure of information that would constitute an unreasonable and unwarranted invasion of the affected person's constitutional, statutory and common-law rights to privacy and confidentiality. Starbucks further objects to this interrogatory to the extent it seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Starbucks responds as follows: pursuant to the parties' discussions at the Rule 26(f) conference, Starbucks is agreeable to meeting and conferring on a process by which a random sampling of putative class member contact information would be disclosed.

[Exhibit B to Theriault Decl.]

**III.    CONTENTIONS OF THE RESPECTIVE PARTIES**

**A.    Moving Party (Plaintiff)'s Contentions: Starbucks Should Be Compelled to Produce the Names and Contact Information of All Class Members Subject to a Protective Order**

1.    Class Member Identities and Contact Information Are Relevant, Pre-Certification Discovery

*Class Member Contact Will Result in Evidence Supporting Plaintiff's*

*Rule 23 Motion for Certification*

Prior to filing a Rule 23 motion for certification, the parties are entitled to conduct discovery in order to provide the court with evidence outside the pleadings that support (or refute) certification. *See Kamm et al. v. California City Development Company et al.*, 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses."); *Armstrong v. Davis*, 275 F.3d 849, 872 fn 28 (9th Cir. 2001) (District Court may permit class discovery to determine whether class certification is appropriate*); Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("in most cases a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action") (internal quotation omitted). Among other things, the names and contact information of the prospective class members is discoverable pre-certification, because "[contact with class members] could lead to the discovery of admissible evidence relevant to the class certification issue." *Babbitt v. Albertson's, Inc.*, 1992 U.S. Dist. LEXIS 19091 at *16-*17 (N.D. Cal. December 1, 1992) (motion to compel identities of 40,000 prospective class members in employment discrimination class action granted over employer's objections based on privacy and burden grounds).

It is well-established that prospective class members can provide probative information concerning certification. For instance, in a class action brought on behalf of discharged or demoted employees under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.S. § 621 et seq., the United States Supreme Court held the contact information of the discharged employees was discoverable, as follows:

> The District Court was correct to permit discovery of the names and addresses of the discharged employees. Without pausing to explore alternative bases for the discovery, for instance that the employees

1    might have knowledge of other discoverable matter, we find it

2    suffices to say that the discovery was relevant to the subject matter of

3    the action and that there were not grounds to limit the discovery under

4    the facts and circumstances of this case.

5    *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also, e.g., Int'l*

6    *Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (in class action

7    alleging discrimination, use of declaration testimony supported inferences provided

8    by statistical analysis; testimony about "personal experiences with the company

9    brought the cold numbers convincingly to life.").

10        The Ninth Circuit recently recognized the relevance of class member

11    testimony during certification of one of the biggest class actions ever.  *See Dukes v.*

12    *Wal-Mart, Inc.*, 509 F.3d 1168, 1182 (9th Cir. 2007) (in Title VII case alleging sex

13    discrimination, declarations of prospective class members "raise an inference of

14    common discriminatory experiences" and thus serve as "*support* for Plaintiffs'

15    contention that commonality is present").

16        Particularly in wage and hour class actions, federal courts have recognized

17    prospective class members as being essential witnesses.  *See Ho v. Ernst & Young,*

18    *LLP*, 2007 U.S. Dist. LEXIS 37700 at *3 (N.D. Cal. May 9, 2007) ("contact

19    information is relevant to *both* the merits and class certification");[1] *Wiegele v. Fedex*

20    *Ground Package System*, 2007 U.S. Dist. LEXIS 9444 at *5 (S.D. Cal. February 8,

21    2007) ("the Magistrate Judge [properly] determined that putative class members

22    possess relevant discoverable information concerning issues dealing with Plaintiff's

23    wage and hour claims, as well as class certification issues"); *Sanbrook v. Office*

24    *Depot*, 2009 U.S. Dist. LEXIS 30852 at*2 (N.D. Cal. March 30, 2009) (same);

25    _____

26    [1]    Additionally, in this and the following cases, all of the same objections raised by Starbucks were expressly overruled, and the District Courts determined that the plaintiff was entitled to the identities and contact information of *all*, and not just some, of the prospective class members,
27    *infra*.

28

1  *Jimenez v. Domino's Pizza*, LLC, 2006 U.S. Dist. LEXIS 66510 (C.D. Cal. January

2  13, 2006) (same); *Babbitt*, *supra*, 1992 U.S. Dist. LEXIS 19091 at *16-*17

3  (ordering production of names, contact information and social security numbers of

4  40,000 class members in discrimination action).

5      Likewise, the California Supreme Court and intermediate appellate court have

6  universally held that class member contact information is essential for supporting

7  class certification motions and is thus uncontroversially discoverable. *See Pioneer*

8  *Electronics (USA), Inc.*, 40 Cal. 4th 360 (in consumer class action, "[c]ontact

9  information regarding the identity of potential class members is generally

10  discoverable, so that the lead plaintiff may learn the names of other persons who

11  might assist in prosecuting the case"); *Belaire-West Landscape, Inc.*, 149 Cal. App.

12  4th 554, 562 ("The current and former employees are potential percipient witnesses

13  to Belaire-West's employment and wage practices, and as such their identities and

14  locations are properly discoverable."); *Puerto v. Super. Ct. (Wild Oats)*, 158 Cal.

15  App. 4th 1242, 1249-50 (2008) (class members are also percipient witnesses, and

16  their contact information is discoverable).

17      In fact, under California law, the information potentially garnered from class

18  members is so highly probative of certification that a trial court's denial of

19  certification will be reversed if the named-plaintiff is denied access to the class

20  members. *See Lee v. Dynamex*, *Inc.*, 166 Cal. App. 4th 1325, 1338 (2008)

21  ("Because of the trial court's erroneous discovery order [denying named-plaintiff's

22  motion to compel class members' identities and contact information], Lee lacked the

23  means to develop evidence capable of supporting his motion for class certification.")

24      This case is no different. Corporate handbooks and procedure manuals

25  concerning Starbucks' time-keeping system, meal and rest break policies, and

26  overtime scheduling policies are plainly relevant to the wage-and-hour claims

27  brought here. However, it is often the case that a company's facially-compliant

28

employment *policies* do not seamlessly result in compliant day-to-day *practices*. Thus the internal documents are rarely sufficient in and of themselves to support certification. Internal company documents will typically require the testimony of the prospective class members to corroborate both compliance and non-compliance with company policies, which often track Labor Code statutes.

Moreover, despite company policies reciting the California Labor Code verbatim, class members are likely to have information about *other* polices -- formal and informal – that give rise to violations of the Labor Code (and other company policies). For instance, staffing policies that are so finely built on marginal-analysis that the smallest disruption in expected business results in labor shortages can, in turn, lead to missed meal and rest breaks, as retail employees abandon their lunch a few minutes into it to help at the register or assist overflow customers. Class member contact is also likely to support Plaintiff's claims that, with respect to each claim, common questions of fact and law predominate, notwithstanding the often-made defense that store location or size destroys commonality.

The information gained from class members is especially probative of claims that are not otherwise well-supported by written evidence. Employers must keep written records of meal breaks, but not rest breaks. Accordingly, while Plaintiff intends to support meal period claims by conducting an analysis of time records to show the frequency of short, late or completely missed meal periods, the same analysis is incapable of supporting Plaintiff's rest period claims. Additionally, by their very nature, allegations of "off-the-clock" work cannot be supported records of the work.[2]

Accordingly, Starbucks' relevancy objections should be overruled.

---

[2]    Also, class members might have complained about, for instance, the failure to receive a meal period. Or, a class member may have been instructed by their manager to work off-the-clock or face certain consequences. Without access to the class members, it is unlikely that the information held by the class members will ever reach the very people who have undertaken the responsibility of representing them.

*Class Member Contact Will Result in Evidence Refuting Starbuck's*

*Anticipated Defenses Against Certification*

Class members not only have information likely to support certification, but there is the distinct probability that they will also have evidence that rebuts Starbucks' anticipated defense. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim **or defense**.") (Emphasis added.) Large companies that do business in many locations throughout California commonly oppose class certification in wage-and-hour cases by demonstrating that the practices and procedures vary by store location so significantly that there can be no predominance of class-wide questions of fact or law.[3]

The only effective way to rebut this evidence is to allow the named-plaintiff to have equal access to all prospective class members in the first instance, thereby leveling the playing field by permitting the named-plaintiff and their counsel to contact witnesses from each store, both current and formerly-employed class members, to assist in rebutting any presumption that the violation was limited in scope or subject to individual store-level determinations.[4]

Accordingly, the identities and contact information of the prospective class members is either directly relevant to Starbucks' defense, or will likely lead to the discovery of admissible evidence of any defense.

---

[3]     This argument is used so often that it is known in the field as the "geographic disparity" argument. Starbucks' Eleventh Affirmative Defense generally alleges that the action does not meet the requirements for class action treatment. [*See* Defendants Starbucks Corporation's and Starbucks Coffee Company's Answer to Plaintiff's Complaint.] Evidence of geographic disparity often takes the form of counter-declarations, which were obtained by the employer's attorneys who showed up at the place of employer's business, armed with a briefcase full of fill-in-the-blank declarations, to politely ask (with the store manager looking on) whether the hourly-paid employees would sign a declaration affirming that they never experienced any violations.

[4]     On the other hand, if employer is correct that the violations are isolated, then contact with the purported class members by the named-plaintiff may in fact persuade their counsel to limit the scope of the class or to abandon it altogether, thereby increasing judicial economy.

*A Random-Sampling is Insufficient*

Starbucks refused to provide the prospective class members' names and contact information, and, instead, offered only to provide a sampling of a minute fraction of the class. [*See* Starbucks Response to Plaintiff York's Interrogatories, Set One, Ex. B to Theriault Decl.] During the meet and confer, Starbucks confirmed that it would provide between 2,000 and 3,000, randomly-selected class members. [*See* Theriault Decl. ¶ 5.]

That offer was not accepted, nor should it have been. *All* witnesses and prospective class members are likely to have relevant information. Moreover, any such agreement (or order) would violate the most basic notion of fair play, which requires all parties to have equal access to relevant information. In short, Starbucks would be in a vastly superior litigation position by having access to 100% of the witnesses, while Plaintiff would be left with approximately 2% of the witnesses. [*Id.*, ¶¶ 6-7§.]

Allowing one party to control access to *all* relevant discovery while denying equal access other parties is contrary to the discovery rules. "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998); *see also Jimenez, supra*, 2006 U.S. Dist. LEXIS 66510 at *3 (ordering pre-certification production of the identities of all prospective class members in wage-and-hour class action); *Campbell v. Wood*, 18 F.3d 662, 723 (9th 1994) ("We ordinarily understand that the truth is most readily uncovered when each party has equal access to the evidence.")

The principle that all parties have equal access to all discovery, especially including access to *all* prospective class members, was articulated in another wage-and-hour class action. *See Wiegele, supra,* 2007 U.S. Dist. LEXIS 9444 at *11. In ordering the pre-certification production of all prospective class members over the

1   objection of the employer, the court in *Weigele* found California authority

2   persuasive, as follows

3          As noted in *Koo v. Rubio's Restaurants, Inc.,* 109 Cal.App.4th 719,

4          736, 135 Cal. Rptr. 2d 415 (2003), [B]efore class certification has

5          taken place, all parties are entitled to "equal access to persons who

6          potentially have an interest in or relevant knowledge of the subject of

7          the action, but who are not yet parties." (*Atari, Inc. v. Superior Court,*

8          *supra,* 166 Cal.App.3d at p. 869.) Moreover cases have stressed "the

9          importance of permitting named plaintiffs to communicate with

10         persons for whose benefit their action was ostensibly filed." (Citations

11         omitted).

12  *Id.*

13         Finally, in *Ho*, *supra*, this issue was squarely addressed.  The employer in *Ho*

14  (who was represented by Starbucks' counsel in this matter) objected to the

15  disclosure of identities and contact information of the prospective class members,

16  though agreed to provide 25% of the names pursuant to an opt-out notice procedure.

17  *Ho*, *supra*, at *4-*5.  After the named-plaintiff received the contact information for

18  the limited sample, he filed a motion to compel all remaining names.  *Id.*  The

19  employer argued that the named-plaintiff already in his possession access to

20  approximately 20% of the entire class, which should result in sufficient information

21  to move for certification.  *Id.*, at *6.  The court disagreed, stating "defendant's

22  frustration that plaintiff will not agree to a compromise does not affect plaintiff's

23  right to seek all relevant non-privileged discovery."  *Id.*  The court granted the

24  plaintiff's motion to compel the identities of all remaining prospective class

25  members.  *Id.; and see also, e.g., Babbitt*, *supra*, 1992 U.S. Dist. LEXIS 19091 at

26  *15, *17 (ordering the production of 40,000 prospective class members' names and

27  contact information).

28

Given that Starbucks can make use of its unfettered access of all prospective class members in support of its opposition to certification, it is axiomatic that Plaintiff also be provided access to the same information, to advance the class claims, which are being brought on behalf of those same class members.  *See Pioneer*, *supra*, 40 Cal. 4th at 374 (failing to produce the identities of all prospective class members only benefits the party preventing disclosure, to the detriment of the plaintiff and the putative class members for whom the litigation was brought).  Thus, Plaintiff is entitled to an order directing Starbucks to produce all prospective class members' names and contact information.

2.    <u>Defendant's "Overbroad" and "Unduly Burdensome" Objections Should Be Overruled</u>

The mere fact that compliance will cause some expenditure of labor, expense, or even considerable hardship and possibility of injury to the business of the party from whom discovery is sought does not justify a denial of a motion to compel.  *Babbit, supra*, 1992 U.S. Dist. LEXIS 19091 at *15-17 (rejecting "burdensome" objection and ordering production of 40,000 class members); *Ho*, *supra,* 2007 U.S. Dist. LEXIS at *6-7 (same).

Here, Starbucks' production of the prospective class members' contact information is straightforward.  Not only are employers required to maintain records about its current and former employees, but most employers in 2009 can produce an employee list by querying its electronic database, thereby obviating the need to comb through boxes and boxes of physical files stored at various locations throughout the State.  In fact, in another recent class action against Starbucks, involving the reimbursement of mileage, Starbucks was ordered to produce the names of approximately 30,000 class members.  *See Lewis v. Starbucks Corp.,* Order on Motion to Compel (September 4, 2007) (E.D. Cal. Case No. CIV S-07-

0490 MCE DAD).[5]  Given the slight burden on Starbucks, as compared to Plaintiff's

need for the information, Starbucks' objection should be overruled.

### 3.    Starbuck's Privacy Objection Should Be Overruled

Rule 501 of the Federal Rules of Evidence provides that privileges should be

evaluated under federal common law, unless "an element of a claim or defense as to

which State law supplies the rule of decision."  This case is predicated entirely upon

the California Labor Code; thus, California decisions on the right of privacy of

prospective class members in the context of class action are relevant, and the

District Court opinions cited above have all followed California State law and have

overruled the privacy objections of defendants.

Under California law, an employee's right to privacy is acknowledged under

the California Constitution, but in the class action context, case law universally

holds that privacy objections in this context will not be sustained.  The leading

California case, *Pioneer v. Superior Court (Olmstead)*, 40 Cal. 4th 360 (2007),

unambiguously held that:

> Contact information regarding the identity of potential class members is
>
> generally discoverable, so that the lead plaintiff may learn the names of other
>
> persons who might assist in prosecuting the case.  [Citations]  Such disclosure
>
> involves no revelation of personal or business secrets, intimate activities, or
>
> similar private information, and threatens no undue intrusion into one's
>
> personal life, such as mass-marketing efforts or unsolicited sales pitches.

*Id*. at 373.  The Pioneer court found that a balancing of interests was not even

necessary because the defendant was unable to show a serious invasion of the class

members' privacy.  *Id.; see also Belaire-West*, *supra*, at 562 (employees do not have

---

[5]    Although Starbucks settled the case before the contact information was provided in
connection with the motion to compel, notice of the settlement nonetheless went out to all 30,000
class members.  *See Lewis v. Starbucks Corp.*, 2008 U.S. Dist. LEXIS 83192 at *6-*7, *22
(preliminarily approving class settlement and ordering notice to the class).

a reasonable expectation of privacy, especially given that current and former employees could be reasonably expected to want their information disclosed to a class action plaintiff who might ultimately recover for them unpaid wages they were owed); *Puerto, supra*, 158 Cal. App. 4th at 1259 (because the privacy interests at stake were minimal, trial court abused its discretion by requiring an "opt-in" procedure before witness contact information could be released to the named-plaintiff's counsel).

Recent case law under California makes clear that the privacy interests of the class members is so slight, that *no* notice to them is necessary for a named-plaintiff obtain their information. *See Alch v. Superior Court*, 165 Cal. App. 4th 1412, 1431-39 (2008) (in class action alleging, trial court abused its by discretion when it found that the nonparties' privacy interests outweighed the plaintiffs' need for evidence to prove their case without examining the various types of information requested and balancing the sensitivity of the information against its need in the litigation; employer ordered to provide contact information of employees who opted-out from disclosure to named-plaintiff's counsel); *see also Crab Addison, Inc. v. Superior Court*, 169 Cal. App. 4th 958 (2008) (named-plaintiff in wage-and-hour class action entitled to names of all prospective class members even though employees had signed forms permitting employer to release contact information only with the employees' affirmative consent).

California Federal District Courts have also ordered the production of contact information over the purported privacy interests of the class members, as advanced by the violating employer. *Wiegele, supra,* 2007 U.S. Dist. LEXIS at *6 ("[T]he privacy interests at stake in the names, addresses, and phone numbers must be distinguished from those more intimate privacy interests such as compelled disclosure of medical records and personal histories."); *Tierno v. Rite Aid Corp.*, 2008 U.S. Dist. LEXIS 58748 (N.D. Cal. July 31, 2008) (privacy objection

1    overruled; employer ordered to turn over contact information of class members).

2    Moreover, at least one District Court has followed the trend in State court to permit

3    the named-plaintiff access without first providing notice. *See Wiegele, supra*

4    (contact information ordered produced subject to protective order).

5        Here, the equities favor the immediate release of the names, because

6    Plaintiff's motion for certification is due on August 17, 2009. [Theriault Decl., ¶¶

7    7-8.] Given that the administration of the notice will take, at the very minimum, 30

8    to 45 days, before the contact information is released,[6] Plaintiff could not

9    realistically expect to receive the contact information *until after her motion is due.*

10   [*See, id.*] Thus, under the circumstances, this Court should overrule Starbucks'

11   privacy objections and order it to produce to Plaintiff's counsel the names and

12   contact information of all class members within five days of this order.[7]

### B.    Objecting Party (Starbuck)'s Contentions

14       Starbucks does not object to the production of the contact information to

15   Plaintiff. But, in order to protect the privacy rights of over a hundred thousand

16   current and former employees, it proposes that the parties utilize an "opt-out"

17   mailing so that these individuals have an opportunity to assert their rights prior to

18   having their contact information released. Starbucks proposes that the parties split

19   the cost of an "opt-out" mailing to a reasonable sampling of putative class members.

20   A reasonable sampling will provide Plaintiff with sufficient information while

21   simultaneously relieving both parties of the associated costs and burdens. Plaintiff

22   cannot honestly contend that she plans to contact all 124,606 putative class

---

[6]    This estimate assumes that the notice has already been drafted, agreed to by the parties, and then approved of by the court. [*See* Theriault Decl., ¶ 8.]

[7]    If Starbucks provides the information within five days, then Plaintiff foregoes any entitlement to sanctions for Starbucks' refusal to turn over information that it should have produced without the need for this Motion. However, if Starbucks fails to take steps to prepare this information while this Motion is pending, and then claims that it will need more than five days to assemble it, then Plaintiff can and does move for sanctions.

1    members.  Additionally, should Plaintiff contact all putative class members,

2    Starbucks will be unduly burdened by the business disruption of having all of its

3    store employees being contacted by Plaintiff and being distracted by the litigation.

4    Therefore, an opt-out process to a sampling of putative class members is

5    appropriate.

6                    1.    <u>An Opt-Out Process is Appropriate</u>

7            As stated by Plaintiff, an employee's right to privacy is acknowledged under

8    the California Constitution.  A person's contact information is protected by the

9    "inalienable right of privacy" set forth in Article I, Section I of the California

10   Constitution.  *Board of Trustees v. Sup. Ct.*, 119 Cal. App. 3d 516, 528-30 (1981).

11   Contrary to Plaintiff's assertion, California courts have not universally dispensed

12   with an entire class of employees' privacy rights just because one plaintiff has

13   brought forth a putative class action.  As the court noted in *Salazar v. Avis Budget*

14   *Group, Inc.*, "potential class members…have a reasonable expectation that Avis will

15   not disclose their contact information without first obtaining their consent in some

16   form."  2007 WL 2990281, *2 (S.D. Cal. October 10, 2007).  Courts have

17   consistently held that an opt-out procedure is an appropriate measure to protect the

18   employees' privacy rights.

19           In cases cited by Plaintiff for the proposition that Starbucks privacy

20   objections should be overruled, the courts have actually determined that an "opt-

21   out" process *is* appropriate to protect the privacy rights of the individual employees.

22   Indeed, the court in *Belaire-West Landscape, Inc. v. Superior Ct.* noted that

23   disclosure of contact information was appropriate "as long as the disclosure was

24   limited to the named plaintiffs in a putative action filed against their employer

25   following a written notice to employees giving them the opportunity to object to the

26   disclosure of that information."  149 Cal. App. 4th 554, 561 (2007).  In *Pioneer*

27   *Electronics (USA), Inc. v. Superior Court*, the court similarly determined that an

28

1   opt-out procedure adequately protects privacy rights of putative class members prior

2   to disclosure of contact information.  40 Cal. 4th 360, 367 (2007).  Even though the

3   court in *Puerto v. Superior Court* determined that an opt-*in* procedure is not

4   required, it stated that the witnesses had "a reasonable expectation of privacy in their

5   addresses and phone numbers" and noted that an opt-out letter to putative class

6   members was appropriate prior to release of their identities and contact information.

7   158 Cal. App. 4th 1242, 1252 (2008).

8       Plaintiff also mischaracterizes case law in arguing that California courts have

9   determined that no notice to putative class members is necessary prior to disclosure

10  of their identities and contact information.  *Alch v. Superior Court* did not hold that

11  no notice to putative class members is necessary for a named-plaintiff to obtain their

12  information.  *See* 165 Cal. App. 4th 1412 (2008).  There, an opt-out process was

13  used with regard to demographic, employment, and health and medical information.

14  After some class members opted-out (i.e., objected to disclosure), Plaintiffs moved

15  to overrule the putative class members' objections.  Unlike the circumstances here,

16  the information sought did not include contact information and, in fact, the court

17  acknowledged that the circumstances there were unlike any prior case regarding the

18  contact information of putative class members.  *Id.*  It also specifically

19  acknowledged that *Pioneer* concluded that third party contact information may

20  appropriately be given to civil litigants when the third parties are given an

21  opportunity to object to the disclosure of their contact information.  *See Alch* at

22  1423-24.  Nothing in the opinion stated that class members no longer have a right to

23  receive notice or object to disclosure of their personal information.

24      Nor does *Crab Addison, Inc. v. Superior Court* hold that the opt-out process is

25  not necessary or that it is inappropriate.  169 Cal. App. 4th 958 (2007).  In fact, the

26  court there only held that requiring an opt-*in* process would be an abuse of

27  discretion and beyond what is necessary to protect privacy interests.  *Id.* at 970, 972-

28

73.  An opt-in procedure, in contrast to an opt-out procedure, would require putative class members to affirmatively choose to have their contact information disclosed. Nowhere in the opinion does the court state that no form of notice to employees is necessary.

Likewise, the federal cases cited by Plaintiff are not inconsistent with requiring an opt-out procedure here.  While the court in *Wiegele* ordered that contact information be produced subject to a protective order, the court simply did not address whether an opt-out procedure would have been appropriate.  *Wiegele v. Fedex Ground Package Sys.*, 2007 U.S. Dist. LEXIS 9444 (S.D. Cal. February 8, 2007).  Additionally, the decision in *Tierno* does not even apply as a class had already been certified in that case.  *Tierno v. Rite Aid Corp*., 2008 U.S. Dist. LEXIS 58748, *3-*4 (N.D. Cal. July 31, 2008).

While one court has reasoned that *Pioneer* should not be read to require an opt-out notice,[8] the better rule followed by other federal district courts is that an opt-out procedure is appropriate to protect privacy rights of putative class member employees' contact information prior to class certification.  Numerous federal courts have ordered that parties utilize an opt-out procedure under the circumstances here. Indeed, Plaintiff's reliance on *Lewis v. Starbucks* and *Ho v. Ernst & Young, LLP* is entirely misplaced.  In *Lewis*, the district court specifically ordered that an opt-out process be utilized by the parties, rejecting plaintiff's argument that an opt-out procedure is unnecessary.  *See* Order on Motion to Compel (September 4, 2007) (E.D. Cal. Case No. CIV S-08-0490 MCE DAD).[9]  In *Ho*, the parties also utilized an opt-out procedure.  *See* 2007 U.S. Dist. LEXIS 37700 (N.D. Cal. May 9, 2008). Moreover, the district court in *Chavez v. Petrissan* ordered that an opt-out procedure

---

[8]    *Sanbrook v. Office Depot*, 2009 U.S. Dist. LEXIS 30852, *2 (N.D. Cal. March 27, 2009).

[9]    Starbucks respectfully requests that the Court take judicial notice of the *Lewis* order, which is attached to the declaration of Mark R. Curiel.  *See* Fed. R. Evid. 201.

1   be utilized so that only information of members of the putative class who wish to

2   participate are released, minimizing the release of private information.  *See* 2008

3   WL 4177797, *4 (E.D. Cal. September 5, 2008).

4         For these reasons, Starbucks respectfully requests that the Court deny

5   Plaintiff's motion to compel the contact information absent an opt-out procedure,

6   the cost of which should be shared equally.[10]

7                    2.     A Sampling of the Putative Class is Appropriate

8         Plaintiff claimed at the parties' meet and confer that she needed the contact

9   information of all putative class members, and that she intends to contact them all as

10  part of her investigation as to whether a class action is appropriate.  Yet if Plaintiff

11  needs to inquire into the particular circumstances of over a hundred thousand

12  individuals in order to evaluate whether class certification is proper, it plainly is not.

13  *See Mantolete v. Bolger*, 767 F.2d 1416, 1425 (9th Cir. 1985) (denying expanded

14  discovery at pre-certification stage, where individual inquiry into putative class

15  members' medical and work history would be necessary).  Indeed, such a

16  widespread evaluation of experiences of particular individuals is precisely the type

17  of class-wide merits discovery that the Court should preclude at this stage of the

18  litigation.

19        Plaintiff cannot seriously contend that she will communicate with 124,606

20  putative class members in preparing her lawsuit.  Indeed, given that Plaintiff would

21  receive access to many more people than she could possibly contact in any

22  meaningful way, her purported need for "equal access" is unavailing.[11]

23

---

24  [10]     Plaintiff argues that an opt-out procedure is not workable under the current case schedule.
    However, she was on notice of Starbucks position as early as March 30, 2009, when Starbucks

25  objected to these interrogatories and specifically stated that it would be agreeable to an opt-out
    procedure.  More than a month later, Plaintiff stipulated to the schedule which she now claims is

26  unworkable.  *See* Docket No. 22 (Joint Stipulation Re Briefing Schedule, filed May 4, 2009).

    [11]     Plaintiff's suggestion that equal access is needed to counter employer-coerced declarations
27  is inflammatory and inappropriate, much less supported by any evidence.

28

1    Accordingly, before receiving contact information for every single putative class

2    member, Plaintiff should be required to demonstrate that the discovery she obtains

3    by virtue of a sampling is somehow deficient.    *See Nat'l Union Fire Ins. Co. v.*

4    *Elec. Trust Inc.*, No. C 04-3435 JSW, 2006 U.S. Dist. LEXIS 38440 at *6-7 (N.D.

5    Cal. June 1, 2006) (noting that in discovery matters, the court must balance the need

6    for the discovery against the employee's fundamental right of privacy); *Beinin v.*

7    *Ctr. For the Study of Popular Culture*, No. C 06-2298 JW, 2007 U.S. Dist. LEXIS

8    22518 at *5-6 (N.D. Cal. March 16, 2007).

9        Moreover, there would be significant disruption to Starbucks business if the

10    requisite privacy mailing is sent to every current and former employee.  Employees

11    can be expected to discuss the contents and meaning of the notice, as well as to seek

12    clarification from their managers or human resources.  *See EEOC v. United States*

13    *Bakery*, No. 03-64-HA, 2004 U.S. Dist. LEXIS 11350 at*11 (D. Or. Feb. 4, 2004)

14    (disallowing Plaintiff's request for inspection because it would "unnecessarily

15    disrupt defendant's operations and its employees."); *see also, e.g., Nat'l Union Fire*

16    *Ins. Co. v. Elec. Trust Inc.*, No. C 04-3435 JSW, 2006 U.S. Dist. LEXIS 38440 at

17    *6-7 (N.D. Cal. June 1, 2006); *Beinin v. Ctr. For the Study of Popular Culture*, No.

18    C 06-2298 JW, 2007 U.S. Dist. LEXIS 22518 at *5-6 (N.D. Cal. March 16, 2007).

19        In short, because Plaintiff cannot show that a reasonable sampling is

20    somehow insufficient, let alone that she needs to contact each and every class

21    member in order to assess whether class certification is appropriate, her motion to

22    compel the contact information of all 124,606 putative class members should be

23    denied.

24    **IV.    INTERROGATORY NO. 3 AND STARBUCKS' RESPONSE**

25        **A.    Interrogatory No. 3 Propounded by Plaintiff:**

26

27

28

1    Set forth the full name, last known address, telephone numbers, position and

2    dates of employment of each and every COVERED EMPLOYEE who worked

3    for DEFENDANT during the one year prior to the filing of this matter.

4    **B.    Starbuck's Response to Interrogatory No. 3:**

5    Starbucks objects to this interrogatory on the grounds that it is overbroad and

6    unduly burdensome. Starbucks further objects to this interrogatory on the

7    ground that it seeks disclosure of information that would constitute an

8    unreasonable and unwarranted invasion of the affected person's constitutional,

9    statutory and common-law rights to privacy and confidentiality. Starbucks

10    further objects to this interrogatory to the extent it seeks information that is

11    neither relevant nor likely to lead to the discovery of admissible evidence.

12    Starbucks further objects to this interrogatory on the ground that it is

13    duplicative of the information asked for in Interrogatory No. l.

14   **V.   CONTENTIONS OF THE RESPECTIVE PARTIES**

15       **A.    Moving Party (Plaintiff)'s Contentions: Starbucks Should Simply**

16               **Identify Which Class Members Included Above Have Been**

17               **Employed Within One Year of the Complaint**

18    Interrogatory No. 3 seeks the same information sought by Interrogatory No. 1,

19  except that it is limited to one year, instead of four, from the filing of the complaint.

20  The purpose of this interrogatory was to identify and contact class members who

21  might be subject to a one year statute limitations based on Plaintiff's claims for

22  penalties (for instance, California Labor Code sections 226(e) and 2699).  Thus,

23  Plaintiff incorporates all arguments made above, and seeks an Order requiring

24  Starbucks to produce this information within 5 days of this order.

25    As a practical matter, Starbucks would only have to provide one class list, but

26  designate in some way those class members who worked within one year of the

27  filing of the complaint.  For instance, in other matters handled by Plaintiff's counsel,

28

1  defendants have provided the information on an Excel spreadsheet with an extra

2  column designating the class members' dates of employment, allowing counsel to

3  create a simple program to segregate and resort the names by last day of

4  employment. [*See* Theriault Decl., ¶ 9.] Alternatively, Starbucks could

5  meaningfully identify those employees whose last date ended less than one year

6  from the complaint by color code, special marking or other similar designation.

7  **B.    Objecting Party's (Starbuck's) Contentions**

8  Starbucks similarly incorporates its arguments made above. Should the Court

9  determine that Starbucks must produce the information sought by Interrogatory No.

10  1, Plaintiff will be able to identify which employees worked for Starbucks in the last

11  year based on their employment dates indicated therein.

12  Dated: June ___, 2009                 Respectfully submitted,
13                                         Initiative Legal Group LLP
14
15                                         By:
16                                         Marc Primo
17                                         Matthew T. Theriault
                                           Jennifer S. Grock
18                                         Attorneys for Plaintiff Summer York
19
20
21  Dated: June ___, 2009                 Akin Gump Strauss Hauer & Feld LLP
22
23                                         By:
24                                         Mark Curiel
                                           Cynthia Chou
25                                         Attorneys for Defendant
26
27
28