1 **AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
2 MARK R. CURIEL (SBN 222749)
CYNTHIA S. CHOU (SBN 246330)
3 GALIT A. KNOTZ (252962)
gknopp@akingump.com
4 mcuriel@akingump.com
cchou@akingump.com
5 gknotz@akingump.com
2029 Century Park East, Suite 2400
6 Los Angeles, CA 90067
Telephone:    310.229.1000
7 Facsimile:    310.229.1001

8 Attorneys for Defendant Starbucks Corporation
dba Starbucks Coffee Company
9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                      WESTERN DIVISION

13

14 | SUMMER YORK, individually, and | Case No. CV08-07919 GAF (PJWx)
on behalf of other members of the
15 | general public similarly situated,

16 |                   Plaintiffs,  | **DEFENDANT STARBUCKS CORPORATION'S NOTICE OF MOTION AND MOTION TO DENY CERTIFICATION OF PLAINTIFF'S MEAL PERIOD AND REST BREAK CLAIMS**
17 |        v.

18 | STARBUCKS CORPORATION, a
Washington Corporation, and
19 | STARBUCKS COFFEE COMPANY,
a Washington Corporation,

20 |                   Defendants. | Judge:    Gary A. Feess
Date:     October 19, 2009
21 |                              | Time:     9:30 a.m
                                     Ctrm:     740

22

23

24

25

26

27

28

1   TO PLAINTIFF AND HER ATTORNEY OF RECORD:

2   PLEASE TAKE NOTICE that on October 19, at 9:30 a.m. in the above-entitled

3   Court, located at 255 East Temple Street, Los Angeles, California 90012, defendant

4   Starbucks Corporation ("Starbucks") will and does hereby move for denial of class

5   certification as to plaintiff Summer York's ("York's") Second and Third causes of

6   action.

7   This motion will be made pursuant to Federal Rule of Civil Procedure 23(b) on

8   the ground that, as to the Second and Third causes of action, York cannot show that (1)

9   separate actions would create a risk of inconsistent or varying adjudications with respect

10  to individual members of the class which would establish incompatible standards of

11  conduct for the party opposing the class, per Rule 23(b)(1)(A); (2) her claims involve a

12  definitely ascertained limit, per Rule  23(b)(1)(B); (3) final injunctive relief is

13  appropriate respecting the class as a whole, per Rule 23(b)(2); and that (4) questions of

14  law or fact common to class members predominate over any questions affecting only

15  individual members and class adjudication would be superior, per Rule 23(b)(3).

16  This motion will be based on this notice of motion, the attached memorandum of

17  points and authorities, the supporting declaration of Gregory W. Knopp, the Declaration

18  of Shanmug Muthukrishnan, Starbucks Appendix of Other Authorities, and the

19  documents and records attached thereto, any oral argument that may be presented at the

20  hearing on this motion and any other matter that the Court deems appropriate.  This

21  motion is made following the conference of counsel pursuant to Local Rule 7-3, which

22  took place on September 2, 2009.

23

24

25

26

27

28

---

1

1

2   Dated:  September 23, 2009          AKIN GUMP STRAUSS HAUER & FELD LLP

3                                      GREGORY W. KNOPP
                                       MARK R. CURIEL
4                                      CYNTHIA S. CHOU
                                       GALIT A. KNOTZ
5
                                       By_____
6                                                    Gregory W. Knopp
7                                      Attorneys for Defendant Starbucks Corporation
                                       dba Starbucks Coffee Company
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STARBUCKS CORPORATION'S NOTICE OF MOTION AND MOTION TO DENY
CERTIFICATION FOR PLAINTIFF'S MEAL PERIOD AND REST BREAK CLAIMS          *CV08-07919 GAF*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND ......................................................................... 3

    A.    York's Employment With Starbucks ...................................... 3

    B.    York's Meal Breaks ............................................................ 4

    C.    York's Rest Breaks ............................................................. 6

    D.    York's Co-Workers ............................................................ 7

III.  ARGUMENT .............................................................................. 8

    A.    York Must Prove That Class Certification Is Proper. ........................... 8

    B.    York Cannot Satisfy Her Burden Under Rule 23(b). ..........................11

        1.    Certification Under Rule 23(b)(1) Is Improper.........................11

        2.    Certification Under Rule 23(b)(2) Is Improper....................... 12

        3.    Certification Under Rule 23(b)(3) Is Improper....................... 13

IV.   CONCLUSION............................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Bolin v. Sears, Roebuck & Co.,*
 231 F.3d 970 (5th Cir. 2000).................................................................... 8

*Brown v. Fed. Express Corp.,*
 249 F.R.D. 580 (C.D. Cal. 2008) ..................................................... passim

*Coopers & Lybrand v. Livesay,*
 437 U.S. 463 (1978).................................................................................. 9

*Gabriella v. Wells Fargo Fin., Inc.,*
 2008 WL 3200190 (N.D. Cal. Aug. 4, 2008)................................... 15, 20, 21

*Garcia v. Sun Pac. Farming Co-op.,*
 2008 WL 2073979 (E.D. Cal. May 14, 2008) ............................................ 17

*Gen. Tel. Co. of the Sw. v. Falcon,*
 457 U.S. 147 (1982).................................................................................. 9

*In re Hydrogen Peroxide Antitrust Litig.,*
 552 F.3d 305 (3d Cir. 2008) .................................................................... 9

*In re Integra Realty Res., Inc.,*
 354 F.3d 1246 (10th Cir. 2004)................................................................11

*James v. City of Dallas,*
 254 F.3d 551 (5th Cir. 2001)................................................................... 8

*Jimenez v. Domino's Pizza, Inc.,*
 238 F.R.D. 241 (C.D. Cal. 2006) ....................................................... 13, 23

*Kenny v. Supercuts, Inc.,*
 252 F.R.D. 641 (N.D. Cal. 2008)................................................ 14, 16, 17, 19

*Kimoto v. McDonald's Corp.,*
 2008 WL 4690536 (C.D. Cal. Aug. 19, 2008)..................................... passim

*Kurihara v. Best Buy Co., Inc.,*
 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007)........................................... 13

*Lanzarone v. Guardsmark Holdings, Inc.,*
 2006 WL 4393465 (C.D. Cal. Sept. 7, 2006) ..................................... passim

*Lewallen v. Medtronic USA, Inc.,*
 2002 WL 31300899 (N.D. Cal. 2002) ....................................................... 23

*Marlo v. United Parcel Serv., Inc.,*
 2009 WL 1258491 (C.D. Cal. May 5, 2009) ............................................. 14

*McDonnell Douglas Corp. v. U.S. Dist. Ct.,*
 523 F.2d 1083 (9th Cir. 1975)..................................................................11

ii

*Molski v. Gleich,*
    318 F.3d 937 (9th Cir. 2003) ........................................................ 12

*Nelsen v. King County,*
    895 F.2d 1248 (9th Cir. 1990) ..................................................... 13

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) ......................................................................11

*Perez v. Safety-Kleen Sys., Inc.,*
    253 F.R.D. 508 (N.D. Cal. 2008) ................................................. 15

*Salazar v. Avis Budget Group, Inc.,*
    251 F.R.D. 529 (S.D. Cal. 2008) ..................................... 15, 16, 20

*Sepulveda v. Wal-Mart Stores, Inc.,*
    237 F.R.D. 229 (C.D. Cal. 2006) .................................................11

*Stevens v. Harper,*
    213 F.R.D. 358 (E. D. Cal. 2002) ................................................. 8

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) .................................................. 9, 10

*Watson-Smith v. Spherion Pac. Workforce, LLC,*
    2008 WL 5221084 (N.D. Cal. Dec. 12, 2008) ............................ 14

*White v. Starbucks Corp.,*
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ................................. 15, 20

*Wren v. RGIS Inventory Specialists,*
    256 F.R.D. 180 (N.D. Cal. 2009) ........................... 14, 15, 17, 18

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ............................................. passim

**STATUTES**

California Labor Code § 226.7(a) ........................................................ 14

California Labor Code § 512(a) ..................................................... 14, 18

Industrial Welfare Commission Order No. 5-2001
    Regulating Wage, Hours and Working Conditions
    in the Public Housekeeping Industry ................................... 18, 20

**RULES**

California Local Rule 7-3 ..................................................................... 1

Federal Rule of Civil Procedure 23(b) ......................................... passim

Federal Rule of Civil Procedure 23(c) ................................................. 9

Federal Rule of Civil Procedure 30(b) .............................................. 10

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1

## OTHER AUTHORITIES

2   AB 60, Legislative Counsel Digest (July 21, 1999) .............................................. 19

3   Advisory Committee's Notes on Fed. Rule Civ. Proc. 23,
        28 U.S.C. App., p. 697 ....................................................................... 12

4

5   DLSE Memorandum dated October 23, 2008 ....................................... 15

    DLSE Opinion Letter, 1/28/02 ............................................................. 20
6

7   Newberg & Conte,
        Class Actions § 4.09, p. 4-33 (3d ed. 1992) ................................. 12

8   Wright, Miller & Kane,
        Federal Practice & Procedure § 1778,
9       Vol. 7A at 535-39 (2d ed. 1986) ................................................... 14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1

## I.   **INTRODUCTION**

2      Plaintiff Summer York, a former employee of Defendant Starbucks Corporation,

3  asserts a variety of "wage and hour" claims on behalf of a putative class consisting of

4  everyone who has worked in a California store during the past four years.  Most of her

5  claims—including those for overtime wages, minimum wages, and inadequate wage

6  statements—fail as a matter of law and thus are addressed in Starbucks separate motion

7  for summary adjudication.

8      York's remaining claims are that Starbucks denied her proper meal and rest

9  breaks.  While York indisputably received a 30-minute meal break on nearly every shift

10 she ever worked, she claims that her meal breaks were sometimes late or interrupted.

11 Likewise, she claims that she sometimes missed rest breaks or took them later than

12 scheduled.  York's deposition testimony arguably creates triable issues with respect to

13 her break claims, and thus Starbucks does not address those claims in its summary

14 adjudication motion.  However, York's testimony also proves that her break claims are

15 not suitable for class treatment.  Accordingly, Starbucks hereby moves for an order

16 denying class certification of those claims.

17      Under Federal Rule of Civil Procedure 23, York, as the proponent of class

18 certification, bears the burden of proving that class treatment is proper with respect to

19 each of her claims.  Among other requirements, she must prove that one of the three

20 elements of Rule 23(b) is satisfied.  As shown below, the record evidence precludes a

21 finding that Rule 23(b) is met with respect to her break claims.

22      *First*, certification is not proper under Rule 23(b)(1).  Subsection A of that rule

23 permits certification only when separate actions would result in inconsistent judgments

24 with which the defendant could not comply.  There is no such risk here, as Starbucks

25 potential obligations to one class member (i.e., to pay damages) would have no impact

26 on its ability to satisfy its obligations to another.  Subsection B is likewise inapposite, as

27 that rule applies only when multiple plaintiffs seek recovery from a specific fund.

28

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1    *Second*, certification is not proper under Rule 23(b)(2), because that rule applies

2    only where the plaintiff primarily seeks injunctive relief.  York does not even request

3    injunctive relief with respect to her break claims.  Nor could she, given that she no

4    longer works for Starbucks and thus lacks standing to obtain an injunction that would

5    have no impact on her.

6    *Third*, York cannot satisfy Rule 23(b)(3).  Certification is proper under this rule

7    only if common issues of law and fact predominate over questions affecting individual

8    class members and class adjudication would be superior to other means of resolving the

9    dispute.  The record evidence proves that the central issues raised by York's break

10   claims are anything but "common" to the putative class members.  In fact, those issues

11   can be resolved only by evaluating evidence unique to each individual.

12   Under California law, an employer need only make breaks available to

13   employees; it has no obligation to ensure that breaks are actually taken.  Accordingly, to

14   prove a violation, York must do more than show that a break was missed or late.  Rather,

15   she must show that Starbucks prohibited or prevented her from taking a proper break.

16   Thus, the key substantive issues raised by York's claims include not just whether an

17   individual received a break, but—if not—the *reason*.  As Ninth Circuit courts have

18   consistently found, this issue is inherently individualized, not "common."

19   York's testimony illustrates why.  York testified that whether she took her breaks

20   as scheduled depended on, among other factors, (1) her own preferences, as sometimes

21   she chose to take her breaks early or late; (2) the person "running" the shift, as some

22   people—like York herself—always made sure that the employees took proper breaks;

23   (3) the number of customers in the store at the scheduled break time; (4) the number of

24   employees working at the scheduled break time; and (5) the skill level of those

25   particular employees.  Further, according to York, whether a break was interrupted

26   depended on some of these same factors, as well as whether the individual chose to

27   remain at the store during the break.

28

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1    All of these factors must be examined to determine whether Starbucks denied an

2    individual a break, and not one of them can be assessed through evidence that is

3    common to many thousands of putative class members.  For example, the fact-finder

4    could not determine whether a class member chose to take a break late without

5    considering her individual circumstances.  Nor could the fact-finder determine whether

6    a class member left the store during a break, thus precluding any interruption, without

7    considering her individual circumstances.  In short, to evaluate York's break claims for

8    even a single individual on a single day, the factfinder would need to consider a wide

9    range of factors—including who was running the shift, the individual's personal

10    preferences, the customer volume, and the staffing complement in the store—none of

11    which is amenable to common proof.  Given that the substantive issues raised by York's

12    break claims require individualized inquiry, thus necessitating a mini-trial for each class

13    member, common issues do not predominate, and class adjudication is not superior.

14    Accordingly, York cannot meet her burden under Rule 23(b)(3).

15    Because a robust evidentiary record proves the impropriety of class treatment of

16    York's break claims, the Court should grant this motion and deny certification of those

17    claims.  Starbucks should not be forced to incur additional costs in litigating class

18    claims, while it awaits York's own class motion, when certification is so clearly

19    unwarranted.[1]

20    ## II.    BACKGROUND

21    ### A.    York's Employment With Starbucks

22    Starbucks hired York on January 15, 2003 as a barista, an entry-level coffee-

23    server, at a store in Long Beach, California.  Declaration of Gregory Knopp ("Knopp

24    Decl.") ¶ 2, Ex. B (Deposition Transcript of Summer York dated June 12, 2009 ("York

25

26    [1] Notably, in a related case involving break claims brought on behalf of the same putative class, *Castro v. Starbucks Corp.*, the plaintiff abandoned his plan to move for class certification "after

27    completing a rigorous investigation of the facts of this case, including completing diligent and comprehensive discovery." Case no. 2:08-cv-5425-GAF-PJW, Document 23, filed 5/8/09 (Exhibit A to

28    Starbucks Appendix of Other Authorities).

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                                    *CV08-07919 GAF*

1    Tr.") at 44:4-7.)  In October 2004, York transferred to the Lakewood store.  *Id.* (York Tr.

2    at 44:18-23; 45:23-25.)  She worked there until January 2006, when she was promoted

3    to the "shift supervisor" position and transferred to the 7th and Redondo store.  *Id.* (York

4    Tr. at 44:24-45:7.)  York's employment ended on August 20, 2008.  *Id.* (York Tr. at

5    47:12-13.)

6          Between January 31, 2005—soon after the beginning of the period relevant in this

7    lawsuit—and the end of her employment, York worked a total of 778 shifts, 580 of

8    which lasted more than five hours.  Declaration of Shanmug Muthukrishnan

9    ("Muthukrishnan Decl.") ¶ 4, Ex. A.  York's shifts typically lasted between five and

10   seven work hours.  Knopp Decl. ¶ 2, Ex. B (York Tr. at 73:12-15.)  York was responsible

11   for recording her work time by "clocking" in and out using the store's electronic time-

12   keeping system.  *Id.* (York Tr. at 74:15-75:6; 75:16-22.)  York testified that she always

13   recorded her work time accurately.  *Id.* (York Tr. at 76:2-6.)

14   **B.    York's Meal Breaks**

15         York understood that, under Starbucks policy, she was entitled to an

16   uninterrupted, 30-minute meal break on shifts that were longer than five hours.  *Id.*

17   (York Tr. at 110:25-111:9.)  The record evidence proves that York did, in fact, almost

18   always receive a 30-minute meal break.  According to her own time records, York took a

19   break of 30 minutes or more on ***all but eleven*** of the 580 shifts she worked more than

20   five hours.  Muthukrishnan Decl. ¶ 4, Ex. A .  Although York regularly received a 30-

21   minute meal break on her shifts, she alleges meal break violations nonetheless.

22         *First*, York claims that, on some days, she took her meal breaks earlier or later

23   than scheduled.  But York's time records show that, in fact, her meal breaks were timely

24   on the overwhelming majority of her shifts.  For example, in 2007 and 2008, only ***two*** of

25   York's breaks began after five hours of work.  Muthukrishnan Decl. ¶ 4, Ex. A.  Further,

26   York admits that the scheduled break times were posted in the store (*see* Knopp Decl.

27   ¶ 2, Ex. B (York Tr. at 114:13-20) and that she was responsible for knowing when her

28   breaks were scheduled.  *Id.* (York Tr. at 114:13-115:3.)

                                                  4

York's testimony also proves that whether she took a break earlier or later than scheduled depended on her own preferences.  For example, York sometimes chose to take her meal break earlier than scheduled:

> Q:    As a shift supervisor, did you ever decide to take a meal break earlier than scheduled simply because that was your preference?
>
> A:    As a supervisor and an opener, I preferred to take my meal breaks and send other employees on their breaks before the morning rush in order to ensure that everybody was properly given breaks.  That was my decision, yes.

*Id.* (York Tr. at 120:24-121:6.)  Other times, York chose to delay her own meal break to allow other employees on duty to take their breaks first.  *Id.* (York Tr. at 117:8-25.)

According to York, whether she took her meal break later than scheduled also depended on the particular customer volume and staffing levels at the time:

> Q:    Whether you began the meal break when it was scheduled to begin depended on the staffing that particular day?
>
> A:    That is what I stated, yes.
>
> Q:    It also depended upon how busy the store was at that particular time?
>
> A:    Yes.

*Id.* (York Tr. at 122:20-123:1.)  Likewise, the length of any delay varied depending on "how many tasks that needed to be done before the daily rush of business," as well as "the volume of business and the staffing of the store."  *Id.* (York Tr. at 121:7-11; 122:11-14; 123:25-124:6.)

*Second*, York claims that, on some occasions, when she did clock out for a 30-minute meal break, her break was interrupted, in spite of Starbucks policy, which explicitly states that, "Under no circumstances may a nonexempt employee perform work during the meal or rest break . . . ."  Knopp Decl. ¶ 6, Ex. E (Starbucks Partner Guide at 11); ¶ 7, Ex. F.  York admits that she was permitted to leave the store during her meal breaks, and she cannot recall a single instance when her break was interrupted

5

1  when she elected to leave the store. Knopp Decl. ¶ 2, Ex. B (York Tr. at 129:7-11;

2  112:21-113:25 ["Q:  Did anybody ever tell you at Starbucks you could not leave the

3  premises for a meal break? A:  They never said that we could not leave."]); *see also*

4  Knopp Decl. ¶ 6, Ex. E (Starbucks Partner Guide at 11) ["[n]onexempt employees are

5  free to leave the store during the meal or rest break."].)  Even when York chose to stay

6  at the store, the alleged interruptions sometimes lasted only a minute or two.  Knopp

7  Decl. ¶ 2, Ex. B (York Tr. at 130:4-18.)  As York testified, whether an interruption

8  occurred depended on the particular circumstances during her break time, including the

9  customer volume, the staffing level, and the skill of the employees working, as more

10  skilled employees could better manage a long line of customers. *Id*. (York Tr. at 131:17-

11  132:19.)

12      **C.    York's Rest Breaks**

13      Starbucks policy provides that employees "receive a rest break of not less than 10

14  minutes for each four-hour period of time worked" and that the rest break "should occur

15  as near as possible to the midpoint of each four hours worked."  Knopp Decl. ¶ 6, Ex. E

16  (Partner Guide at 11.)  Rest breaks are paid and thus taken while the employee is

17  "clocked in." *Id*.  York understood that Starbucks policy required her to take scheduled

18  10-minute rest breaks for each 4-hour period of work.  Knopp Decl. ¶ 2, Ex. B (York Tr.

19  at 141:2-142:1.)  She also knew that a schedule of the rest breaks was posted in the

20  store. *Id*. (York Tr. at 142:5-9.)

21      Nevertheless, York claims that she sometimes did not take her scheduled rest

22  breaks.  She claims that she sometimes missed a scheduled rest break entirely, but she is

23  unable to estimate how frequently that occurred. *Id*. (York Tr. at 144:25-145:16;

24  151:17-152:4.)  She also claims that she sometimes began her rest breaks after the

25  scheduled time, but she is unable to estimate the length of the delay. *Id*. (York Tr. at

26  148:24-150:10; 151:7-13.)

27      Further, her testimony reveals that whether she received a proper rest break

28  depended on a variety of individualized factors.  For example, York testified that

6

1  whether she took a rest break "really depended upon the volume of [customers in] the

2  store at the time and the staffing level." *Id*. (York Tr. at 144:25-145:11.)  She further

3  testified that the skill level of the employees working at her scheduled break time

4  impacted her ability to take a break, because some employees were better at handling a

5  long line of customers.  *Id*. (York Tr. at 147:10-21.)

6      York also claims that her rest breaks were interrupted "sometimes" because she

7  was asked to help other employees.  *Id*. (York Tr. at 150:23-25).  However, she could

8  not estimate how frequently her breaks were interrupted or for how long because "the

9  situations varied."  *Id*. (York Tr. at 151:17-152:4.)  On some occasions after her rest

10  break was interrupted, York began a new break when the opportunity presented itself.

11  *Id*. (York Tr. at 152:5-22.)  Whether she did so depended on the volume of customers

12  and the store's staffing.  *Id*.

13      **D.    York's Co-Workers**

14      As far as York knows, no other employee experienced what she alleges in terms

15  of breaks being missed, delayed, or interrupted.  As a shift supervisor, when she was

16  responsible for reminding other employees on the shift to take their scheduled breaks,

17  York never instructed another employee to skip a meal or rest break; never instructed

18  another employee to take a meal or rest break late; never interrupted another employee's

19  meal or rest break; and never instructed another employee to cut a rest break short.  *Id*.

20  (York Tr. at 137:10-22; 154:5-17.)

21      Indeed, York admits that the employees she worked with did, in fact, receive

22  proper breaks.  With respect to meal breaks, she "cannot recall" a single example of an

23  employee not receiving a proper meal break on a shift she worked.  *Id*. (York Tr. at

24  154:18-155:6.)  Likewise, when she was present in the store, the employees always

25  received proper rest breaks:

26      Q:    To the best of your knowledge, did the partners working on the
              shifts that you were running take proper rest breaks?
27
28      A:    To the best of my knowledge, yes.

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

*Id*. (York Tr. at 154:18-21.)

Nor did York ever observe a Starbucks manager prevent an employee from taking a proper break. She has no knowledge of a manager ever telling another employee to skip or delay a meal or rest break. *Id*. (York Tr. at 138:19-139:2; 139:8-16; 155:7-23.) Nor does she have any knowledge of another employee's meal or rest break ever being interrupted. *Id*. (York Tr. at 139:17-140:6; 155:4-6.) With respect to rest breaks, York testified as follows:

> Q:   Are you aware of any [employees], other than yourself on shifts you were not running, who didn't get proper rest breaks?

> A:   Not to my knowledge.

*Id*. (York Tr. at 154:22-25.)

## III.   ARGUMENT

### A.   York Must Prove That Class Certification Is Proper.

The party seeking certification has the burden of proving the requirements of Rule 23. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) ("As the party seeking class certification, [Plaintiff] bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).") This burden applies separately to each claim, because "'class certification must be addressed on a claim-by-claim basis.'" *Stevens v. Harper*, 213 F.R.D. 358, 377 (E. D. Cal. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001)); *accord Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) ("[A] court should certify a class on a claim-by-claim basis, treating each claim individually and certifying the class with respect to only those claims for which certification is appropriate.") Even when a defendant brings a motion to deny certification, the burden remains on the plaintiff. *See Kimoto v. McDonald's Corp.*, No. 06-3032, 2008 WL 4690536, *3 (C.D. Cal. Aug. 19, 2008).

York cannot satisfy her burden merely by making a "threshold showing" that the Rule 23 requirements are met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. 2008). Rather, the "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *Id.* at 320. The determination of whether a plaintiff has met her burden requires "rigorous analysis" by the trial court. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Zinser*, 253 F.3d at 1186; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311-12 (requiring "rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence" before certifying a class.) In conducting the requisite "rigorous analysis," "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307; *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) ("Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims.") (citation omitted).

As the Ninth Circuit recently affirmed, a defendant may bring a "preemptive" motion to deny class certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.") Consideration of a preemptive motion is proper unless the plaintiff can show "some procedural prejudice from the timing of the consideration." *Id.* at 944.

In *Vinole*, the district court properly decided the defendant's motion, even though the defendant filed it before the plaintiffs' deadline for moving for class certification and before the discovery cut-off. 571 F.3d at 942-43. In reaching this conclusion, the Ninth Circuit noted that the scheduling order did not "provide[] Plaintiffs an exclusive right . . . to address the issue of class certification," and rejected the plaintiffs' argument that

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                                CV08-07919 GAF

1   "[they] are entitled to complete control over the timing of a district court's consideration

2   of the class certification issue." *Id.* at 942.  The Court then rejected the plaintiffs'

3   contention that they would be prejudiced, finding that they were given sufficient time to

4   conduct class discovery ("nearly ten months . . . between the time Plaintiffs filed their

5   original class action complaint and their opposition to [the defendant's] motion"); they

6   had actually conducted significant discovery; and they "did not intend to propound any

7   additional discovery" concerning class issues. *Id.* at 943.

8          The Ninth Circuit's analysis in *Vinole* applies equally here.  As in *Vinole*, the

9   order setting the deadline for filing a class certification motion does not create an

10  exclusive right for the plaintiff to address class certification.  Knopp Decl. ¶ 4, Ex. C

11  (7/24/09 Order by Judge Fees.)  Nor can York show procedural prejudice.  Just like the

12  plaintiffs in *Vinole*, York will have had ten months to conduct class discovery between

13  filing her complaint (on December 2, 2008) and opposing this Motion (on October 14,

14  2009).  Further, like the plaintiffs in *Vinole*, York has conducted significant class

15  discovery already, having propounding 116 Requests for Production of Documents, 105

16  Interrogatories, and 8 Requests for Admission, and also having taken the deposition of a

17  Starbucks Rule 30(b)(6) witness.  Knopp Decl. ¶ 3.  Finally, whereas the plaintiffs in

18  *Vinole* had no intention of taking further class discovery, York is precluded from doing

19  so here, because she agreed not to take any new class discovery when she negotiated an

20  extension of her class filing deadline.  Knopp Decl. ¶ 4, Ex. C (7/24/09 Order by Judge

21  Fees.)  Because York has had ample time for discovery concerning her class claims, she

22  will not be prejudiced if the Court decides class certification at this time.  Under *Vinole*,

23  therefore, this Motion is proper.[2]

24

25

26

27      [2] Prior to the July 24, 2009 Order, York requested discovery of time records of putative class
    members, but as explained in Section III.B.3, below, those records are irrelevant to this motion.  Knopp
28  Decl. ¶ 5, Ex. D (7/29/09 letter from Matthew Theriault to Mark Curiel.)

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

**B.    York Cannot Satisfy Her Burden Under Rule 23(b).**

To justify class certification, York must prove that one of the requirements of Rule 23(b) is met. *Zinser*, 253 F.3d at 1186 ("As the party seeking certification, [Plaintiff] bears the burden of demonstrating that she has met . . . at least one of the requirements of Rule 23(b).")  She cannot satisfy any of these elements.

1.    Certification Under Rule 23(b)(1) Is Improper

Certification under Rule 23(b)(1)(A) is proper only where separate actions would "create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct *for the party opposing the class*." Fed. R. Civ. P. 23(b)(1)(A) (emphasis added).  This provision "requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.'" *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1263-64 (10th Cir. 2004) (citation omitted).  Rather, the relevant question is whether the defendant would be unable to comply with separate, inconsistent judgments. *McDonnell Douglas Corp. v. U.S. Dist. Ct.*, 523 F.2d 1083, 1086 (9th Cir. 1975).

Here, there is no such risk.  "[A] judgment that defendants were liable to one plaintiff would not require action inconsistent with a judgment that they were not liable to another plaintiff." *McDonnell Douglas*, 523 F.2d at 1086.  There is simply no reason why Starbucks could not pay meal and/or rest break penalties to one employee and not another.  Accordingly, certification is not proper under Rule 23(b)(1)(A). *See Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006) (explaining that class members proceeding separately "would not affect the rights of the other [class members]"), *reversed in part on other grounds*, 275 Fed. Appx. 672 (9th Cir. 2008).

Nor does Rule 23(b)(1)(B) apply.  Certification under that provision is proper only where separate lawsuits by each class member would impair the interests of other class members. Fed. R. Civ. P. 23(b)(1)(B); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (when plaintiffs seek certification under Rule 23(b)(1)(B), "the

11

shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members."). More specifically, subsection B was enacted to address the "limited fund class action . . . aggregating 'claims . . . made by numerous persons against a fund insufficient to satisfy all claims.'" *Ortiz*, 527 U.S. at 834 (quoting Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C. App., p. 697); *cf.* Newberg & Conte, Class Actions § 4.09, p. 4-33 (3d ed. 1992) ("Classic" limited fund class actions "include claimants to trust assets, a bank account, insurance proceeds, company assets in a liquidation sale, proceeds of a ship sale in a maritime accident suit, and others") (quoted in *Ortiz*, 527 U.S. at 834). "[T]o satisfy Rule 23(b)(1)(B), a class action plaintiff must demonstrate that the case involves a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." *Zinser*, 253 F.3d at 1197 (quoting *Ortiz*, 527 U.S. at 841). Because there is no "fund with a definitely ascertained limit" at issue here, certification under Rule 23(b)(1)(B) would be improper.

> ### 2.    Certification Under Rule 23(b)(2) Is Improper

Under Rule 23(b)(2), certification is appropriate only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2), advisory comm. note (1966). Indeed, "in order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).

These principles preclude certification of York's meal and rest break claims. With respect to those claims, York seeks monetary relief exclusively. Thus, while she

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1  requests injunctive relief under her Seventh Cause of Action under Labor Code section
2  226(a), FAC ¶ 44, she does *not* do so with respect to her break claims. *See* FAC ¶¶ 10-
3  21. Indeed, as a former employee, York lacks standing to seek injunctive relief. *See*
4  *Nelsen v. King County*, 895 F.2d 1248, 1254-55 (9th Cir. 1990) (explaining that class
5  certification is inappropriate under 23(b)(2) where the plaintiffs are no longer subject to
6  challenged conduct and thus lack standing to seek injunctive relief).

7        Regardless, York cannot seriously contend that enjoining Starbucks current
8  conduct—which has absolutely no impact on her—is her primary objective.  Courts in
9  wage-and-hour cases consistently hold that a former employee, who is no longer subject
10 to the employer's policies, cannot obtain certification under Rule 23(b)(2). *See, e.g.,*
11 *Kurihara v. Best Buy Co., Inc.*, No. C 06-01884 MHP, 2007 WL 2501698, *8 (N.D. Cal.
12 Aug. 30, 2007) (explaining that "courts routinely deny class certification under Rule
13 23(b)(2) where the named plaintiff is a former employee and therefore will not benefit
14 from the requested injunctive relief"); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241,
15 250 (C.D. Cal. 2006) (denying class certification where "Plaintiffs' monetary relief
16 predominates over the request for injunctive relief" because "Plaintiffs are former
17 employees and thus an injunction as to Domino's behavior to current employees cannot
18 be Plaintiffs' primary concern."); *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV-06-
19 1136, 2006 WL 4393465, *3 (C.D. Cal. Sept. 7, 2006) (denying certification under Rule
20 23(b)(2) because named plaintiff was a former employee).  Accordingly, certification
21 under Rule 23(b)(2) is not proper.

22              3.    Certification Under Rule 23(b)(3) Is Improper
23        York must show that common issues of fact or law "predominate over any
24 questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  In determining
25 predominance, the Court must look to "the substantive issues raised by Plaintiff[] and
26 . . . the proof relevant to each issue." *Jimenez*, 238 F.R.D. at 251.  If the substantive
27 issues require individual proof for each member's claims, then class certification is
28 inappropriate. *Zinser*, 253 F.3d at 1189 (quoting 7A Wright, Miller & Kane, Federal

13

1  Practice & Procedure § 1778, at 535-39 (2d ed. 1986)).  Here, class certification of

2  York's meal break and rest break claims would be improper because individualized

3  proof is required for both of these claims.

4                              a)    York's Meal Break Claim

5          The California Labor Code states that "[a]n employer may not employ an

6  employee for a work period of more than five hours per day without *providing* the

7  employee with a meal period of not less than 30 minutes . . . ."  Cal. Lab. Code § 512(a)

8  (emphasis added); *see also* Cal. Lab. Code § 226.7(a) (an employer who "*fails to*

9  *provide*" an employee a due meal period must pay an additional hour of pay) (emphasis

10  added).

11          Consistent with the Labor Code's plain language, California District Courts have

12  consistently held that an employer need only provide meal breaks, not ensure that

13  employees actually take their break or "do any particular thing during that time." *Brown*

14  *v. Fed. Express Corp.*, 249 F.R.D. 580, 585-86 (C.D. Cal. 2008); *see also Marlo v.*

15  *United Parcel Serv., Inc.*, No. 03-04336, 2009 WL 1258491, at * 9 (C.D. Cal. May 5,

16  2009) ("The Court holds that [sections 512 and 226.7 of the Labor Code] require that

17  employers make a meal period *available* to employees, but place them under no further

18  obligations.") (emphasis in original); *Wren v. RGIS Inventory Specialists*, 256 F.R.D.

19  180, 208 (N.D. Cal. 2009) ("under California law an employer must offer meal breaks

20  but is not required to force employees to take them."); *Watson-Smith v. Spherion Pac.*

21  *Workforce, LLC*, No. 07-5774, 2008 WL 5221084, *3 (N.D. Cal. Dec. 12, 2008) ("The

22  Court . . . finds that employers have an obligation to *provide* meal breaks, but are not

23  strictly liable for any employee who fails to take a meal break, regardless of the

24  reason") (emphasis in original); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D.

25  Cal. 2008) ("the Labor Code . . . does not require an employer to ensure that an

26  employee take a meal break"); *Kimoto*, 2008 WL 4690536, at *6 ("If the issue were

27  before it, the California Supreme Court would adopt [the provide not ensure]

28  construction of the meal and rest period provisions."); *Gabriella v. Wells Fargo Fin.*,

*Inc.*, No. 06-4347, 2008 WL 3200190, at *3 (N.D. Cal. Aug. 4, 2008) (finding that the California Supreme Court would agree that meal breaks need only be "'made available' and not 'ensured.'"); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008) ("[W]hile employers cannot impede, discourage or prohibit employees from taking meal breaks, they need only make them available, not ensure they are taken."); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529, 533 (S.D. Cal. 2008) ("The Court agrees with the compelling reasons advanced by the *White*, *Brown*, and *Kenny* decisions for interpreting 'provide' to mean 'make available' rather than 'ensure taken.'"); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007) ("[T]he California Supreme Court . . . would require only that an employer offer meal breaks, without forcing employers actively to ensure that workers are taking these breaks"); *Lanzarone*, 2006 WL 4393465, at *6.[3]

Because an employer need only make meal breaks available, to prove a violation, a plaintiff must do more than show that a break was missed. Rather, she must show that her employer "impede[d], discourage[d] or prohibit[ed]" her from taking a proper break." *Perez*, 253 F.R.D. at 515. This crucial issue—the ***reason*** an employee did not take a proper break—cannot be decided by common proof, but rather depends on each individual's particular circumstances. Thus, courts have consistently denied certification of meal break claims where the employer's policy was facially compliant with the law. *See Wren*, 256 F.R.D. at 208 (certification denied because "many individualized inquiries will be necessary . . . to determine the reason meal breaks were missed and whether they were waived."); *Gabriella*, 2008 WL 3200190, at *3 (certification denied "because defendants' liability turns on whether meal and rest periods were made available and the reasons why breaks were missed" and as such

---

[3] Likewise, the California Division of Labor Standards Enforcement ("DLSE") has stated that the most compelling interpretation of the Labor Code is that there is no duty to ensure that employees actually take their meal breaks. *See* DLSE Memorandum dated October 23, 2008 (Exhibit B to Starbucks Appendix of Other Authorities).

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                                    *CV08-07919 GAF*

1  "individual issues predominate."); *Lanzarone*, 2006 WL 4393465, at *4 (certification

2  denied because the Court would have to address issues such as whether each employee

3  was denied a rest or meal break and whether such breaks were of proper length "on a

4  one by one basis for all of the [employees] in the proposed class."); *Brown*, 249 F.R.D.

5  at 586 (certification denied because a showing under the provide-not-ensure standard

6  "will require substantial individualized fact finding."); *Salazar*, 251 F.R.D. at 533-34

7  (certification denied because the provide-not-ensure standard requires "plaintiffs [to]

8  show defendants *forced* plaintiffs to forego missed meal periods" and therefore

9  "forecloses class-wide adjudication of claims.") (emphasis in original).

10      The *Kenny* decision is directly on point. In that case, the plaintiffs alleged that

11  their employer's hair salons were too busy to permit employees a meaningful

12  opportunity to take proper meal breaks. 252 F.R.D. at 646. The Court explained that,

13  under the "provide not ensure" standard, "an employer is not liable for 'failing to

14  provide a meal break' simply because the evidence demonstrates that the employee did

15  not actually take a full 30-minute meal break." *Id.* Accordingly, the plaintiffs' theory

16  "requires an individual inquiry into each store, each shift, each employee" to determine

17  why the employee missed their break—i.e., because the employee chose to do so, or

18  because they were instructed to do so. *Id.* Because "[l]iability cannot be established

19  without individual trials for each class member to determine why each class member did

20  not clock out for a full 30-minute meal break on any particular day," the Court held that

21  individual issues predominated and thus denied class certification. *Id.*; *see also Kimoto*,

22  2008 WL 4690536, at *6 ("[a]ssessing whether a McDonald's employee was *authorized*

23  by his or her manager to take a rest or meal break period would require an

24  individualized, highly fact-specific inquiry to determine whether a divergent method

25  applied in a particular restaurant, by particular managers, to particular shifts, to

26  particular crew members") (emphasis in original).

27      These cases preclude certification of York's meal break claim here. Importantly,

28  as in all the cases cited above, York does not dispute that her employer's meal break

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                         *CV08-07919 GAF*

1  policy is fully compliant with the law.  Because Starbucks policy is facially compliant,

2  York cannot rely on that policy to show that common issues predominate with respect to

3  her claim.  *See, e.g., Kenny*, 252 F.R.D. at 642 (denying class certification where

4  "[d]efendants had and have a policy that facially complies with California's meal break

5  requirements" and plaintiff "claims that despite the official policy, defendants actually

6  'have an ongoing practice of not providing meal breaks' and not paying the additional

7  one hour of wages for every missed or shortened meal break."); *Wren*, 256 F.R.D at 208

8  ("In the absence of any explicit policy on the part of [the employer] to which the missed

9  meals can be attributed and in light of the individualized inquiries necessary to evaluate

10  the practice of [the employer] as to employee meal breaks . . . Plaintiffs' meal break

11  claims do not meet the requirements of Rule 23(b)(3)."); *Garcia v. Sun Pac. Farming

12  Co-op.*, No. CV 06-0871, 2008 WL 2073979, at *10 (E.D. Cal. May 14, 2008) (lawful

13  company-wide wage and hour policy cannot form the basis for class certification);

14  *Lanzarone*, 2006 WL 4393465, at *4 (concluding that "[the employer] has no policy that

15  violates the law . . . As a result, the bulk of the issues that are truly in dispute in this

16  matter are inherently individualized.").

17       Rather, York claims that she was denied proper meal breaks ***in spite of*** Starbucks

18  lawful policy.  But absent any common policy resulting in meal break violations, the

19  only way to adjudicate the meal break claim would be by examining each individual's

20  particular circumstances, something that cannot be done in a class action.  The evidence

21  concerning York's own circumstances prove this point.

22       *First*, the factfinder could not determine whether York was even entitled to a meal

23  break without evaluating her particular circumstances each shift.  Approximately 25

24  percent of York's shifts lasted less than five hours and thus did not trigger California's

25  meal break requirement.  Muthukrishnan Decl. ¶ 4, Ex. A.  Further, another 19 percent

26  of York's shifts lasted between five and six hours, in which case York had the option of

27  waiving her scheduled meal break.  Muthukrishnan Decl. ¶ 4, Ex. A; Industrial Welfare

28  Commission ("I.W.C.") Order No. 5-2001 Regulating Wage, Hours and Working

17

Conditions in the Public Housekeeping Industry (hereinafter "Wage Order") § 11(A) (employee who has worked no more than six hours may waive his or her meal break). The factfinder would need to consider evidence of each individual's daily work hours, and possibly testimony concerning a potential waiver, to determine whether any meal break was even due on a particular day. These determinations could not be made for thousands of individuals through common proof. *See Wren*, 256 F.R.D. at 208 (denying certification where "many individualized inquiries will be necessary . . . to determine . . . whether [meal breaks] were waived.").

*Second*, regardless of whether these determinations could be made on a class-wide basis, the assessment of whether Starbucks *denied* an employee a meal break could not, as York's testimony proves. According to York, whether an employee took a proper break depended on who was "running" the shift, given her testimony that the employees on *her* shifts always received proper breaks. Knopp Decl. ¶ 2, Ex. B (York Tr. at 137:10-22.) Whether an employee took a break as scheduled also depended on personal preference, as York sometimes chose to take her breaks earlier than scheduled before the store became busy, and other times chose to take her breaks later than scheduled to allow her co-workers to take their breaks first. *Id.* (York Tr. at 117:8:25; 120:24-121:6.) According to York, whether an employee took a break as scheduled also depended on the circumstances in the store at that particular time, including the volume of customers, "the staffing of the store," "how many tasks that needed to be done before the daily rush of business," and the quality of the employees working at the time. *Id.* (York Tr. at 121:7-11; 122:11-14; 123:25-124:6; 131:17-132:19.) Finally, whether an employee was interrupted during a break depended on many of these same factors, as well as whether they chose to remain at the store during their break, as York was could not recall ever being interrupted when she chose to leave. *Id.* (York Tr. at 129:7-11.)[4]

---

[4] Starbucks does not concede that "early" or "late" breaks even violate the Labor Code. Section 512(a) states that an employer "may not employ an employee for a work period of more than five hours *per day*" without a 30 minute break. Cal. Lab. Code § 512(a) (emphasis added). It does not

1       In short, to evaluate the meal break claim for even a single individual on a single

2   day, the factfinder would need to consider a wide range of factors—including who was

3   running the shift, the individual's personal preferences, the customer volume, and the

4   staffing complement in the store—none of which is amenable to common proof. Class

5   adjudication is simply not possible where, as here, resolving the claim "would require

6   an individualized, highly fact-specific inquiry to determine whether a divergent method

7   applied in a particular restaurant, by particular managers, to particular shifts, to

8   particular crew members." *Kimoto*, 2008 WL 4690536, at *6.

9       No additional discovery would change this conclusion. York's only pending

10  discovery relevant to her break claims is her request for time records of a sampling of

11  putative class members. But time records would shed no light on ***why*** a break was

12  missed or untimely, and thus the central question—whether Starbucks failed to provide

13  the employee a proper break—would be no less individualized. Indeed, courts have

14  consistently found that time records cannot suffice as common proof of meal break

15  violations where the employer has a lawful policy. As this Court explained in *Brown*,

16  where the plaintiffs argued for "using time sheets as a common method of proof for

17  establishing the number of meal breaks and rest breaks missed by the class:"

18          the resources that would be expended on determining the reason for
19          missed breaks would exceed those saved by classwide determination
         of the number of breaks missed.

20
21  249 F.R.D. at 587; *see also Kenny*, 252 F.R.D. at 646 (since the law requires more than a

22  showing that the employee did not take a 30-minute break, the time records "actually

23  demonstrate the individual nature of the inquiry" because the disparity between

24  employees' break habits "suggests that 'the availability' of meal breaks varied employee

25  _____

26  state that a break is due per five consecutive hours of work. The statute's history confirms that an
employee's right to a meal period is determined by the total number of hours worked "per day," not by
the number of consecutive hours following the last meal. *See* AB 60, Legislative Counsel Digest (July
27  21, 1999), at 2 (employers must provide a first meal period to employees working "more than 5 hours
per day" and a second meal period to employees working "more than 10 hours per day") (Exhibit C to
28  Starbucks Appendix of Other Authorities).

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS            *CV08-07919 GAF*

1  to employee, or at least store to store or manager to manager."); *Salazar*, 251 F.R.D. at

2  534 (despite payroll records showing that individuals did not always stop working for a

3  30-minute meal period, "[l]iability cannot be established without individual trials for

4  each class member to determine why each class member did not clock out for a full 30-

5  minute meal break on any particular day.") (quoting *Kenny*, 2008 WL 2265194, at *6).

6  b)    York's Rest Break Claim

7         As with meal breaks, California law requires only that employers "*authorize and*

8  *permit* all employees to take rest breaks . . . at the rate of ten (10) minutes net rest time

9  per four (4) hours or major fraction thereof." Wage Order § 12(A) (emphasis added);

10  *see also Kimoto*, 2008 WL 4690536, at *4, 6 (rest breaks need only be made available

11  and not ensured); *Gabriella*, 2008 WL 3200190, at *3 (finding that the California

12  Supreme Court would agree that rest breaks need only be "'made available' and not

13  'ensured.'"); *Brown*, 249 F.R.D. at 585 ("[Employer] was required only to make meal

14  breaks *and rest breaks* available to Plaintiffs . . .") (emphasis added); *White*, 497 F.

15  Supp. 2d at 1085-86 ("the words 'authorize' and 'permit' only require that the employer

16  make rest periods available."); *Lanzarone*, 2006 WL 4393465, at *6 ("Under California

17  law, rest periods need only be authorized and permitted, they need not be enforced or

18  actually taken."). In fact, the DLSE has stated that "an employer is not subject to any

19  sort of penalty or premium pay obligation if an employee who was truly authorized and

20  permitted to take a rest break, as required under the applicable wage order, *freely*

21  *chooses without any coercion or encouragement* to forego or waive a rest period."

22  DLSE Op. Letter, 1/28/02 (emphasis in original) (cited with approval in *White*, 497 F.

23  Supp. 2d at 1085-86) (Exhibit D to Starbuck's Appendix of Other Authorities).

24         Because an employer need only make rest breaks available, the factfinder cannot

25  adjudicate the claim without evaluating the ***reason*** an employee did not take a proper

26  break. As with meal breaks, this question necessitates an individualized inquiry into

27  each employee's particular circumstances and thus precludes class treatment. *See*

28  *Brown*, 249 F.R.D. at 587 (denying class certification on rest break claims); *Kimoto*,

20

1   2008 WL 2690536, at *7 (same); *Gabriella*, 2008 WL 3200190, at *3 (denying class

2   certification after finding that individual issues predominated where a "variety of

3   circumstances [existed] under which class members missed meal and rest periods.").

4   The *Kimoto* court denied class certification of a rest break claim for this very

5   reason. Thus, it found that the evidence "might . . . show that in a particular case the

6   store manager instructed an employee to help a customers rather than take a ten-minute

7   break." 2008 WL 2690536, at *7. The court held that whether "[s]uch an instruction

8   could be viewed as the employer not 'providing' a meal [or rest] break . . . is an

9   individual question that cannot be resolved class wide." *Id*. Accordingly, the court

10  denied class certification under Rule 23(b)(3) "because liability cannot be established

11  without individual trials for each class member." *Id*.

12  The court reached the same conclusion in *Brown*, finding that the employee truck

13  drivers' ability to take breaks necessarily depended on each individual's job duties. 249

14  F.R.D. at 587. Other determining factors included the employees' volume of work and

15  their levels of monitoring. *Id*. The court concluded that these "highly individualized

16  factual inquiries . . . predominate over the few legal and factual issues shared by the

17  proposed class." *Id*.

18  Theses cases preclude certification here. As with meal breaks, York cannot

19  dispute that Starbucks rest break policies are fully compliant with the law. Accordingly,

20  York must prove that she and others were denied proper rest breaks—in spite of

21  Starbucks lawful policy—due to some common practice, rather than idiosyncratic

22  circumstances.

23  But York's own testimony precludes any such finding. According to York,

24  whether an employee took a proper break depended on who was "running" the shift,

25  given her testimony that the employees on her shifts always received proper breaks.

26  Knopp Decl. ¶ 2, Ex. B (York Tr. at 154:18-25.) Whether an employee took a break as

27  scheduled also "really depended upon the volume of the store at the time and the

28  staffing level," as well as the quality of the employees working at the time. *Id*. (York Tr.

21

1    at 144:25-145:11; 147:10-21.)  Finally, whether an employee was interrupted during a

2    break depended on all these same factors, as well as whether they choose to remain at

3    the store during their break, as York could not think of any instance when she was

4    interrupted upon leaving the store during a break.  *Id.* (York Tr. at 152:5-22; 129:7-11.)

5    On some occasions when her rest break was interrupted, York began a new break when

6    the opportunity presented itself; other times, she did not.  *Id.* (York Tr. at 152:5-22.)

7    Whether she did so depended on the volume of customers, staffing and the tasks she was

8    expected to complete.  *Id.* (York Tr. at 152:5-22.)  Moreover, if a break was delayed, the

9    amount of delay varied widely, and also depended on a variety of factors such as the

10   volume of customers and the staffing of the store.  *Id.* (York Tr. at 147:25-148:9.)

11        All of these factors—concerning the person running the shift, personal

12   preference, and the circumstances in the store on a particular day—must be evaluated,

13   and each of them depends on individualized evidence.  The issue of whether Starbucks

14   failed to provide rest breaks to putative class members will, therefore, require a highly

15   individualized inquiry that could not be accomplished for thousands of individuals in a

16   single proceeding.  Accordingly, the Court should deny class certification of York's

17   Second Cause of Action for rest break violations.

18                    c)    Superiority

19        In addition to proving that common issues predominate, York must prove that

20   class adjudication would be superior to other methods of adjudicating the controversy.

21   "If each class member has to litigate numerous and substantial separate issues to

22   establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser*,

23   253 F.3d at 1192.  In *Brown*, for example, the superiority requirement was not met

24   because "the Court would be mired in over 5,000 mini trials . . . [that would] require

25   individual class members to establish the reason for their missed breaks."  249 F.R.D. at

26   587-88.

27        For the same reason, a class action would be totally unmanageable here.  The

28   Court would become mired in thousands of mini-trials regarding each of the discrete

                                        22

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                                    *CV08-07919 GAF*

1    issues described above concerning whether—and, if so, why—proper breaks were not

2    taken. As in *Brown*, where each employee would have had to establish the reason for

3    potentially improper breaks, "class members would face many of the same difficulties in

4    motivation and expenditure of resources that they would encounter in separate actions."

5    249 F.R.D. at 587-88. For these reasons, a class action is not the superior method of

6    adjudication. *See, e.g., Jimenez*, 238 F.R.D. at 253 (concluding, in an overtime case,

7    that "a class action would be unmanageable because of the individualized inquiries

8    required"); *Lewallen v. Medtronic USA, Inc.*, No. C 01-20395 RMW, 2002 WL

9    31300899, *6 (N.D. Cal. 2002) (noting that "[i]f each class member has to litigate

10   numerous and substantial issues to establish his or her right to recover individually, a

11   class action is not superior").

## IV.    CONCLUSION

For the foregoing reasons, Starbucks respectfully requests that the Court grant its

Motion to Deny Class Certification as to York's meal and rest break claims.

Dated:  September 23, 2009                AKIN GUMP STRAUSS HAUER &
                                         FELD LLP


                                         By
                                            Gregory W. Knopp
                                         Attorneys for Defendant Starbucks
                                         Corporation

DEFENDANT STARBUCKS CORPORATION'S MOTION TO DENY CERTIFICATION OF PLAINTIFF'S
MEAL PERIOD AND REST BREAK CLAIMS                          *CV08-07919 GAF*