Gene Williams (SBN 211390)
GWilliams@InitiativeLegal.com
Matthew T. Theriault (SBN 244037)
MTheriault@InitiativeLegal.com
Dina S. Livhits (SBN 245646)
DLivhits@InitiativeLegal.com
Jennifer Grock (SBN 245671)
JGrock@InitiativeLegal.com
Initiative Legal Group, APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Plaintiff Summer York

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| SUMMER YORK, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>STARBUCKS CORPORATION, a Washington corporation and STARBUCKS COFFEE COMPANY, a Washington corporation; and DOES 1 through 20, inclusive,<br><br>        Defendant. | Case No.: CV08-07919 GAF (PJWx)<br><br>Assigned to the Hon. Gary A. Feess<br><br>**PLAINTIFF SUMMER YORK'S OPPOSITION TO DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:     November 30, 2009<br>Time:     9:30 a.m.<br>Place:    740 |

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 1

II.   FACTS ....................................................................................................... 3

      A.   York's Frequent Off-the-Clock Work ........................................... 3

      B.   Starbucks' Failure to Timely Pay Her Final Wages ...................... 4

      C.   Starbucks' Non-Compliant Wage Statements ............................... 5

III.  ARGUMENT .............................................................................................. 5

      A.   Defendant Carries the Burden to Prevail by Summary

           Judgment ......................................................................................... 5

      B.   Defendant Is Not Entitled to Judgment on Plaintiff's Off-

           the-Clock Claims Because Defendant Had Actual and

           Constructive Knowledge That Plaintiff Worked Off-the-

           Clock ............................................................................................... 6

      C.   Defendant Is Not Entitled to Judgment on Plaintiff's Fifth

           Cause of Action Because Defendant Willfully Failed to Pay

           All Wage Due Upon Her Termination ........................................... 10

      D.   Defendant Is Not Entitled to Judgment on Plaintiff's

           Seventh Claim for Failure to Furnish Compliant Wage

           Statements ....................................................................................... 16

IV.   CONCLUSION ......................................................................................... 25

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aluisi v. Elliott Mfg. Co.*, 2009 U.S. Dist. LEXIS 20180 (E.D. Cal 2009) ................................................................................................. 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................ 3, 4

*Elliott v. Spherion Workforce, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal. 2008) ................................................................................................. *passim*

*Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981) ...................................................................................................... 5, 7

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. Wash. 2009) ................... 21

*Hodgson v. Sullivan,* No. Civ. No. 681387-ALS, 1972 U.S. Dist. LEXIS 12958 (C.D. Cal. June 29, 1972) ........................................... 6

*Leisnoi, Inc. v. Stratman*, 154 F.3d 1062 (1998) .............................................. 21

*Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001 (C.D. Cal. 2000) ......................................................................................................... 21

*Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc.,* 45 F.3d 96 (5th Cir. 1995) ......................................... 13

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ......................................................................................................... 4

*Stender v. Lucky Stores*, 803 F. Supp. 259 (N.D. Cal. 1992) ............................ 6

*Wang v. Chinese Daily News*, 435 F. Supp. 2d 1042 (2006) ............................ 16

*White v. Starbucks Corp.,* 497 F. Supp. 2d 1080 (N.D. Cal., 2007) ................. 5, 7

*Woodruff v. North Bloomfield Gravel Min. Co.*, 18 F. 753 (C.C.D. Cal. 1884) ................................................................................................ 20

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

STATE CASES

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005) ............................ *passim*

*Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1 (1981) ................. *passim*

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728
(1981) ...................................................................................................... 5

*Berrymon v. St. Vincent Medical Center*, BC 391114 (Los Angeles
Sup. Ct. July 22, 2009) ........................................................................ 16

*Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005) .............. *passim*

*Clarke v. First Transit, Inc.*, C.D. Cal. Case No. CV 07-6476 GAF
(MANx) ................................................................................................. 19

*Connerly v. State Personnel Bd.*, 37 Cal. 4th 1169 (2006) ............................... 21

*Davis v. Morris*, 37 Cal. App. 2d 269 (1940) ............................................. *passim*

*Delane v. Superior Court*, 50 Cal. 3d 785 (1990) ............................................ 15

*Flores v. Smith*, 47 Cal. App. 2d 253 (1941) .................................................. 17

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ............................................ 6

*Harrington v. Payroll Entm't Serv., Inc.*, 160 Cal. App. 4th 589
(2008) ................................................................................................... 10

*Kisliuk v. ADT Security Services, Inc.*, C.D. Cal. Case No. CV 08-
03241 DSF (RZx) ................................................................................. 21

*Liera v. Los Angeles Finance Co.*, 99 Cal. App. 2d 254 (1950) ....................... 17

*Mamika v. Barca*, 68 Cal. App. 4th 487 (1998) ................................................ 9

*Meller & Snyder v. R & T Properties, Inc.*, 62 Cal. App. 4th 1303
(1998) ................................................................................................... 17

*Morillion v. Royal Packing Co.,* 22 Cal. 4th 575 (2000) ................................ 5, 7

*People v. United National Life Ins. Co.*, 66 Cal. 2d 577 (1967) ....................... 21

*Price v. Starbucks Corp.,* BC384435, Slip. Op. at 10 (Los Angeles
Sup. Ct. Oct. 3, 2008) ......................................................................... 16

*Roseborough v. Campbell*, 46 Cal. App. 2d 257 (1941) .................................... 17

*Triad Data Services, Inc. v. Jackson*, 153 Cal. App. 3d 1 (1984) ........................ 9

*Zavala v. Scott Bros. Dairy, Inc.*, 143 Cal. App. 4th 585 (2006) ....................... 16


FEDERAL STATUTES

29 C.F.R. § 778.109 ....................................................................................... 16

Rule of Civil Procedure 56(c) ......................................................................... 3

Rule of Civil Procedure 56(e) ......................................................................... 4

Federal Rule of Evidence 404(b) .................................................................. 13


STATE STATUTES

Industrial Welfare Commission Order No. 4-2001, §7(A)(3) ............................. 6

Labor Code section 201 ............................................................................. 8, 13

Labor Code section 202 ............................................................................. 8, 13

Labor Code section 203 .......................................................................... 3, 8, 9

Labor Code section 226(a)(2) .................................................................. *passim*

Labor Code section 226(a)(8) .................................................................. *passim*

Labor Code section 226(e) ...................................................................... *passim*

Labor Code section 510 .............................................................................. 16

Labor Code section 1174(d) ......................................................................... 6

Title 8, California Code of Regulations, § 13520 ............................................. 10


SECONDARY AUTHORITIES

2002.5.17 DLSE, Opinion Letter No. 2006.07.06, at p. 3 ................................. 14

BLACK'S LAW DICTIONARY p. 924, col. 1 (4TH ED.1968) .......................... 11, 20

DLSE Opinion Letter 2002.05.17 ................................................................. 15

DLSE Opinion Letter 2006.07.06 ................................................................. 15

Restatement (Second) Torts, § 7 ................................................................. 20

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

The American Heritage Dictionary of the English Language, 4th
  Edition (2000) .................................................................. 20

Webster's 3d New Internat. Dict. (1993) p. 1164.............................................. 20

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

# I.    INTRODUCTION

Having failed to obtain a pre-emptive ruling on Plaintiff Summer York's meal and rest period claims on a class-wide basis, Starbucks Corporation now seeks judgment on Ms. York's individual off-the-clock and wage statement claims, as well as a certain aspect of Ms. York's late final pay claims.

Starbucks, however, cannot obtain judgment on Ms. York's off-the-clock claims because it fails to demonstrate the absence of disputed material facts. Starbucks concedes that Ms. York performed work without pay, but attempts to establish the work occurred voluntarily and unbeknownst to her managers. Starbucks' own evidence does not support this conclusion. Ms. York's sworn testimony is that her managers directed her to work off-the-clock. Thus, Starbucks cannot meet its burden as to the only relevant inquiry, whether Starbucks knew or should have known that Ms. York performed off-the-clock work. Starbucks then attempts to shift focus from whether it should have known that the work was performed to whether it should have known that Ms. York was (or, more precisely, was not) *paid* for the work performed. This improperly places the burden of obtaining wages for work performed on the employee, and not the employer. It also results in the illegal waiver of wages.

However, even under this misinterpretation of the law, Ms. York demonstrates that Starbucks knew or should have known that she was not *paid* for all work she performed. Specifically, Starbucks' managers were charged with the responsibility of ensuring not only accurate time-keeping, but also ensuring that the employees were properly compensated for time actually worked. Starbucks is not entitled to judgment on Ms. York's off-the-clock claims under any theory.

Starbucks fairs no better with respect to Ms. York's claim that Starbucks' "willfully" failed to pay her all final wages on the day of her termination. Starbucks does not attempt to establish that Ms. York was paid all premium

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

wages for missed meal and rest breaks.  Instead, Starbucks' moves on the narrow issue of whether its failure to pay York's accrued vacation and "reporting-time" wages on the day of her termination was "willful," claiming that an inadvertent "processing error" exculpates it from paying "waiting-time" penalties mandated by California law.  No such defense exists, and no court has ever excused an employer's "negligence" in failing to pay final wages on the day of the employee's separation.  Rather, the law places an affirmative obligation on employers to timely pay final wages, and errors of their own making -- "processing errors" -- are "willful" failures under California law.

Starbuck's willfulness is evidenced by failing to promptly pay final wages even after Ms. York repeatedly complained about it.  Further, pattern and practice evidence establishes that there was nothing inadvertent about Starbucks' failure, since it makes that same "mistake" around 50% of the time, resulting in tens of thousands of former employees having to wait – often times more than a week – for their final pay when the law requires an immediate payment.  An employer's widespread failure to comply with California law cannot be excused by negligence, and summary adjudication as to Ms. York's claims for waiting-time penalties must be denied.

Finally, Starbucks cannot establish that it provided Ms. York with wage statements containing each of the nine separate and distinct pieces of information required by California law.  The wage statements provided to Ms. York and all other class members failed to provide a total of the hours worked, the name of the legal entity, and all applicable hourly rates.

By way of footnote only, Starbucks raises whether Ms. York may obtain penalties for wage statement violations if she has not suffered any pecuniary harm or emotional distress.  Starbucks' impermissibly narrow definition ignores that "injury" under California law requires only an infringement upon a legal right (i.e. to receive compliant wage statements and not, as Starbucks' argues,

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  pecuniary harm, damages, emotional distress or confusion).

2  Accordingly, Defendants' Motion for Summary Adjudication should be denied

3  in its entirety.

4  **II.    FACTS**

5      **A.    York's Frequent Off-the-Clock Work**

6      Starbucks Corporation ("Starbucks" or "Defendant") employed Plaintiff

7  Summer York ("Plaintiff" or "York") as a barista and shift supervisor from

8  January 15, 2003 until August 20, 2008.  (Plaintiff's Separate Statement of

9  Undisputed/Disputed Facts in Opposition to Motion for Summary Adjudication

10  ("UDF") Nos. 1-4.)  Although York was responsible for entering her time on the

11  Point-of-Sales time-keeping system (UDF No. 7), her managers were *solely*

12  responsible for ensuring that her time records, and the time records of all store-

13  level employees (also called partners), were accurate, and that the proper time

14  was transmitted to the payroll department in Seattle, Washington.  (UDF No.

15  67.)

16      York was directed by her managers to perform off-the-clock work with

17  such great frequency that it became an almost daily occurance.  (UDF Nos. 62-

18  63.)  Specifically, York was directed to pick up supplies from other stores, clean

19  store lobbies, take the garbage out, and check and clean the store bathrooms.

20  (UDF No. 62.)  York also performed off-the-clock work in accordance with

21  Starbucks' closing procedures, which required the closing partners to punch out

22  before the supervisor set the alarm.  (UDF No. 16).  Sometimes York worked

23  only one to two minutes off-the-clock, but on most occasions when she

24  performed off-the-clock work, it resulted in five to twenty minutes of

25  uncompensated time.  (UDF Nos. 15 and 16.)

26      York's off-the-clock work was not the exception; York regularly observed

27  other Starbucks employees performing off-the-clock work at the direct behest of

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  the store managers.  (UDF No. 64.)  Moreover, the off-the-clock work was not

2  isolated to one any particular store or manager.  (*Id.*)

3      The same managers who directed York and other partners to perform off-

4  the-clock work were responsible for ensuring that the partners were paid for the

5  time they worked.  (UDF No. 5.)  Starbucks' managers were responsible for

6  editing time entries to ensure proper compensation (UDF No. 67), including

7  editing time entries to reflect and effectuate payment of off-the-clock work.

8  (UDF No. 62.)  Despite Starbucks' knowledge that York had performed work

9  off-the-clock, she was not compensated for the vast majority of it.  (UDF No.

10  77.)  Thus, Starbucks' assertion that York's managers did not know she

11  performed off-the-clock work for which she was not compensated is disputed.

12  (UDF No. 30.)  Starbucks' (irrelevant and immaterial) assertion that York did

13  not complain about having to perform work off-the-clock for which she was not

14  compensated is also disputed.  (UDF No. 66.)

15      **B.    Starbucks' Failure to Timely Pay York's Final Wages**

16      On August 20, 2008, York's manager, Carolyn Dach, terminated York.

17  (UDF No. 32.)  The "final" paycheck present by Dach on that date did not

18  include York's accrued vacation wages or the time spent at her termination

19  meeting.  (UDF Nos. 32 and 36.)[1]  Later that day, York notified Starbucks'

20  Partner Contact Center that her final paycheck did not include her vacation pay.

21  (UDF No. 71.)

22      By August 26, 2008, York called Starbucks again to inquire about her

23  missing vacation pay, because Starbucks had taken no steps to pay York.  (UDF

24  _____

25      [1] York also claims that she was not paid all final wages due and owing to
    her by virtue of Starbucks' failure to pay her for off-the-clock work, and her
26  unpaid meal and rest period penalty payments.  However, Starbucks
    Corporation's Motion for Summary Judgment ("Def.'s Mot.") with respect to the
27  untimely payment of final wages claim is strictly limited to the issue of whether
    the delay in payment of her vacation wages was "willful" under Labor Code
28  section 203.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

No. 72.)  Despite being on notice of the error, Starbucks did not issue a check until August 29, 2009.  (UDF No. 73.)  The vacation pay was sent via U.S. Mail, in violation of Starbucks' internal policy of sending final wages to separated employees via overnight mail.  (UDF No. 74.)  Although California Labor Code section 201 requires that final wages be paid on the day of termination, York did not receive her unpaid vacation wages until at least nine days later.  (UDF No. 75.)

With regard to York's "reporting-time" pay, or the money owed for the time she spent attending her termination meeting with Dach, York did not receive it until September 5, 2008. (UDF No. 43.)  When Starbucks finally paid York for her earned vacation wages and reporting-time pay, neither payment included any "waiting-time" penalties pursuant to Labor Code section 203, despite Starbucks' awareness of its obligation to pay waiting time penalties. (UDF No. 76.)

### C.    Starbucks' Non-Compliant Wage Statements

From December 4, 2007 until August 20, 2009, York received form wage statements that failed to list the total hours worked, all applicable hourly rates, and the name of the legal entity that was York's employer.  (UDF Nos. 68-70; 78-79.)

## III.    ARGUMENT

### A.    Defendant Carries the Burden to Prevail by Summary Adjudication

Summary adjudication is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    party, however, has no burden to negate or disprove matters on which the non-

2    moving party will have the burden of proof at trial.  The moving party need only

3    demonstrate to the Court that there is an absence of evidence to support the non-

4    moving party's case.  *Id*. at 325.  The burden then shifts to the non-moving party

5    to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting

6    Fed. R. Civ. P. 56(e)).

7         Nonetheless, in deciding a summary judgment motion, the evidence is

8    viewed in the light most favorable to the non-moving party, and all justifiable

9    inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc*., 477

10   U.S. 242, 255 (1986).  "Credibility determinations, the weighing of the evidence,

11   and the drawing of legitimate inferences from the facts are jury functions, not

12   those of a judge [when he] is ruling on a motion for summary judgment." *Id*.

13        **B.    Defendant Is Not Entitled to Judgment on Plaintiff's Off-the-**

14             **Clock Claims Because Defendant Had Actual and Constructive**

15             **Knowledge That Plaintiff Worked Off-the-Clock**

16        York alleges that she was repeatedly instructed by her managers to

17   perform off-the-clock work for which she was not compensated, which is a

18   material fact that supports her First Cause of Action for unpaid overtime and her

19   Fourth Cause of Action for unpaid minimum wages.  First Amended Complaint,

20   ¶¶ 20, 23, 36-45, 70-76; *see, e.g.*, *Otsuka v. Polo Ralph Lauren Corp.*, 251

21   F.R.D. 439 (N.D. Cal. 2008) (class certification granted with respect to class

22   seeking overtime pay for off-the-clock claims); *Armenta v. Osmose, Inc.*, 135

23   Cal. App. 4th 314, 321-324 (2005) (affirming judgment for employees seeking

24   unpaid minimum wages for off-the-clock work).

25        For purposes of this Motion, Starbucks concedes that York performed off-

26   the-clock work.  (UDF Nos. 12-17.)[2]  York performed off-the-clock work at the

27   ─────────────

28        [2] Although each of these Undisputed Facts is couched as follows, "York
     claims [she performed off-the-clock work]," Starbucks does not attempt to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

direct behest of her managers. (UDF Nos. 62-64; *accord* UDF No. 1; 12-17.) In fact, York was "frequently" asked to perform off-the-clock work by her managers, this off-the-clock work was not limited to any particular store or manager, and York witnessed other partners performing off-the-clock work as a direct result of a manager's instruction. (UDF Nos. 62-64.) York was not paid for the vast majority of off-the-clock work she was instructed to perform. (UDF No. 77.)

Given these facts, Starbucks cannot prevail because York presents a genuine issue of material fact as to whether Starbucks had actual or constructive knowledge that she performed off-the-clock work. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) ("Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift . . . The employer knows or has reason to believe that he is continuing to work and the time is working time."); *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("an employer who knows or should have known that an employee is or was working overtime must comply with [the FLSA's overtime provisions]"); *White v. Starbucks Corp.,* 497 F. Supp. 2d 1080, 1083 (N.D. Cal., 2007) ("To prevail on his off-the-clock claim, White must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work.").

Starbucks' attempt to argue that it had no knowledge that York performed off-the-clock work "*for which she was not compensated*" misstates the law. *See* Def.'s Mot., 4:23-5:2, 7:22-8:9 (emphasis supplied). This shift in focus—from

disprove York's "claims" by asserting facts, material or inferential, that she did not in fact perform off-the-clock work. Under the standards governing summary judgment, Starbucks' failure constitutes a tacit acknowledgment that York performed off-the-clock work. *See Celotex Corp v. Catrett,* 477 U.S. 317, 323 (1986) (moving party bears initial burden of demonstrating absence of genuine issue of material facts). In any event, York's deposition testimony and declaration affirmatively demonstrate that she did in fact perform off-the-clock work, and that such work was performed at the express direction of her managers. (UDF Nos. 1; 62-64.)

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

knowledge of the work performed to knowledge of the *payment* for the work performed—is contrary to the employer's burden to ensure proper payment for work performed and would otherwise constitute an impermissible waiver of wages. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740-741 (1981) (employees may not waive right to minimum or overtime wage); *Forrester*, 646 F.2d at 414 ("An employer who is armed with this knowledge [off-the-clock work] cannot stand idly by and allow an employee to perform overtime without proper compensation, even if the employee does not make a claim for the overtime compensation."); *Gentry v. Superior Court*, 42 Cal. 4th 443, 456 (2007) ("the statutory right to receive overtime pay embodied in section 1194 is unwaivable"); *see also Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005) (the employer bears the burden to ensure that employees are compensated with one hour's additional pay if they are not permitted to take a meal break). Thus, Starbucks' knowledge of whether York was paid for work it knew she had performed is irrelevant and immaterial. Starbucks was aware (or should have been aware) that York performed off-the-clock work, and the law requires nothing more from an employee who brings a claim for unpaid wages.[3] (UDF Nos. 62-64; 77).

---

[3] This principle is also in accord with the employer's obligation to maintain records of hours worked. Cal. Labor Code § 1174(d) ("Every person employing labor in this state shall . . . [k]eep . . . payroll records showing the hours worked"); Cal. Labor Code § 226(a)(2) ("Every employer shall . . . furnish each of his or her employees . . . an accurate itemized statement in writing showing . . . total hours worked by the employee); Industrial Welfare Commission Order No. 4-2001, §7(A)(3) ("Every employer shall keep accurate information with respect to each employee including . . . [t]ime records showing when the employee begins and ends each work period."); *see also Stender v. Lucky Stores*, 803 F. Supp. 259, 318 (N.D. Cal. 1992) ("Where an employer has failed to retain records, plaintiff is entitled to an inference that the documents would have supported his or her case."); *Hodgson v. Sullivan*, No. 681387-ALS, 1972 U.S. Dist. LEXIS 12958 (C.D. Cal. June 29, 1972) ("it is the employer who has the duty under [the FLSA] to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed").

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

Starbucks placed the responsibility of ensuring that the partners' (including York's) time records were accurately recorded and then accurately reported to Starbucks' payroll department in Seattle in the hands of the store managers.  (UDF No. 67; *accord* UDF No. 33 [York's manager requested final payment from payroll department]).  Thus, not only did Starbucks' managers habitually violate the company's "time worked equals time paid" policy, but they then failed to ensure that York was properly compensated for the off-the-clock work they directed her to perform even though they were responsible for ensuring proper payment for work performed.  *See Morillion*, 22 Cal. 4th at 585 ("The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.") (Internal citation omitted.).  Thus, Starbucks may not obtain summary judgment even under its own misguided interpretation of the law, because there is a material issue of genuine fact as to whether Starbucks knew or should have known that York had not been paid.  (UDF Nos. 62-64; 66-67; 77.)

This distinction renders *White v. Starbucks* inapposite.  In *White*, the plaintiff bringing the suit for unpaid wages *was* the store manager of a Starbucks store (for 11 days).  497 F. Supp. 2d. at 1082.  Since White was the store manager (and thus solely responsible for calculating and transmitting the time records to payroll for proper payment [UDF Nos. 33; 67]), Starbucks had no occasion to be aware of his off-the-clock work.  *Id.* at 1083 ("White does not dispute that he never told anyone at Starbucks about working off-the-clock").[4]

By contrast, York was not a manager and therefore not ultimately responsible for ensuring that she was properly paid for all time worked.  (UDF

_____

[4] Similarly, in *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 475 F. Supp. 630 (D. Ore., 1979), *aff'd* 646 F.2d 413, *supra*, the plaintiff who brought claims for wages as a result of off-the-clock work was the manager of the bakery department in a Roth's supermarket.  *Id.* at 631.  Being the manager, Forrester remained unsupervised with the exception of "occasional" visits with the store manager, and he was ultimately responsible for submitting his own time.  *Id.*

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  Nos. 65 and 67.)  Further, contrary to Starbucks' "undisputed" (but immaterial)

2  fact, York *did* complain about performing off-the-clock work, and she

3  complained to the same managers that had directed her to do it. (UDF No. 66.)

4  Her managers' failure to report York's off-the-clock work to the payroll

5  department cannot bar York from recovering wages she is owed.  Thus,

6  Starbucks' motion for summary adjudication with respect to the First and Fourth

7  Causes of Action must be denied because there are genuine issues of material

8  fact as to whether Starbucks' knew or should have known that York worked off-

9  the-clock.

10        **C.    Defendant Is Not Entitled to Judgment on Plaintiff's Fifth**

11              **Cause of Action Because Defendant Willfully Failed to Pay All**

12              **Wage Due Upon Her Termination**

13        Plaintiff's Fifth Cause of Action seeks "waiting-time penalties" under

14  California Labor Code section 203 following Starbucks' failure to pay all wages

15  due upon her termination as required by California Labor Code section 201

16  (requiring the "immediate" payment of all wages earned and unpaid at the time

17  of termination).  First Amended Complaint, ¶¶ 77-83.  Plaintiff may claim

18  waiting-time penalties if she prevails on any one of her underlying claims (i.e.,

19  her off-the-clock, meal break and rest break claims), but she also maintains a

20  claim simply because Starbucks failed to pay her final wages until at least 9 days

21  after she was terminated, a fact that Starbucks admits.  (UDF Nos. 32 and 41.)[5]

22        Starbucks moves for summary adjudication on the narrow issue of whether

23  its failure to pay York's accrued vacation pay (which is defined as "wages"

24

25        [5] This latter claim is often referred to a "stand-alone" Section 203 claim,
     signifying that the penalties sought are not predicated upon any underlying
26   failure to pay wages.  Starbucks' "Undisputed Facts" Nos. 32-45 all appear
     directed to this stand-alone claim, as does Starbucks' Motion.  Because
27   Starbucks' fails to move for summary judgment on Plaintiff's meal and rest
     period claims, Starbucks cannot obtain summary judgment on this cause of
28   action, a fact that Starbucks acknowledges (*see* Def.'s Mot., 11:26-28 at fn. 3).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

under Labor Code sections 201 and 202) and "reporting-time" wages until at least nine days after she was terminated was "willful" under Section 203, claiming that an inadvertent "processing error" exculpates it.  (UDF Nos. 36; 41; 43.)  Summary adjudication must be denied, because "willful" conduct under Section 203 includes the type of "processing error" described by Starbucks. Notwithstanding, there are other material facts, mainly Starbucks' repeated to failure to promptly pay York's wages after her repeated complaints, as well as Starbucks' institutional, systemic failure to pay its former employees final wages in a timely manner, that raise a genuine issue as to whether Starbucks' conduct was willful.

Starbucks ignores the cases and state regulations that describe the parameters of "willful" conduct under Section 203, and Starbucks' motion should be denied even if there were no material facts in dispute because Starbucks fails to meet its initial burden of showing that it did not have control over the process by which York was paid her final wages.

California Labor Code section 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Lab. Code § 203.

"The reasons for this penalty provision are clear. Public policy has long favored the full and prompt payment of wages due an employee.  Wages are not ordinary debts . . .  [B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492 (1998) (Section 203 is

1  to be given a reasonable but strict construction [against the employer]) (internal

2  citations and quotations omitted).  "The object of the statutory plan is to

3  encourage employers to pay amounts concededly owed by [them] to [a]

4  discharged or terminated employee without undue delay and to hasten settlement

5  of undisputed amounts."  *Triad Data Services, Inc. v. Jackson*, 153 Cal. App. 3d

6  1, 11 (1984).

7      The definition of "willful" under Section 203 has been summarized at

8  Title 8, California Code of Regulations, § 13520:

9          A willful failure to pay wages within the meaning of
           Labor Code Section 203 occurs when an employer
10         intentionally fails to pay wages to an employee when
           those wages are due.  However, a good faith dispute
11         that any wages are due will preclude imposition of
           waiting time penalties under Section 203.
12

13  Title 8, California Code of Regs., § 13520.  The civil penalty under Section 203

14  does not require that the employer intended the action; merely that the action

15  occurred and it was within the employer's control.  *Davis v. Morris*, 37 Cal. App.

16  2d 269 (1940); *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981)

17  ("to be at fault within the meaning of [section 203], the employer's refusal to pay

18  need not be based on a deliberate evil purpose to defraud workmen of wages

19  which the employer knows to be due.  As used in section 203, 'willful' merely

20  means that the employer intentionally failed or refused to perform an act which

21  was required to be done").

22      Thus, under this definition, an employer must pay the employees all wages

23  owed upon the day of their termination or on their last day worked (if they quit),

24  perhaps outside the normal payroll cycle, and if the employer has control over

25  that process, a failure to do so is "willful" under the statute.  *Davis*, 37 Cal. App.

26  2d 269; *Barnhill*, 125 Cal. App. 3d 1.[6]  Therefore, Starbucks cannot prevail

27  _____

28      [6] By contrast, a non-willful violation might be present if, through no fault
    of the employer, the bank to which wages were to be directly deposited

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    because it concedes that the wages were owed to York on her day of termination,

2    that it had control over the processing of those wages, and that it failed to pay

3    them when required. (UDF No. 36 ["Due to the processing error of a payroll

4    employee. . ."]; 41; 43.)

5        The cases cited by Starbucks do not hold otherwise. *Harrington v. Payroll*

6    *Entm't Serv., Inc.*, 160 Cal. App. 4th 589 (2008) was entirely devoted to whether

7    $46,000 was a reasonable attorneys' fee given a dispute about individual unpaid

8    overtime claims worth $45 and, if certified, class claims worth $715

9    (certification was denied, however). The appeal did not challenge the trial

10    court's findings on whether the payroll provider's conduct was willful under

11    Section 203. Thus, the court's one-sentence discussion of "willful" under

12    Section 203 is, at best, *dicta*, unlike the full discussion of "willful" in *Barnhill*,

13    125 Cal. App. 3d 1.

14        In *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005), a California

15    Court of Appeals found that the employer's failure to pay wages for off-the-

16    clock work *was* willful pursuant to Section 203. *Armenta v. Osmose, Inc.*, 135

17    Cal. App. 4th 314, 325-326 (2005). There, like here, the evidence showed that

18    the employer knew that the employees were working off-the-clock. *Id.* Further,

19    the court rejected the employer's "good faith belief in a legal defense"

20    concerning the amount of minimum wages that were owed. *Id.*[7]

21        Starbucks presents no material facts establishing a good faith legal defense

22    to the payment of all final wages. *See Barnhill*, 125 Cal. App. 3d at 8-9 (good

23    misdirected them to an incorrect account. In this circumstance, the employer did
     not have "control" over the wages when they were deposited into the wrong
24    account and the failure to pay wages would not be willful in that event.

25        [7] Starbucks' reliance on Black's Law Dictionary to buttress its contention
     that "willful" conduct requires an affirmative act should be rejected outright.
26    The definition of "willful" also includes a failure to act "without legal
     justification," which, as illustrated above, is the appropriate definition in
     circumstances when the *failure* to act is the prohibited conduct. Black's Law
27    Dictionary 1774 (4th ed. 1968). Otherwise, employers throughout this state
     would have no incentive to minimize "processing errors," a fundamental purpose
28    underlying the statute. *See Mamika v. Barca*, 68 Cal. App. 4th 487 (1998).

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    faith dispute as to whether employer could offset final wages by monies owed by

2    the employee; because the law was unsettled, Section 203 penalties were not

3    awarded).  Importantly, *Barnhill* distinguished between disputes of fact and

4    disputes of law, and only a good faith belief in the latter may preclude a finding

5    of willfulness.  *Id.* at 8-9; *accord Armenta*, 135 Cal. App. 4th at 325.  In either

6    event, Starbucks raises no good faith dispute about any factual or legal defense.

7    Because Starbucks admits that it failed to pay York wages that were owed at

8    termination, Starbucks' motion for summary judgment must be denied.

9         Notwithstanding, York presents additional material facts that establish a

10   "willful" failure to furnish York's vacation and "reporting-time" pay in a timely

11   manner.  On the day of termination, York realized that she did not receive her

12   vacation pay and then notified Starbucks' Partner Contact Center to report the

13   underpayment.  (UDF No. 71.)  However, by August 26, 2008, Starbucks had

14   taken *no* steps to pay York's vacation pay, prompting a second call by York.

15   (UDF No. 72.)  Even then, Starbucks did nothing for *three more days*.  (UDF

16   No. 73.)  And, instead of sending the final wages by overnight mail in

17   accordance with Starbucks' purported policy, Starbucks instead sent the check

18   via U.S. Mail, resulting in the passing of several additional days before York

19   received her wages.  (UDF Nos. 74-75.)  Starbucks did not include any waiting

20   time penalties pursuant to Section 203, despite being on direct and repeated

21   notice that it had violated the statute.  (UDF No. 76.)  Thus, even if could be

22   argued that an initial "processing error" provided a defense to the failure to make

23   timely final payment of wages, Starbucks' subsequent behavior in ignoring

24   York's requests to promptly pay the wages it acknowledges were owed creates a

25   genuine issue of material fact as to Starbucks' willfulness, thereby preventing

26   summary adjudication.

27        Finally, Starbucks' failure to pay York her final wages in a timely manner

28   was neither an isolated nor inadvertent mistake.  Rather, the Starbucks' failure in

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

York's specific case was and is part of an overall pattern or practice, evidencing numbers so stark that any claim of negligence in York's case must be rejected outright. Survey data establishes that nearly *50% of the former employees received their final wages, on average, 7 days after their separation date*. (UDF No. 80).

Starbucks' systemic failure to pay final wages in accordance with Sections 201 and 202 is so pervasive as to constitute a pattern or practice. (UDF No. 80.) Thus, Starbucks' intent with respect to York can be inferred from this data. Federal Rules of Evidence 404(b) ("Evidence of other crimes, wrongs, or acts. . . may, however, by admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.") and 406 ("Evidence of the habit of a person or of the routine practice or an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."); *Aluisi v. Elliott Mfg. Co.*, 2009 U.S. Dist. LEXIS 20180 (E.D. Cal 2009), quoting *Mobil Exploration and Producing U.S., Inc. v. Cajun Const. Services, Inc.,* 45 F.3d 96, 99 (5th Cir. 1995) ("[E]vidence of a routine practice is highly probative, and persuasive. It is particularly persuasive in the business context because the need for regularity in business and the organizational sanctions which may exist…").

Simply put, Starbucks cannot credibly claim that its failure in York's case was inadvertent when it also failed to pay final wages in a timely manner to 50% of its former employees. To the contrary, the failure in York's case is just one of tens of thousands of examples, evidencing an endemic failure that is probative of Starbucks' intent or absence of mistake in York's specific case. Thus, this Court must deny Starbucks' motion for summary adjudication as to York's Fifth Cause of Action.

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

**D.    Defendant Is Not Entitled to Judgment on Plaintiff's Seventh Claim for Failure to Furnish Compliant Wage Statements**

1.    *The Wage Statements Fail to Provide the Total Hours Worked*

York's Seventh Cause of Action claims that the format of the wage statements Starbucks provided to York (and the prospective class members) failed to comply with the plain language of Labor Code section 226(a).  First Amended Complaint, ¶¶ 91-98.  Summary judgment cannot be granted in Starbucks' favor because it cannot show that it did not violate Section 226(a).

Labor Code section 226(a) is "designed to...assist the employee in determining whether he has been compensated properly for all of his or her hours worked."  2002.5.17 DLSE, Opinion Letter No. 2006.07.06, at p. 3; *accord* 2006.07.06 DLSE, Opinion Letter No. 2006.07.06 ("The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper.").  Under this statute, the following information is deemed legally necessary for any employee to figure out whether his or her paycheck is accurate:

> (1) gross wages earned, (2) total hours worked by the employee…(3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions…(5) net wages earned, (6) the inclusive dates of the period…(7) the name of the employee and his or her social security number…(8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Cal. Lab. Code § 226(a).

Here, Starbucks failed to provide a number constituting the total aggregate of the hours worked. (UDF Nos. 48-49; 78.)  Starbucks argues that it need not provide a total aggregate number under Section 226(a)(2), but this is

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    unacceptable for two reasons.

2         First, it would render Section 226(a)(2) superfluous, a result which must

3    be avoided under settled statutory interpretation principles.  *See Delaney v.*

4    *Superior Court (Kopetman)*, 50 Cal. 3d 785, 799 (1990).  Section 226(a)(9)

5    already contains the requirement to breakdown the number of hours worked at

6    different hourly rates, alongside the corresponding hourly rate, and the

7    Legislature also directs employers to state the sum total of hours actually

8    worked.  *Compare* Cal. Lab. Code § 226(a)(2) *with* § 226(a)(9).  If employers

9    could comply automatically comply with subdivision (2) by complying with

10   subdivision (9), subdivision (2) would cease having any meaning at all.

11        Second, this construction would undermine the statute's purpose, which is

12   to help employees determine whether they have received all wages due.  Courts,

13   and the administrative agency charged with enforcing the law, have made clear

14   that the obligation to state the sum of total hours worked "can only be satisfied"

15   by stating the precise, actual number of hours worked.  *Cicairos v. Summit*

16   *Logistics, Inc.*, 133 Cal. App. 4th 949, 955 (2005) (citing Dept. of Industrial

17   Relations, DLSE, Opinion Letter No. 2002.05.17 (May 17, 2002) p. 3, attached

18   as Exhibit 18 to Theriault Decl.).  Nothing in the Code or prior opinions suggests

19   that an employer can satisfy the obligation to state the total hours worked under

20   Section 226(a)(2) by providing the information required under subdivision

21   section 226(a)(9).  Failing to state the precise number of hours worked "conflicts

22   with the express language of the statute and stands in the way of statutory

23   purpose."  *Cicairos*, 13 Cal. App. 4th at 955; *see also* DLSE Opinion Letter

24   2002.05.17 (accurate reporting requirement is "designed to provide the employee

25   with a record of hours worked, and to assist the employee in determining

26   whether he has been compensated properly for all of his or her hours worked.");

27   DLSE Opinion Letter 2006.07.06 ("The purpose of the wage statement

28   requirement is to provide transparency as to the calculation of wages.").  "If it is

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    left to the employee to add up the daily hours shown on the time cards or other

2    records so that the employee must perform arithmetic computations to determine

3    the total hours worked during the pay period, the requirements of section 226

4    would not be met." *Cicairos*, 13 Cal. App. 4th at 955; *accord Zavala v. Scott*

5    *Bros. Dairy, Inc.*, 143 Cal. App. 4th 585 (2006); *Wang v. Chinese Daily News*,

6    435 F. Supp. 2d 1042, 1050-51 (C.D. Cal. 2006) ("The purpose of the

7    requirement is that employees need not engage in the discovery and

8    mathematical computations to analyze the very information that California law

9    requires."). A failure to state total hours worked would require arithmetic

10    computations by the employee to determine the total hours worked and thus

11    would violate the statute.

12        The total hour requirement is essential to determining whether wages were

13    calculated properly. First, the total number of hours worked triggers overtime

14    requirements. *See* Labor Code section 510 (overtime owed for work beyond,

15    inter alia, 40 total hours worked in a week). Moreover, the total hours worked

16    also triggers the calculation of the employee's regular rate. 29 C.F.R. § 778.109

17    ("The regular hourly rate of pay of an employee is determined by dividing his

18    total remuneration for employment (except statutory exclusions) in any

19    workweek by the *total number of hours actually worked* by him in that

20    workweek for which such compensation was paid.") (emphasis added.)[8]

21    Accordingly, Starbucks' Motion must be denied, because its wage statements fail

22    to state the total hours worked pursuant to Section 226(a)(2).

23

24

25        [8] Starbucks attaches *Price v. Starbucks Corp.,* BC384435 (Los Angeles
     Sup. Ct. Oct. 3, 2008), which reached a different conclusion. However, *Price*
26    was appealed on October 10, 2009. *Price v. Starbucks Corp.,* B219501 (Cal. Ct.
     App. October 10, 2009). In any event, at least one other California trial court
27    has held employers must separately provide the total hours worked. *Berrymon v.*
     *St. Vincent Medical Center*, BC 391114 (Los Angeles Sup. Ct. July 22, 2009),
28    attached as Exhibit E to the Compendium of Other Authorities ("Compendium").

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1
2

    2.     *The Wage Statements Do Not State the "Legal Entity That Is the Employer"*

3        Section 226(a)(8) requires that employers state "the name and address of

4 the *legal entity* that is the employer." (Emphasis added.) Starbucks' concession

5 that it uses a fictitious business name on its wage statement ("Starbucks Coffee

6 Company"), when the name of the actual legal entity of the employer was

7 "Starbucks Corporation," mandates a denial of summary judgment. (UDF Nos.

8 46- 47; 68 [Starbucks' form wage statements list only "Starbucks Coffee

9 Company"]; 69 ["Starbucks Corporation" or "Starbucks Corporation dba

10 Starbucks Coffee Company" was the legal entity that was York's employer]; 70

11 ["Starbucks Coffee Company" was not the name of the legal entity that was

12 York's employer, because that company was forfeited on October 27, 1999].)

13       The plain language of the statute requires "the name and address of the

14 legal entity that is the employer." Cal. Lab. Code § 226(a)(8). By definition, a

15 fictitious business name is *not* the name of the legal entity, and the harm that the

16 statute attempts to prevent is self-evident—employees bringing an action against

17 their employers in state court may not obtain judgments against them if they

18 erroneously sue a fictitious business. *See Roseborough v. Campbell*, 46 Cal.

19 App. 2d 257 (1941) (a default judgment against a person in his true name is not

20 supported by a pleading suing him by fictitious name unless the complaint is

21 amended); *Flores v. Smith*, 47 Cal. App. 2d 253 (1941) (where a person is sued

22 by a fictitious name and the complaint is not amended, a default judgment

23 against him in his own name will be set aside on motion); *Liera v. Los Angeles

24 Finance Co.*, 99 Cal. App. 2d 254 (1950) (no proper judgment could be rendered

25 against defendants sued only by fictitious names without amending complaint);

26 *Meller & Snyder v. R & T Properties, Inc.*, 62 Cal. App. 4th 1303 (1998) (when

27 an alleged joint debtor is sued under a fictitious name, the complaint must be

28 amended to substitute its true identity, otherwise the court is without power to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION

1  enter a judgment against it under California Code of Civil Procedure §989 *et*

2  *seq.*).

3      Moreover, California courts have held that listing part of the name of the

4  legal entity that is the employer is insufficient to comply with Cal. Labor Code

5  § 226(a)(8):

> The wage statements in the record do not list either the employer's name or address.  The driver trip summaries have the word "SUMMIT" written at the top right-hand corner of the paper with a logo.  The full name of the defendant is "Summit Logistics, Inc."  In addition, the driver trip summaries do not list the employer's address.

> Either taken separately or together, the wage statements and driver trip summaries do not list the defendant employer's name and address and thus are not adequate itemized wage statements.

13  *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 961 (2005).

14      *Elliott v. Spherion Workforce, LLC*, 572 F. Supp. 2d 1169 (C.D. Cal.

15  2008), is inapposite.  In *Elliott* the employer only used a "slightly truncated"

16  version of its legal name ("Spherion Pacific Work, LLC" rather than "Spherion

17  Pacific Workforce, LLC"), and the court found no violation of Cal. Lab. Code

18  § 226(a)(8).  *Elliott*, 572 F. Supp. 2d at 1179-1180.  Here, it is undisputed that

19  Starbucks Corporation appears nowhere on the wage statement, and it is

20  undisputed that Starbucks Coffee Corporation is a fictitious business name.

21  Starbucks could have satisfied the statute in one of two ways: "Starbucks

22  Corporation" or "Starbucks Corporation dba Starbucks Coffee Company."

23  *Accord Elliot*, 572 F. Supp. 2d at 1180 ("[o]f course, an employer using a

24  shortened name or abbreviation that renders the name confusing or unintelligible

25  may be violating section 226(a)(8)."  *Id*.

26      Accordingly, Starbucks' motion for summary judgment must be denied,

27  because it cannot establish that it provided wage statements that stated the name

28  of the legal entity that was the employer.

INITIATIVE LEGAL GROUP APC

1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

3.    *The Wage Statements Do Not State All "Applicable Hourly Rates in Effect During the Pay Period"*

Section 226(a)(9) requires that employers state "all applicable hourly rates in effect during the pay period." Starbucks admits that its wage statements fail to list Plaintiff's overtime hourly rate. (UDF Nos. 50; 79.) Despite the plain language of Section 226(a)(9), nowhere does York's hourly overtime "rate" appear on any wage statement. (UDF No. 79.)

Accordingly, Starbucks' Motion must be denied, because Starbucks has failed to demonstrate that its wage statements listed "all applicable hourly rates in effect during the pay period."

4.    *Plaintiff Need Not Show Damages to Recover Penalties Pursuant to California Labor Code Section 226(e)*

Starbucks devotes nothing more than a footnote to the issue of what constitutes "injury" under Labor Code section 226(e). Def.'s Notice of Motion, 1:23-25; Def.'s Mot., 16:22-18. Even if the failure to properly notice this issue is countenanced, Starbucks' Motion should be denied because "injury" under Section 226(e) means an "infringement of a legal right" not requiring damages, harm or confusion. Labor Code § 226(e); *accord Clarke v. First Transit, Inc.*, No. CV 07-6476 GAF (MANx) (C.D. Cal. July 1, 2008); *Kisliuk v. ADT Security Services,* No. CV08-03241 DSF (RZx) (C.D. Cal. July 1, 2008); *Mobley v. Southland Transit, Inc., et al*, No. BC 356051 (Los Angeles Super. Ct. May 16, 2007); *Singh v. UHS of Delaware, Inc., et al*., No. BC 322077 (Los Angeles Super. Ct. February 26, 2007), attached as Exhibits A-D to Compendium.

Starbucks argues York must suffer actual harm or damages before penalties under Section 226(e) can be awarded. Not so. Section 226(e) requires "injury" to *recover* "actual damages" or a penalty, whichever is greater. When Starbucks failed to furnish proper wage statements, it caused "injury" by violating York's legally protected interest to receive a proper wage statement and

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1  York is entitled to her damages *or* a penalty.

2        Starbucks' attempt to redefine the term "injury" to include monetary or

3  physical harm should be rejected by this Court, as numerous sources which

4  define "injury" have.  As the Restatement (Second) Torts explicitly states, the

5  term "injury" means the violation of a legally protected interest and specifically

6  contrasts "injury" with "harm":

7        (1)  The word "injury" is used throughout the Restatement of this
8        Subject to denote the invasion of any legally protected interest of
   another.
9
10        (2)  The word "harm" is used throughout the Restatement of this
   Subject to denote the existence of loss, or detriment in fact of any
11        kind to a person resulting from any cause.

12        a.    *"Injury" and "harm" contrasted.*  The word "injury" is used
13        throughout the Restatement on this Subject to denote the fact that
        there has been an invasion of a legally protected interest which, if it
14        were the legal consequence of a tortuous act, would entitle the
15        person suffering the invasion to maintain an action of tort.  It differs
        from the word "harm" in this: "harm" implies the existence of a loss
16        or determent in fact, which may not necessarily be the invasion of a
17        legally protected interest.

18  Restatement (Second) Torts, § 7 (1965).  Webster's New International

19  Dictionary also defines "injury" as a "violation of another's rights for which

20  allows an action to recover damages."  (Webster's 3d New Internet. Dict. (1993)

21  p. 1164).  American Heritage also defines injury as "a violation of the rights of

22  another party for which legal redress is available."  (The American Heritage

23  Dictionary of the English Language, 4th Edition (2000)).  Black's Law

24  Dictionary defines "injury" as "[a]ny wrong or damage done to another, either in

25  his person, rights, reputation, or property."  <u>Black's Law Dictionary</u> 924 (4th ed.

26  1968).

27        This commonly used definition of "injury" is to be applied in this

28

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

1    circumstance.  "Because those terms are not defined in the statute, they should be

2    given their ordinary meaning."  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040,

3    1062 (9th Cir. Wash. 2009); *Connerly v. State Personnel Bd.*, 37 Cal. 4th 1169,

4    1176 (2006) (relying on a Black's Law Dictionary edition that was current at

5    time of bill's enactment to determine definition of term as understood by the

6    Legislature).

7        Federal case law from this district has specifically held that "injury" is the

8    invasion of a legally protected interest and differs from harm.  *Migliori v. Boeing*

9    *N. Am., Inc.*, 97 F. Supp. 2d 1001 (C.D. Cal. 2000).  And, in the specific context

10   of Section 226(e), another Court from this district has held that "injury" means

11   an infringement of a legal right to receive a compliant, itemized wage statement.

12   *Kisliuk v. ADT Security Services, Inc.*, No. CV 08-03241 DSF (RZx) (C.D. Cal.

13   July 1, 2008), attached as Exhibit D to Compendium.

14       Moreover, the California Labor Code anticipates that monetary loss may

15   not result because Section 226(e) provides for *either* "actual damages" *or*

16   penalties.  The penalty provision of Section 226(e) also provides a clear example

17   that "injury" does not mean damages.  If Section 226(e) actually required an

18   employee to suffer "actual damages" to recover penalties then it would be far

19   more logical and clear to simply state "an employee suffering actual damages."

20   *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1067 (1998) (the use of two distinct

21   words in the same section must be given distinct meanings).

22       Legislative history further supports that no actual monetary or other loss is

23   needed to satisfy the "injury" requirement.  Section 226(e) was enacted to

24   encourage employers to comply with section 226(a) by providing for certain

25   remedies, irrespective of the employee's actual damages.  *People v. United*

26   *National Life Ins. Co.*, 66 Cal. 2d 577 (1967) (nothing that courts are guided by

27   the fundamental rule that the objective sought to be achieved by a statute as well

28   as the evil to be prevented is of prime consideration in its interpretation).  Prior

to the bill's passage, its author, Bill Lockyer, clarified that adequate disclosure of information important to employees was the underlying purpose.  Theriault Decl., Ex. 16) ("The purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers.").  In a subsequent letter to Governor Jerry Brown, Mr. Lockyer reaffirmed that the bill provided for minimum damages. (Theriault Decl., Ex. 17) ("The measure provides a civil remedy of minimum damages for employees against employers who knowingly and intentionally fail to provide wage stub information showing earnings and deductions.  Though current Labor Code Section 226 requires employers to furnish such information, there is no penalty, civil or criminal, for failure to do so.  Assembly bill 3731 would rectify this.")

Subsequent legislative history also establishes that the Legislature believed "injury" meant an infringement of a legal right.  In 2000, when the damages provision of Section 226(e) was amended, the Senate commented that penalties were available to "aggrieved employees." Theriault Decl., Exs. 10-15. "Aggrieved party" means "*[o]ne whose legal right is invaded by an act complained of*, or whose pecuniary interest is directly affected by a decree or judgment." Black's Law Dictionary 87 (4th ed. 1968) (emphasis added).  So, in fact, the 2000 Legislature *was* referring to "injury" when it used the term "aggrieved," because the definitions are synonymous.  The 2000 Legislature knew exactly what injury meant, which was to be expected since *injury* has had the same definition for over 125 years in California.

Requiring an employee to show some type of actual monetary damage would undermine the purpose of the Legislature's intent in enacting section 226(e).  Given the purpose of the section—to provide employees with wage information on paystubs—a failure to comply would not typically cause pecuniary harm.  However, Section 226(a)'s requirements are in no way hard to

INITIATIVE LEGAL GROUP APC
1800 CENTURY PARK EAST, SECOND FLOOR, LOS ANGELES, CALIFORNIA 90067

follow, and the Legislature encourages employers to comply with the section by establishing penalties when actual damages are not available.  Cal. Lab. Code § 226(e).

The cases cited by Starbucks are easily distinguished.  *Lee v. Bank of America,* 218 Cal. App. 3d 914 (1990), involved a claim for emotional distress under a statute, which unlike Section 226(e), did not provide for any minimum damages if there are no resulting damages.  *Lee v. Bank of America*, 218 Cal. App. 3d 914, 920 (1990); *accord Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073 n.6 (1992) (under tort law, claims for emotional distress must be serious); *Miller v. Lakeside Village Condo. Ass'n*, 1 Cal. App. 4th 1611, 1623 (1991) (same).  Accordingly, Starbucks' Motion must be denied because York did suffer "injury" within the meaning of Labor Code section 226(e) because Starbucks furnished non-compliant wage statements in derogation of her rights under Labor Code section 226(a).

Alternatively, if the Court finds that Starbucks failed to comply with Labor Code section 226(a) *but* that York did not suffer an "injury" under Starbucks' impossibly narrow definition, summary adjudication must still be denied because York may pursue penalties on behalf of the state pursuant to The Labor Code Private Attorneys General Act of 2004, Labor Code § 2699(f) and (g), without any showing any "injury," under any definition.  Amended Complaint, ¶ 98.

## IV.    CONCLUSION

For all the foregoing reasons, Starbucks' Motion should be denied in its entirety.

Dated:  November 16, 2009                    Respectfully submitted,

Initiative Legal Group, APC


By: /s/ Matthew T. Theriault
Matthew T. Theriault
Attorneys for Plaintiff Summer York