**LINK: 60**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMMER YORK, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STARBUCKS CORPORATION, et al.,<br><br>Defendants. | Case No. CV 08-07919 GAF (PJWx)<br><br>MEMORANDUM & ORDER REGARDING STARBUCKS CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.

## INTRODUCTION & BACKGROUND

Plaintiff Summer York ("York" or "Plaintiff") filed the present lawsuit against Defendants Starbucks Corporation and Starbucks Coffee Company (collectively, "Defendants") on December 2, 2008. York, who worked for Defendants as a barista and supervisor between 2003 and 2008, asserts causes of action in her first amended complaint ("FAC") asserting that under California law, Defendants owe her, and a corresponding putative class of Starbucks employees, wages for time worked "off the clock," penalties for failure to timely and fully pay her final wage upon separation, and penalties for alleged defects in Starbucks' wage statements, among other claims. (Docket No. 15.)

Defendants now move for summary judgment. They contend that: (1) they did not "suffer or permit" Plaintiff to perform work "off the clock" and therefore have no

obligation to pay for such work; (2) they did not willfully fail to pay Plaintiff all wages due upon her termination of employment; and (3) that their wage and hour statements substantially comply with all California requirements. Plaintiff opposes the motion and presents evidence that her store supervisor knew that Plaintiff was working off-the-clock because she directed her to do so and pressured Plaintiff not to add those hours to her report of time worked and that Defendants knew that her termination wages were short and intentionally delayed more than two weeks in remitting all pay to which she was entitled. Plaintiff also cites to legal authority in support of her claim that the wage and hour statements were deficient.

As explained in greater detail below, the Court concludes that genuine issues of material fact remain for trial on the off-the-clock and termination wage claims. The Court concludes that Starbucks' wage and our statements sufficiently described Plaintiff's employer (Starbucks Coffee Company), but fail to provide adequate information regarding the total hours worked or the pay rates for overtime. Accordingly, the motion is **GRANTED** as to the sufficiency of the employer's name on the wage and hour statements, and **DENIED** in all other respects.

## II.
## DISCUSSION

### A. APPLICABLE LAW

#### 1. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, when addressing a motion for summary judgment, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See id.

at 256. Where there is no evidence demonstrating the existence of a genuine issue of material fact, the moving party may prevail simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  To defeat a motion for summary judgment, a non-movant must generally "produce evidence to support its claim or defense" which "create[s] a genuine issue of material fact" regarding its claim or defense.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).

**B. APPLICATION**

### 1. CLAIMS BASED ON OFF-THE-CLOCK WORK

Defendant first seeks summary judgment as to three of Plaintiff's related claims for "off-the-clock" work.  In essence, Plaintiff alleges that "she was repeatedly instructed by her managers to perform off-the-clock work for which she was not compensated." (Opp. at 6.)  Plaintiff claims that this off-the-clock work supports her claims for unpaid overtime, failure to pay minimum wage, and failure to timely pay final wages.

*a. California Labor Law*

The California Labor Code provides that the "maximum hours of work and the standard conditions of labor fixed by the [Industrial Welfare] commission shall be the maximum hours of work and the standard conditions of labor for employees." CAL. LAB. CODE § 1198.  Plaintiff's position as a barista and supervisor in Defendants' stores is governed by an Industrial Welfare Commission (IWC) order regarding positions in the "Public Housekeeping Industry." CAL. CODE REGS., tit. 8, § 11050(2)(P).[1]  The IWC order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Id. § 11050(2)(K).

---

[1] The "Public Housekeeping" sector includes "establishments" where "food in...liquid form is prepared and served to be consumed on the premises." CAL. CODE REGS., tit. 8, § 11050(2)(P)(1).

3

1  Labor Code § 510 states that "eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek...shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." CAL. LAB. CODE § 510. Furthermore, Labor Code § 1197 provides that "the payment of a less wage than the minimum" fixed by the Industrial Welfare Commission is unlawful. Id. § 1197. Labor Code § 1194 provides that an employee who has not been paid the legal minimum wage may recover, inter alia, the unpaid wages. Id. § 1194 (a).

Referring to the statute and the applicable IWC order, Plaintiff claims that she received neither a minimum wage nor an overtime wage for her off-the-clock work and that she was entitled to those wages; she therefore brings suit under section 1194. (FAC ¶¶ 30-45, 70-76.) Additionally, Plaintiff claims that because these additional owed wages were not provided to her when she was terminated, she may seek penalties for the delay in receiving those wages under California Labor Code § 203. (Id. ¶ 81.)

### b. Standard for Defining "Hours Worked" Under California Law

California law regarding the definition of "hours worked" under IWC wage orders is clear. "Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift...The employer knows or has reason to believe that he is continuing to work and the time is working time." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 585 (2000). It is "the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed." Id. Defendants' briefing provides different statements of the Morillion standard, primarily Koike v. Starbucks, No. C 06-3215, slip op. (N.D. Cal. June 20, 2008). (Reply at 1-2; Mot. at 8-10; Koike appears at Def. Appx Other Authorities, Ex. A.)

While Plaintiff claims that Defendants' argument "misstates the law," (Opp. at 7.), the Court concludes that there has been no misstatement. The Morillion legal standard focused on whether the employer "knows or should know that an employee is

or was working" time that is "compensable as 'hours worked.'" <u>Morillion</u>, 22 Cal. 4th at 585, 582. While <u>Koike</u> included the statement that "the inquiry in...off-the-clock claims...[focuses on] whether the employer knew that the hours worked went unrecorded and therefore uncompensated," the case also clearly indicated that for an employee "to prevail on his off-the-clock claim, he must demonstrate that Starbucks had actual or constructive knowledge of his alleged off-the-clock work." <u>Koike</u>, slip op. at 4. In each of these cases, the defined "hours worked" standard concerned whether an employer knew or had reason to believe that its employees were performing work for which they were unpaid.

Thus, consistent with this standard, Plaintiff must demonstrate a genuine issue of material fact regarding whether Defendants "had actual or constructive knowledge of [her] alleged off-the-clock work." <u>White v. Starbucks Corp.</u>, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) (citing <u>Morillion</u>, 22 Cal. 4th at 585.). Plaintiff has done so.

### *b. Evidence*

Plaintiff was aware that "time worked equals time paid" and knew that she was entitled to be paid "for all time [she] worked." (Reply to Separate Statement of Undisputed Facts ("SSUF"), Docket No. 68, Nos. 5, 6; Deposition of Summer York at 85:21-86:7) Plaintiff admitted that she was required to record her hours worked using a point-of-sales ("POS") register system to ensure that she was paid for all hours worked. (SSUF No. 7, York Depo. at 75:16-76:1.) Plaintiff also understood that if she forgot to properly record her hours under the POS system, she could correct her time and ensure payment for all hours worked in a "Punch Communication Log" book. (SSUF. No. 11, York Depo. at 90:22-91:4.) Plaintiff also knew that she could complain regarding wages she was allegedly owed for off-the-clock work; when she complained and sought payment for uncompensated time in writing, she was paid. (SSUF. Nos. 22, 27; York Depo. at 103:4-10; 100:22-101:1; 134:7-13; 103:4-10.)

Taken on its own, Defendants' evidence might appear convincing. However, Plaintiff offers additional relevant evidence and establishes a genuine issue of fact regarding Defendants' actual or constructive knowledge of off-the-clock work.

Plaintiff claims she was frequently asked to perform off-the-clock work by her managers, and that such work was a "regular occurrence," happening at least once per week. (SSUF No. 62, York Depo. at 87:4-24; 96:5-14; 87:18.) Plaintiff stated at deposition that she specifically performed off-the-clock barista tasks during meal periods and before and after her shifts. (York Depo. at 94:16-21.) Plaintiff also indicated that she performed specific types of off-the-clock work after her shifts, including "pick[ing] up supplies from various locations" and checking bathrooms (York Depo. at 86:20; 89:24); she also testified that she checked the patio, swept the floor, and picked up messes after her shifts. (Id. at 90:4-5.) When asked "What is the reason you performed [the tasks] off the clock on some occasions?" Plaintiff responded "I would clock out and then they would ask me to do it." (Id. at 90:17-18.) Management would "make it known" that using the punch communication log system to record off-the-clock time "wasn't really acceptable." (Id. at 91:5.)

On one specific occasion, Plaintiff recalled that "I was instructed to clear a clog in the toilet....and I...had clocked out[.] I was instructed by Carolyn Dach [a store manager] to just go and unclog the toilet." (Id. at 91:20-24.) On that occasion, Plaintiff felt "pressured...to do this job even though I wasn't getting paid for it." (Id. at 92:17-19.) Plaintiff also stated that "a lot of times if there were things that were left unfinished, regardless if my shift was over and I clocked out, I was instructed to do a lobby or clean up this mess or clean up that mess." (Id. at 95:8-13.)

These and other statements suggest that Defendants, through their managers, could have had actual or constructive knowledge that Plaintiff was working off the clock, or that management failed to "exercise its control and see that the work [was] not performed." See White, 497 F. Supp. 2d at 1083; Morillion, 4 Cal. 4th at 585. Thus, Plaintiff has established a genuine issue of material fact which precludes the Court from

granting the motion for summary judgment. Celotex, 477 U.S. at 325; Nissan, 210 F.3d at 1103. Defendants' motion for summary judgment as to Plaintiff's off-the-clock claims is **DENIED**.

### 2. CALIFORNIA LABOR CODE SECTION 203 CLAIM BASED ON WILLFUL LATE PAYMENT OF FINAL WAGES

Plaintiff's fifth claim in the FAC concerns "waiting time penalties" under Labor Code section 203 and is supported by two different and distinct sets of allegations.

In pertinent part, section 203 requires that "wages of an employee who is discharged...shall continue as a penalty from the due date thereof" if an employer "willfully fails to pay" those wages. CAL. LAB. CODE § 203(a). Thus, one aspect of Plaintiff's "waiting time penalties" claim concerns allegations that are derivative of Defendants' alleged failure to pay Plaintiff's off-the-clock, meal-break, and rest-break wages. The non-payment of these allegedly-owed wages, claims Plaintiff, is itself a violation of Labor Code section 203; however, those particular allegations are not subject to the present motion.

Rather, Defendants move for summary judgment as to a separate aspect of the "waiting time penalties" claim. This distinct set of allegations addresses "whether [Defendants'] failure to pay" certain of Plaintiff's indisputably-owed wages "was 'willful' under section 203." (Opp. at 10-11.) In sum and substance, Plaintiff claims that while she received a paycheck at her August 20, 2008 employment-termination meeting, the check did not reflect (1) two hours of "reporting time" owed her for attending the meeting; or (2) her accrued vacation pay. (SSUF Nos. 34-36; see also Opp. at 10-11.) Plaintiff alleges in the FAC that this failure to pay her wages was willful. (FAC ¶ 79.) Claiming that Plaintiff has not shown any evidence of willfulness, Defendant now seeks summary judgment as to these narrow issues.

#### a. Standard for Willful Conduct

The parties ardently dispute the standard for willful conduct under section 203. Plaintiff claims that "The civil penalty under Section 203 does not require that the

7

employer intended the action; merely that the action occurred and it was within the employer's control....[A]n employer must pay the employees all wages owed upon the day of their termination or on their last day worked...and if the employer has control over that process, a failure to do so is 'willful' under the statute." (Opp. at 12.) Plaintiff cites Davis v. Morris, 37 Cal. App. 2d 269 (1940), and Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1 (1981), as authority for this standard, but as Defendants point out, these cases do not support Plaintiffs' position. The plain meaning of willfulness, as Davis states, is that "the thing done or omitted to be done, was done or omitted intentionally...that the person knows what he is doing [and] intends to do what he is doing." Davis, 37 Cal. App. 2d at 274; accord Barnhill, 125 Cal. App. at 7.

While Plaintiff also contends that a late payment of wages is willful unless a "good faith dispute" regarding the wages exists, Defendants again point out (Reply at 6.) that the applicable regulation does not indicate that a "good faith dispute" is the only defense available in suits for "willful failure to pay wages." CAL. CODE REGS., tit. 8, § 13250. The Court rejects Plaintiffs' characterization of the standard for willful conduct under section 203. Thus, consistent with Davis and Barnhill, to prove her section 203 claim pursuant to vacation-pay and reporting-time wages, Plaintiff must show that when Defendants failed to pay those wages, Defendants knew that they were failing to pay such wages and/or intended such a failure. See Davis, 37 Cal. App. 2d at 274.

### b. *Plaintiff's Evidence of Willful Conduct*

To defeat Defendants' motion for summary judgment on the narrow vacation-pay and reporting-time wages issues, Plaintiff must "produce evidence" indicating that failure to pay these wages was done knowingly or intentionally. Nissan, 210 F.3d at 1103. As discussed above, the allegation that Defendants acted knowingly or intentionally—that is, willfully—is an "essential element" of her claim under Labor Code section 203. Id. Plaintiff has provided evidence from which a trier of fact could infer willfulness.

Under the California Code of Regulations, a "willful failure" to pay wages under section 203 "occurs when an employer intentionally fails to pay wages to an employee <u>when those wages are due</u>." CAL. CODE REGS., tit. 8, § 13520 (emphasis added). Willfulness is therefore measured when the wages are due—as Plaintiff and Defendant acknowledge, this is an employee's "day of...termination or...their last day worked." (Opp. at 12; <u>see also</u> Reply at 7.) Thus, the relevant inquiry is whether, at the time that Defendants held Plaintiff's termination meeting, they knowingly or intentionally failed to pay the wages at issue.

Defendants note that Anika Davis, the employee who processed the payment check to be delivered at Plaintiff's termination meeting, indicates that she does not specifically recall processing Plaintiff's paycheck, and that any failure to include reporting-time and unused vacation time would have been an "unintentional mistake."[2] (Declaration of Anika Davis at 2.) Plaintiff responds by pointing to Defendants' failure to pay the owed wages after Plaintiff notified them of the discrepancy and "ignoring York's requests to promptly pay the wages." (Opp. at 14.) Records indicate that Plaintiff called Defendants on August 20, 2008—the same day as her termination meeting—to complain that her final check did not include vacation pay or all hours worked. (Declaration of Jackie Gintz at Ex. C.) Plaintiff called a second time six days later, on August 26, 2008. (<u>Id.</u>) Only on August 29, 2008, three days after Plaintiff's second call, did Defendants issue a check for vacation pay. (Declaration of Matthew Theriault, Ex. 4 [Deposition of Jackie Gintz] at 72:19-25.) Although Defendants' corporate policy required that late pay checks be sent via overnight mail, Defendants sent Plaintiff's check via U.S. mail, further delaying the payment process. (<u>Id.</u> at 82:1-4; 82:17-18.) Ultimately, Plaintiff did not actually receive all of her reporting-time and vacation pay until September 5, 2008, more than two weeks after her initial complaint. (SSUF No. 43, Gintz Decl., Ex. E.)

---

[2] Plaintiff objects that this statement is irrelevant, misleading, and hearsay. Because these objections lack merit, the Court overrules them.

9

Faced with Starbucks's delays in preparing and mailing a check, as described above and in Plaintiff's briefing (Opp. at 14.), a trier of fact might infer from the totality of the circumstances that Defendants intentionally failed to remit the full amount due to her on August 20 and intentionally delayed paying her full wage for more than two weeks.[3] Because Defendants were aware of Plaintiff's complaints regarding unpaid final wages and were dilatory in resolving the issue, it could reasonably be inferred that their delays evince a corporate intention—existing after, and perhaps on, the termination day—to deny Plaintiff her wages. While the Court agrees that a trier would not be *required* to reach such a conclusion, the Court need only determine, on motion for summary judgment, that the evidence would support such an inference.

Because Plaintiff has produced evidence from which a reasonable trier of fact could infer a willful failure to pay wages, under <u>Nissan</u>, <u>supra</u>, she has defeated Defendants' motion for summary judgment as to the narrow vacation-pay and reporting-time wages issues. 210 F.3d at 1103. Defendants' motion for partial summary judgment as to those issues is therefore **DENIED**.

### 3. CALIFORNIA LABOR CODE SECTION 226 CLAIM BASED ON FAILURE TO PROVIDE PROPER WAGE STATEMENTS

In her seventh claim in the FAC, York claims that she received wage statements from Starbucks that did not contain certain information required under state law. California Labor Code § 226(a) states that every "employer shall...furnish each of his or her employees...an accurate itemized statement in writing showing...total hours worked by the employee..., the name and address of the legal entity that is the employer, and...all applicable hourly rates in effect during the pay period...." CAL. LAB. CODE §§ 226(a)(2), 226(a)(8), 226(a)(9). Correspondingly, York alleges that her wage

---

[3] Additionally, the Court notes Plaintiff's counsel's argument, discussed at the motion hearing, that an unintentional failure to pay wages could later become willful, for section 203 purposes. An employer could potentially make a processing error or other unintentional mistake in the first instance, and subsequently make a willful choice to take advantage of its error and purposely avoid paying monies owed. Because in this case there is evidence from which willfulness at the time of termination could be inferred, the Court need not presently resolve this particular issue.

statements did not reflect: (1) the proper name for her employer, Starbucks Corporation; (2) a figure reflecting her total hours worked; and (3) her overtime pay rate. York further alleges that Starbucks's failure to provide this information was willful.

Starbucks seeks summary judgment on this particular claim by arguing (1) that York cannot show any required "injury" connected to the improper wage statements; (2) that including the name "Starbucks Coffee Company" on York's statements complies with Section 226; and (3) that the admitted lack of references to York's hours worked and overtime hourly rates does not violate section 226. The Court will assess each of these arguments in turn.

### a. Injury

Hidden in a footnote on the final page of Defendants' brief is the statement that York's "testimony precludes a showing of injury, which is required for recovery" under Labor Code § 226. (Mot. at 16 n.4.) The statute does limit improper wage-statement suits to employees "suffering injury as a result of a knowing and intentional failure...to comply with" section 226(a). CAL. LAB. CODE § 226(e). Defendants contend that York's only identified 'injury' due to the improper wage statements was confusion. (SSUF No. 61)

The parties do not provide, and the Court's research does not reveal, any controlling California Supreme Court decision regarding the definition of "injury" under Labor Code section 226(e). Thus, this Court must apply the rule that it believes the California Supreme Court would adopt under the circumstances. See Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658 (9th Cir. 1998).

In Elliot v. Spherion Pacific Work, LLC, 572 F. Supp. 2d 1169 (C.D. Cal. 2008), the court held that injury under section 226(e) could include: "the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." 572 F. Supp. 2d at 1181 (citing Zavala v.

Scott Bros. Dairy, Inc., 143 Cal. App. 4th 585 (2006); Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042 (C.D. Cal. 2006); Perez v. Safety-Kleen Sys., 2007 WL 1848037, 2007 U.S. Dist. LEXIS 48308 (N.D. Cal. 2007).). While some cases have suggested that a mere violation of section 226(a) could give rise to "injury",[4] it is obvious that Plaintiff has presented as alleged injuries: (1) her confusion; (2) her stated need for arithmetic calculations; and (3) her inability to accurately verify the amounts she was being paid. (SSUF No. 61; Deposition of Summer York at 167:16-22.)  These are recognized injuries under Elliot and its analysis of "injury" under section 226(e) and relevant California caselaw.  The Court therefore proceeds to analyze the three alleged failures of Defendants' wage statements.

### *b. Exclusion of Employer's Proper Name*

Under California Labor Code § 226, wage statements must "show...the name and address of the legal entity that is the employer.  Plaintiff claims that her wage statements violated this rule because they referenced "Starbucks Coffee Company" as the employer. (SSUF No. 68.)  It is undisputed that although "Starbucks Coffee Company" is a registered fictitious business name for Starbucks Corporation, "Starbucks Coffee Company" is not itself a California corporation. (Id. Nos. 70, 45.) Defendants claim that no court or state administrative body has ever held that "listing a registered fictitious name on a wage statement is unlawful." (Mot. at 13.)  Plaintiffs respond that the "plain language of the statute requires 'the name and address of the legal entity that is the employer.' [Citation] By definition, a fictitious business name is not the name of the legal entity...." (Opp. at 19.)

---

[4] In Kisliuk v. ADT Security Services, Inc., No. CV 08-3241 DSF (RZx) (Fischer, J.), the district court analyzed the meaning of the term "injury" as used in Labor Code section 226(e). (Pl. Compendium Other Authorities, Ex. D, at 4.) Kisliuk cited 4 WITKIN, SUMMARY OF CAL. LAW, TORTS § 1 (10th ed. 2005), to the effect that "injury is the invasion of a legally protected interest; it differs from harm or tangible and material detriment in that there may be an injury...without any tangible harm." (Id. at 5 (internal citations and quotation marks omitted).) Kisliuk concluded that section 226(e) injury could be premised merely on "invasion of a legal right." (Id. at 4, 5.) The Kisliuk plaintiff's mere allegations that "they were denied their legal right to receive, and their protected interest in receiving, accurate...wage statements" were "sufficient" to establish section 226(e) injury. (Id. at 4, 5.)

The only California authority directly addressing the requirements of section 226(a)(8) is Cicairos v. Summit Logistics, Inc., 35 Cal. Rptr. 3d 243 (Ct. App. 2005). In Cicairos, the employer issued wage statements and attached them to documents called "trip summaries." 35 Cal. Rptr. 3d at 251. The wage statements did not list the employer's name or address; rather, the attached "trip summaries" included part of the employer's name, "SUMMIT," and no employer address. Id. Cicairos concluded that the documents were not "adequate itemized wage statements," under section 226, whether taken separately or together. Id.

In Elliot, supra, the court considered a section 226 claim against a company called Spherion Pacific Workforce, LLC. 572 F. Supp. 2d at 1179. Spherion had provided wage statements referencing its name as "Spherion Pacific Work, LLC," and plaintiff contended that this truncated name violated section 226(a)(8). Id. Elliot specifically considered the Cicairos holding, stating that "far from relying on one word in a mere logo on the top of documents that are not even wage statements, Defendant [in this case] referred to itself in plain text, in the body of its wage statements, along with its address, thus clearly identifying itself as the employer." Id. at 1180. These considerations buttressed Elliot's conclusion that because "Defendant was the 'legal entity' that employed Plaintiff, and because Defendant showed its 'name and address,' Defendant complied with section 226(a)(8)" even though the Defendant's name was truncated. Id. Instead of "requiring an employer to state its 'complete' or 'registered' name, section 226(a)(8) only requires the employer to state its 'name and address.'" Id.

Plaintiffs urge a strict construction of the statute's employer-name provision, stating that "employees bringing an action against their employers in state court may not obtain judgments against them if they erroneously sue a fictitious business." (Opp. at 19 (citing Roseborough v. Campbell, 46 Cal. App. 2d 257 (1941); Liera v. Los Angeles Finance Co., 99 Cal. App. 2d 254 (1950); and Meller & Snyder v. R & T Properties, Inc., 62 Cal. App. 4th 1303 (1998).).) There is no indication, however, that this purported evil has worked any harm to Plaintiff in this case.

13

The Court is not persuaded that Defendants' use of "Starbucks Coffee Company," rather than their official corporate name or some close variant, constitutes a statutory violation on this particular factual record. Indeed, as in Elliot, Defendants are "far from relying on one word in a mere logo" on non-wage-statement documents. 572 F. Supp. 2d at 1180 (citing Cicairos, 35 Cal. Rptr. 3d 243.). Under Elliot's view, section 226(e) does not even "requir[e] an employer to state its...'registered' name," yet the wage statements provided by Defendants to Plaintiff did include their registered fictitious business name, "Starbucks Coffee Company." (SSUF 46, 47, 68.) Thus, Defendants' wage-statement identification sufficiently satisfies section 226(a)(8) as a matter of law. See Elliot, 572 F. Supp. 2d. at 1180. The Court therefore **GRANTS** Defendants' motion for summary judgment as to Plaintiff's 226(a) claims, to the extent those claims rely on an improper-name theory.

### c. *Exclusion of Total Hours Worked*

Defendants next seek summary judgment as to Plaintiff's allegation that Defendants' wage statements failed to include a "grand total" figure expressing all regular and overtime hours she had worked. (SSUF Nos. 48-49, 78.) While the wage statements provide hourly totals for "each category" of regular and overtime work, they do not express an aggregate, total figure. (SSUF No. 49, 78.)

Labor Code section 226 provides that employers must furnish a statement describing "total hours worked." CAL. LAB. CODE § 226(a)(2). Defendants point to Price v. Starbucks, No. BC384435, slip op. (Los Angeles Super. Ct. Oct. 3, 2008), and its observation that the "plain language" of the statute does not require a "grand total" of hours. (Def. Appx. Other Authorities, Ex. B, at 10.) But Cicairos specifically noted the Division of Labor Standards Enforcement's ("DLSE") statement that the "obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked." 35 Cal. Rptr. 3d at 247 (emphasis added). Cicairos went on to cite the DLSE's view that "failure to list the precise number of hours worked during the pay period conflicts with the express language of the

14

statute....If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the <u>total hours worked</u> during the pay period, the requirements of section 226 would not be met." <u>Id.</u> (internal citations and quotation marks omitted); <u>see also</u> <u>Zavala</u>, 143 Cal. App. 4th at 592.

The Court indicated at the motion hearing that section 226(a)(2) might not require a "grand total" figure summing all hours worked during a pay period. However, the DLSE opinion and <u>Cicairos</u> have persuaded the Court that the statute should indeed be strictly construed. While Defendants contend that their wage statements are "in substantial compliance" with the Labor Code (Mot. at 14), under <u>Cicairos</u> and the DLSE opinion, substantial compliance does not suffice.[5] By providing two figures for overtime and regular hours worked, an employer requires an employee to perform an "arithmetic computation" and add the two figures to determine her total hours worked during a particular pay period; the DLSE's opinion suggests that the "requirements of section 226" are not met when an employee must perform such computations. <u>Cicairos</u>, 35 Cal. Rptr. 3d at 247.

Because Defendants concede that the wage statements at issue do not contain a total, aggregate figure representing Plaintiff's hours worked, Plaintiff has shown a genuine issue of fact regarding statutory compliance. Thus, to the extent Defendants seek summary judgment regarding their compliance with Labor Code section 226(a)(2) and furnishing of "total hours worked," the motion is **DENIED**.

### d. *Exclusion of Hourly Rates*

Defendants also seek summary judgment regarding Plaintiff's wage-statement claims, to the extent those claims are based on violations of Labor Code section

---

[5] Defendants' reply argues that the DLSE opinion letter was "in response to an employer who asked if it could attach time cards to wage statements rather than list the hours worked" and thus claims that any "suggestion that the DLSE letter created a bright-line rule should be rejected." (Reply at 12.) Yet the authority for this point, <u>Ulloa v. McMillin Real Estate & Mtg., Inc.</u>, 149 Cal. App. 4th 333, 340 (2007) refers to judicial decisions and language "by the court." <u>Id.</u> There is no indication that the DLSE's interpretation of section 226(a)(2), adopted in <u>Cicairos</u>, should not be followed here.

15

226(a)(9). Plaintiff alleges that her wage statements do not properly reflect "all applicable hourly rates in effect during the pay period," CAL. LAB. CODE § 226(a)(9), because they do not list the specific hourly rate for overtime work. (SSUF Nos. 50, 79.)

Defendants argue that "where the basic rate is indicated, the word 'overtime' adequately sets forth the overtime rate" because the word "overtime...is commonly understood in the workplace to denote 'time and a half.'" Price, No. BC384435, slip op. at 14-15. Thus, the wage statements that Defendants furnished to Plaintiff "substantially complied" with statutory requirements (Mot. at 15.) because they included the word "overtime." (SSUF No. 79.) Plaintiff does not challenge the Price holding but states that the "plain language" requires a description of her overtime pay "rate" in the wage statements. (Opp. at 21.)

The Court finds Price's analysis of this particular portion of the Labor Code unconvincing. The parties cite no other authorities construing this portion of the Labor Code, and the Court's research does not reveal any other authority considering this specific issue. Thus, the Court applies the rule it believes the California Supreme Court would adopt. See Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658 (9th Cir. 1998).

The Court's research reveals that when the legislation amending the Labor Code and adding section 226(a)(9) was introduced in the California Assembly, it was supported by groups who argued that California employers "are chronic violators of wage and hour, safety, and tax laws. Such employers....cheat workers out of billions of dollars in wages owed to them under minimum wage and overtime laws." CAL. ASSEMBLY, COMM. ON LABOR & EMPLOYMENT, BILL ANALYSIS, A.B. 2509 (Steinberg), April 12, 2000. A similar California Senate bill analysis incorporates supporters' comments that workers "are often provided little information about their wages. This bill will remedy that problem." CAL. SENATE, JUDICIARY COMM., BILL ANALYSIS, A.B. 2509 (Steinberg), August 8, 2000.

In passing the legislation and amending the Labor Code, the legislature was

16

aware of these supportive comments, and it would seem that their purpose—a purpose requiring more information and disclosure to employees, not less—should animate the Court's reading of section 226(a)(9). Additionally, failure to provide the actual overtime rate on wage statements would assist employers in cheating employees (one of supporters' identified evils in the bill analyses) because it makes employees' ability to verify their proper wage more difficult.  An employee who received a wage statement without an actual overtime rate, and who did not have a supposed "common understanding" of the term "overtime," would need to determine the meaning of the word before calculating and verifying proper payment of his or her wages. Interpreting the statute with an eye towards the vague "common understanding" of the word "overtime" would be inconsistent with the more-disclosure, anti-cheating purposes identified by bill supporters.

The Court concludes that setting forth "all applicable hourly rates" on a furnished wage statement includes referring to an employee's actual, numeric overtime pay rate. CAL. LAB. CODE § 226(a)(9). Because the relevant wage statements do not reflect this rate, Plaintiff has demonstrated a triable issue of fact regarding Defendants' compliance with section 226(a)(9).  Thus, Defendants' motion for summary judgment as to Plaintiff's section 226(a)(9) claim is **DENIED**.

# III.
# CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

DATED: December 3, 2009

_____
Judge Gary Allen Feess
United States District Court