LINKS: 171, 172

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None | None | |

**Proceedings:**         (In Chambers)

**ORDER RE: PLAINTIFF'S MOTIONS FOR RECONSIDERATION AND TO VACATE OR CONTINUE PRE-TRIAL AND TRIAL DATES**

**I.
INTRODUCTION & BACKGROUND**

In this wage and hour litigation, Plaintiff Summer York moves for reconsideration of the Court's November 23, 2011 order denying class certification of her proposed subclasses for Starbucks employees who were denied meal and rest breaks in violation of California law. Plaintiff argues that the Court's order applied a legal standard that is incompatible with the California Supreme Court's subsequent decision in Brinker Restaurant Corporation v. Superior Court, 53 Cal. 4th 1004 (2012). Because the Court disagrees and concludes that its 11/23/11 Order is consistent with Brinker, the Court **DENIES** this motion.

Plaintiff also moves to vacate the December 4, 2012 trial date and all pre-trial dates—including the deadline for disclosure of expert witnesses, which has already passed—arguing that she needs more time to conduct a survey of members of the one certified class in this litigation. However, because the Court concludes that Plaintiff has not acted diligently in preparing for trial or in making the request, the Court also **DENIES** this motion.

The applicable background and the Court's reasoning are set forth in greater detail below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

## II. DISCUSSION

### A. MOTION FOR RECONSIDERATION

#### 1. LEGAL STANDARD

Motions for reconsideration are governed by both the Local Rules of the Central District and by the Federal Rules of Civil Procedure. Central District Local Rule 7-18 governs a motion for reconsideration brought before this Court, and provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. <u>No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.</u>

C.D. Cal. R. 7-18 (emphasis added). Unhappiness with the outcome is not included within the rule; unless the moving party shows that one of the stated grounds for reconsideration exists, the Court will not grant a reconsideration. See <u>McMichael v. United States Filter Corp.</u>, Nos. EDCV 99–182VAP (MCX), DECV 00–340VAP (MCX), EDCV 00–341VAP (MCX), EDCV 00–528VAP (MCX), EDCV 00–196VAP (MCX), EDCV00–223VAP (MCX), 2001 WL 418981, at *17 (C.D. Cal. 2001); <u>O'Connor v. Boeing N. Am., Inc.</u>, 114 F. Supp. 2d 949, 950 (C.D. Cal. 2000). The remedy in such circumstances is appeal.

Under Federal Rule 23, "[a]n order that grants or denies class certification may be altered or amended before a final judgment." Fed. R. Civ. P. 23(c)(1)(C). This rule "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings." <u>Armstrong v. Davis</u>, 275 F.3d 849, 872 n.28 (9th Cir. 2001), <u>abrogated on other grounds by</u> <u>Johnson v. California</u>, 543 U.S. 499 (2005).

#### 2. APPLICATION

York moves for reconsideration of the 11/23/11 Order denying certification of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

proposed subclasses 1, 2, and 10, for Starbucks employees who experienced short meal periods, experienced late or missed meal periods, and were denied a rest period, arguing that the California Supreme Court's April 12, 2012, decision in Brinker Restaurant Corporation v. Superior Court, 53 Cal. 4th 1004 (2012) mandates a different result. In the alternative, York seeks to renew her motion for certification, based on Brinker.

### a. The 11/23/11 Order

In the 11/23/11 Order, the Court denied certification as to the subclasses presently at issue, on the basis that the class claims did not meet Rule 23's commonality or predominance requirements, as set forth in Wal-Mart Stores v. Dukes, 131 S. Ct. 2541 (2011) and Ellis v. Costco Wholesale Corporation, 657 F.3d 970 (9th Cir. 2011). The Court explained that Starbucks had adopted national corporate policies that mandated full compliance with state and federal labor laws. (Docket No. 155 [11/23/11] Order at 37.) The Court acknowledged that, with Brinker pending, California law was in a state of uncertainty as to what an employer must do, under California Labor Code sections 512 and 226.7, to "provide" meal and rests breaks: "whether the employer must insist that the employee actually take meal and rest breaks, or whether it is sufficient to establish a policy that allows the employee to determine whether or not to take the break." (Id. at 28.) Citing Brown v. Federal Express Corporation, 249 F.R.D. 580 (C.D. Cal. 2008), the Court observed that "district courts in this circuit have overwhelmingly taken the view that the statutory obligation to 'provide' an employee with a meal or rest break means only that the break be made available, not that the employer must ensure that the employee actually take the break." (Id.) Accordingly, the Court explained that "Starbucks was obligated to 'provide' meal and rest breaks by making them available, not demanding that they be taken." (Id.) In other words, under California law, "the employer's obligation is to make [meal and rest breaks] available, not force employees to take them." (Id. at 42.)

The Court explained that, thus, "the crucial question in this case for those who did not receive meal [and rest] breaks, or did not receive timely breaks, is whether any violation of California law occurred in the first place and, if so, why the violation occurred given Starbucks' lawful policy mandating compliance with California labor laws." (Id.) However, the evidence before the Court indicated that these questions were not susceptible of common answers, and did not show a corporate-wide common pattern and practice of violations affecting the class as a whole. (Id. at 38, 43.)

First, although the Court struck Plaintiff's statistical evidence because of significant flaws in the methodology, even if admitted, this evidence did not and could not show, for the limited number of violations that did occur, why a break was missed or not taken at the appropriate time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

That is, the statistical evidence could not show whether the manager insisted that the break be skipped or delayed, or whether the employee simply preferred to skip the break or take it at a time that was more convenient. (Id. at 40–41.) Second, the Court found that "York's own experience belies the assertion that Starbucks operated under a corporate-wide policy of depriving employees of timely meal breaks." (Id. at 41) This was because she took meal breaks during all but 11 of 580 shifts (1.9 percent of the total); most of her breaks were timely; and York herself acknowledged that, "as a shift supervisor, she timed her employee breaks to address the immediate needs of her store on any given work day." (Id.) York specifically indicated that whether an employee took a proper meal break depended on who was running the shift. (Id. at 42.) Finally, the Court found that York's anecdotal evidence, in the form of 500 declarations from the more than 100,000 employees who worked during the relevant time period, "describe[d] widely differing experiences that again undermines a claim that some uniform corporate policy is at work to deprive employees of their meal breaks." (Id. at 41–42.) Some declarants stated that they were frequently denied meal and rest breaks, while others stated that this happened only occasionally. (Id. at 42.) Some of Plaintiff's witnesses confirmed that their rest breaks were interrupted under "idiosyncratic circumstances . . . turn[ing] on the many variables that could affect the demands placed on employees at any given time during the work day." (Id. at 43.) The few declarations offered by Starbucks indicated that the declarant employees always received their meal and rest breaks in a timely fashion. (Id. at 42.)

Thus, the evidence showed "that members of the purported class had widely differing experiences, that the corporate policy mandating compliance with the California Labor Code was widely enforced, but that some managers, in some locations, on some occasions, apparently deviated from that policy for reasons that no doubt vary from location to location," and that "the reasons why employees may have missed breaks has less to do with corporate policy and much more to do with individual circumstances." (Id. at 42–43 (original emphasis).) Accordingly, the Court concluded that "because there is no common answer to the 'why' question with respect to each of the violations alleged as to the meal and rest break sub-classes, the evidence does not present 'significant proof that [Starbucks] operated under a general policy of [denying its employees meal and rest breaks].'" (Id. at 43.)

The Court also analyzed Plaintiff's evidence with regard to Starbucks' operational policies, and concluded that this evidence failed to establish common patterns and practices of depriving employees of their Labor Code rights. These policies included the use of a computerized labor allocation system, "ALS," to determine the needs of each store based on that store's historical experience for the day, date, and time of year. The system "first determines the labor hours needed at a particular store and then increases the time allocated to allow for statutorily mandated meal and rest breaks." The Court concluded that "[o]ne can hardly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

imagine a serious argument challenging this methodology, which permits Starbucks to efficiently allocate employee hours to its vast network of retail stores." (Id. at 38–39.) A second policy was Starbucks' "speed of service" policy, under which employees were evaluated in part based on customer wait time, and received the maximum number of points for wait times of three minutes or less. York referred to this policy as the "Three Minute Rule." (See id. at 5–6.) However, the Court concluded that this policy was not at all unusual, especially considering that Starbucks' business model is premised on "a high level of customer service" and "servicing a large volume of customers in a short period of time with the objective of developing a high percentage of repeat customers." (Id. at 39.) Moreover, the "Three Minute Rule" constituted only one element in employee evaluations, with all elements "exist[ing] as part of a broader policy that insists on compliance with all state and federal wage and hour laws." (Id.) Finally, the Court rejected York's contention that the computerized allocation of labor resources and emphasis on customer service combined with management bonus incentives that rewarded the minimization of labor hours to encourage violations of California laws. This was because York improperly focused on one element among several of the managers' incentive pay plan, and "fail[ed] to mention that managers are expressly instructed that the failure to provide for meal and rest breaks and a practice of permitting off-the-clock work will result in discipline up to and including termination." (Id. at 39–40.) Accordingly, the Court concluded that "Plaintiff's personal experience and evidence submitted regarding the experience of other retail store employees belies any argument that Starbucks' operational policies 'systematically generated' labor law violations." (Id. at 3.)

For the same reasons that commonality failed, predominance also failed. That is,

> Determining whether a given employee suffered a meal or rest break violation will largely depend on numerous highly fact-specific inquires as to the reason why the employee did not take a break, such as, who was running the shift at a particular café, the employee's personal preferences, customer volume, and the number of staff at each Starbucks store. Indeed, as discussed above, the record shows that whether an employee received his or her Labor Code benefits turns almost entirely on whether his or her manager was or was not in compliance with Starbucks' corporate policies.

(Id. at 50–51.) Because York had not shown the existence of any common questions susceptible to common answers, "the predominance question [wa]s rendered moot." (Id. at 51.)

### b. The Brinker Decision

On April 12, 2012, the California Supreme Court issued its decision in Brinker. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

court held that an employer's obligation under the Labor Code to "provide" an employee with a meal period entails that "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." 273 P.2d at 532. The meal break must also be "uninterrupted." Id. at 533, 535. Thus,

> Proof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay; employees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability. On the other hand, an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. . . . The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks.

Id. at 536. The California Supreme Court concluded as follows:

> To summarize: An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. 5 is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so. What will suffice may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law.
>
> On the other hand, the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay under Wage Order No. 5, subdivision 11(b) and Labor Code section 226.7, subdivision (b).

Id. at 536–37.

      *c. Plaintiff's Motion for Reconsideration*

Plaintiff argues that Brinker requires the reconsideration, and reversal, of the Court's 11/23/11 Order. To the contrary, Brinker demonstrates that California law is as this Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

interpreted it to be, and that the decision not to certify the meal period and rest break subclasses was the correct one.

Plaintiff argues that the Court adopted a lower standard as to the employer's obligation to "provide" meal breaks, relying on Brown v. Federal Express Corporation, than the California Supreme Court espoused in Brinker. Brinker did not discuss Brown. In any event, Plaintiff argues that, under Brinker, an employer now has a heightened obligation to (1) affirmatively relieve the employee of all duty during break periods; and (2) refrain from actions that discourage and disincentivize employees from taking breaks. (Docket No. 171 [Mem. Reconsider] at 1–6; Docket No. 180 [Reply Reconsider] at 1–2.) Plaintiff's motion for reconsideration focuses on the second obligation. She insists that, in light of Brinker, the Court erroneously failed to consider whether Starbucks' operational policies—the ALS, Three Minute Rule, and management bonus structure—could undermine its facially compliant policies "by pressuring, encouraging, and incentivizing employees . . . to forego compliant meal and rest breaks." (Mem. Reconsider at 2; see also id. at 5–9; Reply Reconsider at 1.) That Starbucks promulgated and used these common labor-saving and customer service policies is not in dispute. Thus, according to Plaintiff, in this litigation, "[t]he predominant question is: Did Starbucks' operational policies pressure, encourage, or incentivize employees to perform their duties in a way that undermined their ability to take a 30-minute duty free meal period . . . [and] to take an uninterrupted 10-minute rest break?" (Mem. Reconsider at 9–10; see also Reply at 7.) York contends that, although she need not prove the merits of her case at certification, the answer to this predominant question is "yes." (Mem. Reconsider at 9.)[1]

York's arguments are thoroughly flawed, for two principal reasons. First, Brinker did not change California law from that relied upon by the Court in the 11/23/11 Order. This Court expressly stated that under California law, "the employer's obligation is to make [meal and rest breaks] available, not force employees to take them." (11/23/11 Order at 42.) The only holding of prior California cases that the Court rejected was that employers were required to insist and ensure that breaks are taken. Although Brinker cited these cases—namely, Cicairos v. Summit Logistics, Inc., 35 Cal. Rptr. 3d 243 (Ct. App. 2005)—for other points of law, it too rejected this more extreme position. This Court's interpretation of California law is thus wholly consistent with Brinker's pronouncement that "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." Brinker, 273 P.2d at

---

[1] In Reply, Plaintiff changes tact, and argues that Starbucks' "operational policies are the common answers referred to in Dukes." (Reply Reconsider at 8.) The Court simply cannot comprehend how the operational policies are the answer to the question whether the operational policies discouraged employees from taking breaks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

532. Consistent with Brinker, the Court also required that Starbucks' policies not impede or prevent employees from taking compliant breaks. The Court acknowledged and analyzed York's argument that Starbucks' operational policies pressured and incentivized employees to miss breaks, and in no way suggested that California law permitted Starbucks to follow such an approach.[2] Thus, the Court simply cannot agree with Plaintiff that it applied a legal test dissimilar from, or contrary to, Brinker.

Second, Plaintiff's motion for reconsideration does nothing to alter the Court's determination that Plaintiff has not shown that the class proceeding will "generate 'common answers apt to drive the resolution of the litigation.'" (11/23/11 Order at 34 (quoting Dukes, 131 S. Ct. at 2551) (original emphasis).) The Court thoroughly analyzed Plaintiff's arguments and evidence regarding whether Starbucks' operational policies discouraged or disincentivized employees from taking compliant breaks, or pressured them to forego these breaks, and determined that York had not shown the existence of common questions, susceptible of classwide resolution. By contrast, this evidence showed that there was nothing unusual or unreasonable about Starbucks' operational policies; that breaks were missed infrequently; and that it was often the individual discretion of employees and managers that determined whether a break was missed or was taken at a non-compliant time, rather than Starbucks' policies.[3]

In other words, the Court has already considered the question that Plaintiff now contends has not yet been answered—whether Starbucks' policies undermine employees' ability to take breaks in ways that comply with California law—and has determined that, on Plaintiff's evidence, class litigation will not produce a common answer derived from common proof. Plaintiff's present motion adds nothing to the discussion. Under Brinker, the Court must still—and perhaps to a greater degree—inquire into the circumstances producing a missed or non-compliant break, to determine whether it occurred because the employer failed to relieve the employee of all duty or in some way impeded or discouraged the employee from taking a compliant break, or because the employee simply chose to work through the break or to take it at a different time. Because the answer to this question will most often require individualized

---

[2] It is obvious that, prior to Brinker, an employer did not comply with California law merely by maintaining a facially compliant policy while acting freely to impede or discourage breaks, as Plaintiff suggests. (See Mem. Reconsider at 5); see, e.g., Dilts, 267 F.R.D. at 638 ("An illusory meal period, where the employer effectively prevents an employee from having an uninterrupted meal period, does not satisfy [California law].") Brown certainly did not so hold, and this Court did not so suggest in the 11/23/11 Order.

[3] To the extent that York now argues that the Court erroneously engaged in merits-based analyses of Starbucks' operational policies, (see Reply Reconsider at 1, 5–6), this argument is not a proper ground for reconsideration under Local Rule 7-18, but is merely a disagreement with the Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

inquiries—as it plainly does here—it appears clear to this Court that <u>Brinker</u> makes it <u>more difficult</u>, and not easier, as Plaintiff suggests, to certify a class alleging meal and rest break violations. Plaintiff is simply incorrect in arguing that, under <u>Brinker</u>, a plaintiff need only present evidence of common operational policies and a theory that those operational policies undermined the defendant's facially compliant break policy, and the question "why" breaks were missed may be certified for classwide resolution. (<u>See</u> Reply Reconsider at 2.) Not so. Even if this approach were consistent with <u>Brinker</u>—which it is not—it would be directly contrary to <u>Dukes</u>. <u>Dukes</u> requires that the determination of the truth or falsity of Plaintiff's contention that Starbucks' operational policies impede employees from taking compliant breaks be capable of resolution in one stroke. <u>See</u> <u>Dukes</u>, 131 S. Ct. at 2551–52. As explained thoroughly and clearly in the 11/23/11 Order, Plaintiffs' own evidence demonstrates that it is not.

Finally, Plaintiff argues that <u>Brinker</u> mandates the conclusion that Starbucks' rest policy was not facially compliant with California law, and that subclass 10, for employees who were denied a rest period, should be certified on this basis. (<u>See</u> Mem. Reconsider at 7 n.6, 8 n.7; Reply Reconsider at 8–9.) This is because <u>Brinker</u> interpreted Wage Order 5, subdivision 12(A) to require that employees be given a 10-minute rest period for any shift of at least 3.5 hours, and an additional 10-minute period for each "major fraction," or more than half, of a four-hour period after the first four-hour period. In other words, "[t]he combined effect of the [Wage Order's] two pertinent sentences, giving full effect to each, is this: Employees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." <u>Brinker</u>, 273 P.2d at 529. However, Starbucks' policy provides that

> An hourly partner must be provided a paid rest period of no less than ten (10) minutes for each four hours worked. The rest period should be provided near the midpoint of each four-hour shift. . . .

(<u>See</u> 11/23/11 Order at 8.) <u>Brinker</u> affirmed certification of a rest period subclass where the employer's policy was to provide one 10-minute rest break for every four hours worked, and thus failed to give effect to the Wage Order's requirement that a break be provided for any shift of at least 3.5 hours, as well as its "major fraction" language. <u>Id.</u> at 531.

However, York has asserted this theory too late. Since long before the filing of her Complaint, Wage Order 5 has provided that

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

> period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

IWC Wage Order 5, subdivision 12(A). Brinker did not create new law as to the employer's obligation; it merely interpreted this provision, clarifying its requirements and adopting the Department of Labor Standards Enforcement's ("DLSE") longstanding construction of "major fraction," to mean more than half. Id. at 528–30. Having filed her Complaint in 2008, York for the first time in this motion for reconsideration raises the contention that Starbucks' rest period policy is illegal. This theory could and should have been tested far earlier in this litigation. See FDIC v. Jackson-Shaw Partners No. 46, Ltd., 850 F. Supp. 839, 845 (N.D. Cal. 1994) ("Motions for reconsideration serve a very limited purpose. They are appropriate only 'to correct manifest errors of law or fact or to present newly discovered evidence.' They are not to be used to test new legal theories that could have been presented when the original motion was pending.") (citations omitted)).

Accordingly, the motion for reconsideration is **DENIED**.

**B. MOTION TO VACATE OR CONTINUE TRIAL DATES**

Plaintiff also seeks to vacate the trial date, presently scheduled for December 4, 2012, all remaining pre-trial dates, and the expert disclosure deadline that has already passed, or, alternatively, to continue these dates by nine months. Plaintiff argues that her motion for reconsideration may change the scope of the class and the claims to be tried. As set forth above, it does not, rendering this argument moot. Plaintiff also argues that she requires more time to conduct a survey of class members in order to support her claims related to the one certified class. (Docket No. 172 [Mem. Vacate].) As set forth below, the Court concludes that Plaintiff's actions and request are inconsistent with the required demonstration of diligence on her part.

**1. LEGAL STANDARD**

After receiving the Parties' reports under Rule 26(f), a district judge "must issue a scheduling order" to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b). The scheduling order then "controls the course of the action" unless modified by the court. Fed. R. Civ. P. 16(d). A motion to extend a deadline must be made "before the original time or its extension expires," and may be granted if filed after the time has expired only "if the party failed to act because of excusable neglect." Fed. R. Civ. P.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

6(b)(1).

In addition, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b)'s "good cause" standard "focuses on the reasonable diligence of the moving party." Noyes v. Kelly Svs., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." Zivokovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)); see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1295 (9th Cir. 2000). In evaluating whether the party seeking extension exercised diligence, a court should consider "whether the movant discharged her obligation under Rule 16 to collaborate with the district court in managing the case." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999). Parties should diligently attempt to follow the scheduling order throughout the subsequent course of the litigation. Id. To determine a party's diligence, a court may evaluate: (1) whether the party was diligent in assisting the Court in creating a workable Rule 16 order; (2) whether the party's noncompliance with the Rule 16 order occurred due to the development of matters that were reasonably unforeseen or anticipated at the time of the Rule 16 scheduling conference; or (3) whether the party was diligent in seeking to amend the Rule 16 order, once it became clear that he could not comply with the order. Id. at 608.

2. **APPLICATION**

As discussed above, on November 23, 2011, the Court issued its certification order. That order denied certification as to most of Plaintiff's proposed subclasses, but granted certification of Plaintiff's proposed "Two Partner Rule Subclass." (See 11/23/11 Order.) On January 25, 2012, taking into consideration the Parties' Joint Stipulation (see Docket No. 158), the Court issued the Scheduling and Case Management Order in this case, setting the current trial and pretrial deadlines. (Docket No. 159 [Scheduling Order].) This Scheduling Order set the deadline for expert witness disclosures on July 17, 2012; the discovery cut-off date on September 25, 2012; and the trial date on December 4, 2012. The Scheduling Order specifically advised that continuance of the pre-trial conference, set for November 5, 2012, at the Parties' request is "highly unlikely," and "failure to complete discovery is not a ground for continuance." (Scheduling Order at 8.)

Thereafter, the Parties disputed the scope of the class list that Starbucks was required to produce. Plaintiff initially proposed that Starbucks perform an analysis of its records, at her expense, to ascertain which employees took a meal break as one of the only two partners in the store, and thus fell within the certified Two Partner Rule Subclass. However, Starbucks argued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

that this would be too burdensome, and the Parties appeared to abandon this approach. The Court ultimately adopted Plaintiff's alternative proposal, requiring Starbucks to produce contact information for all 150,000 California café attendants, baristas, and shift supervisors, notwithstanding that this list was over-inclusive. (See Docket No. 172-1 [Theriault Decl.] ¶ 4; Docket No. 165 [3/20/12 Order].) On April 10, 2012, Starbucks produced the list. (Theriault Decl. ¶ 4.) On April 12, the California Supreme Court issued the Brinker decision.

On July 23, 2012, York served Starbucks with written discovery seeking schedules, time records, and wage records in order to enable her to identify which of the 150,000 California employees are in the Two Partner Subclass. Pursuant to this request, Starbucks' deadline to produce these records was August 22, 2012; however, at the time that Plaintiff filed the present motion, she anticipated that a motion to compel would be necessary, giving her access to the records in late September only. (Id. ¶ 6.) Plaintiff nowhere explains why, although she knew on April 10 that the list that Starbucks produced was over-inclusive of the class (and, indeed, knew long before that date that any such list would be over-inclusive), she waited until July 23—with pretrial deadlines approaching and passing—to seek from Starbucks the information needed to identify the class members and conduct the survey. Indeed, Plaintiff communicated her intention to conduct a survey in support of her claims in her motion for class certification, filed in 2010 (see Docket No. 88-1 at 9), and submitted a declaration, at that time, describing the survey to be conducted if a class were certified (see Docket No. 88-8 [Krosnick Decl.]).

On July 30, 2012, Plaintiff filed her motion for reconsideration, based on Brinker. Likewise, Plaintiff does not offer any explanation as to why she waited more than three and a half months from when this decision was issued to file her motion.

Plaintiff now argues that—although the expert disclosure deadline has long passed without any disclosures by her—she "anticipates retaining an expert witness to design and implement a survey of class members to obtain data that can reliably be extrapolated to the entire class," and that she requires additional time to conduct this survey. Specifically, she requires 10 days to review the records to be produced by Starbucks, in order to identify class members; two to three weeks for survey development; and two months for data collection. Thus, she requires approximately three months to complete the survey, after receiving the records requested from Starbucks. (See Theriault Decl. ¶¶ 5, 8.)

York offers several unpersuasive justifications for her untimely request to modify the Scheduling Order. She complains of the delay caused by the Parties' inability to agree on the scope of the class list, and argues that she could not begin the survey until she was in possession of Starbucks' records enabling her to identify the class members. She also asserts that she could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

not begin work on the survey until the Court ruled on her motion for reconsideration, which could have potentially changed the scope of the class and the claims for trial and rendered earlier efforts to send class notice or collect survey data wasteful. (Mem. Vacate at 1, 3; Docket No. 179 [Reply Vacate] at 1, 4–7.)[4] She contends that, even if she had sought to obtain Starbucks' records when it produced its list of employees in April, she would have had insufficient time to complete the survey and prepare for trial; that is, it was "never possible" for her to meet the July 17 expert witness disclosure deadline. (Reply Vacate at 1, 5 n.3, 8.) She complains that, on August 13, 2012, Starbucks filed a motion to decertify the Two Partner Rule Subclass, injecting further uncertainty into these proceedings and making it imprudent to begin work on the survey now. (Id. at 1–2.) York unjustifiably characterizes the foregoing events as "unforeseen" and "out of her control," (id. at 4, 6), and she argues that she will be "severely prejudiced" if she is prevented from developing the survey evidence, while Starbucks will suffer no prejudice from delaying trial, (Mem. Vacate at 5; Reply Vacate at 7–8). She argues, without explanation, that her more than three month delay in serving discovery and in moving to reconsider "was not only necessary, but was also insignificant and irrelevant." (Reply Vacate at 9.)

Although York's arguments attempt to obscure and obfuscate her lack of diligence, they do not succeed. The inescapable fact is that, by April 10 and 12, 2012, York knew that (1) she was in possession of an over-inclusive class list; (2) the expert witness disclosure deadline was approaching on July 17, 2012; and (3) the California Supreme Court had decided Brinker. If she truly believed that she could not possibly meet the Court's deadlines, it was nonetheless incumbent upon her to immediately undertake all necessary tasks to establish her diligence if and when it turned out that she could not complete those tasks she believed necessary. But she did not take such steps. In fact, for three months she did nothing. At that point in late July, she sought further discovery from Starbucks that she claims would have enabled her to identify the class members and to begin work on her survey. And it was not until after that date that she filed this motion for reconsideration, which she argues is necessary to further clarify the class claims in this litigation. Had Plaintiff acted promptly and diligently, she would have long ago obtained Starbucks' records and this Court's determination of her reconsideration motion; she could have timely made her expert witness disclosure; and she would have completed, or nearly completed, the survey she claims to so desperately need. Plaintiff also fails to explain why her need to complete a three-month survey justifies a complete vacation of all trial and pre-trial dates, or, at minimum, a nine-month continuance. Accordingly, Plaintiff has shown neither "good cause" nor "excusable neglect" justifying modification of the Scheduling Order. Her motion to vacate or continue the trial dates is **DENIED**.

---

[4] Plaintiff has also not yet sent class notice, despite receiving Starbucks' employee list on April 10. (See Docket No. 178 [8/10/12 Order].)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-07919 GAF (PJWx) | Date | September 12, 2012 |
|---|---|---|---|
| Title | Summer York v. Starbucks Corporation et al | | |

# III.
# CONCLUSION

Based on the foregoing discussion, Plaintiff's motions for reconsideration and to vacate or continue the trial dates are **DENIED**.

**IT IS SO ORDERED.**