**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
MARK R. CURIEL (SBN 222749)
GALIT A. KNOTZ (SBN 252962)
gknopp@akingump.com
mcuriel@akingump.com
gknotz@akingump.com
2029 Century Park East, Suite 2400
Los Angeles, CA  90067
Telephone:   (310) 229-1000
Facsimile:   (310) 229-1001

Attorneys for Defendant Starbucks Corporation
dba Starbucks Coffee Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUMMER YORK, individually, and on behalf of other members of the general public similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>STARBUCKS CORPORATION, a Washington Corporation, and STARBUCKS COFFEE COMPANY, a Washington Corporation,<br><br><br>            Defendant. | Case No. CV08-07919 GAF (PJWx)<br><br>[Assigned to the Honorable Gary A. Feess]<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:        October 28, 2013<br>Time:        9:30 a.m.<br>Place:       Courtroom 740 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. BACKGROUND .................................................................................................3

    A. York Commences This Action Asserting Numerous Claims. ..................3

    B. York Pursues Her Claims On Behalf Of 13 Subclasses. .........................3

        1. Discovery Almost Exclusively Concerned York's Failed Claims. ...............3

        2. The Pre-Certification Motions Concerned York's Failed Claims. ...............5

        3. The Class Certification Briefing Concerned York's Failed Claims. ...........6

        4. The Parties Mediated York's Class Claims. ..............................................6

    C. The Court Overwhelmingly Denies Class Certification. ........................7

    D. York Fails To Prosecute Her Remaining Claims. ...................................8

    E. York Resumes Litigating Her Remaining Claims For Three Months. ....8

    F. The Parties Reach A Settlement. .............................................................9

III. YORK'S REQUEST FOR ATTORNEYS' FEES SHOULD BE REJECTED. ................10

    A. Several Of The Fee Provisions York Cites Are Inapposite. ...................10

    B. York Failed To Prove Entitlement To Fees Under Any Statute. ...........11

    C. York's Fees Overwhelmingly Relate To Her Failed Class Claims. .......14

        1. Prior To November 2011, York Pursued Her Failed Class Claims. ...........14

        2. York Incurred Virtually No Recoverable Fees In The Period Following The Class Certification Decision. ............................................16

        3. York Incurred Relatively Little In Recoverable Fees After July 2012. .......17

    D. Even The Fees Related To The Settled Claims Must Be Reduced. ........18

        1. The Settlement Amount Reflects Extremely Limited "Success." ..............18

        2. The Agreement Confers No Other Noteworthy Value. .............................19

    E. A Further Reduction Is Due Because York Violated A Court Order. .....................20

    F. The "Common Fund" Method Further Undermines York's Motion. ....................22

    G. York's Remaining Arguments Are Unavailing. ...................................23

IV. YORK'S REQUEST FOR COSTS SHOULD BE REJECTED........................................24

V. CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*A.D. v. California Highway Patrol*,
    712 F.3d 446 (9th Cir. 2013) ...............................................................................7

*Aviva USA Corp., v. Vazirani*,
    902 F. Supp. 2d 1246 (D. Ariz. 2012) ................................................................14

*Beaty v. BET Holding, Inc.*,
    222 F.3d 607 (9th Cir. 2000) .............................................................................12

*Clarke v. First Transit, Inc.*,
    No. CV-07-06476 GAF, Dkt. No. 142 (C.D. Cal. 2012)........................................21

*Cummings v. Starbucks*,
    No. CV-06345-MWF-FFM, Dkt. 63 (C.D. Cal.) at 8-15, 63-2, 63-6 (Rutt Dec. ¶ 6, Ex. D -
    2011 Partner Guide)...........................................................................................20

*Davis v. Sundance Apartments*,
    No. CIV S-07-1922 FCD GGH, 2008 WL 3166479 (E.D. Cal. Aug. 5, 2008).....................14

*Fischer v. SJB-P.D., Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ...........................................................................12

*Harris v. Marhoefer*,
    24 F. 3d 16 (9th Cir. 1994) .....................................................................11, 14, 18

*Harris v. Vector Mktg. Corp.*,
    No. 08-5198, 2011 WL 4831157 (N.D. Cal. Oct. 12, 2011) ...................................14

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ("California courts use [the percentage-of-the-benefit]
    cross-check not only in conventional common fund cases but also in cases in which the
    defendant creates a common fund for the benefit of the class members and agrees to pay
    attorneys' fees separately")...............................................................................22

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................16

*Ingram v. Oroudjian*,
    647 F.3d 925 (9th Cir. 2011) .............................................................................18

*Jacquette v. Black Hawk County, Iowa*,
    710 F.2d 455 (8th Cir. 1983) .............................................................................20

1   *Jadwin v. Kern,*
2       767 F. Supp. 2d 1069 (E.D. Cal. 2011)....................................................17, 20, 21

3   *Lemus v. H&R Block Enterprises,*
        No. 09-3179, 2012 U.S. Dist. LEXIS 128514 (N.D. Cal. Sep. 10, 2012) ...............14
4

5   *Life Techs. Corp. v. Biosearch Techs., Inc.,*
        No. C–12–00852 WHA (JCS), 2012 WL 1600393 (N.D. Cal. May 7, 2012)........................21

6   *McIntosh v. McAfee, Inc.,*
7       No. C06–07694 JW, 2009 WL 673976 (N.D. Cal. Mar. 13, 2009)..................................22, 23

8   *McKenzie v. Federal Express Corp.,*
        No. CV 10-02420 GAF, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ......................20, 22, 23
9

10  *Morales v. Whole Foods Market, Inc.,*
        No. C 12-01072 CRB, 2013 WL 3967639 (N.D. Cal. Jul. 31, 2013)...................................18

11  *Moreno v. City of Sacramento,*
        534 F.3d 1106 (9th Cir. 2008) ........................................................................12
12

13  *Pierce v. County of Orange,*
        905 F. Supp. 2d 1017 (C.D. Cal. 2012) .............................................................24
14

15  *Reed v. Democratic Party of Wash. State,*
        388 F.3d 1281 (9th Cir. 2004) ..........................................................................12

16  *Sanford v. GMRI, Inc.,*
        CV.S 04 1535 DFL CMK, 2005 WL 4782697 (E.D. Cal. Nov. 14, 2005) ...........................24
17

18  *Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.,*
        668 F.3d 677 (9th Cir. 2012) ...........................................................................24

19  *Six (6) Mexican Workers v. Ariz. Citrus Growers,*
20      904 F.2d 1301 (9th Cir. 1990) .........................................................................22

21  *Suzuki v. Hitachi Global Storage Technologies, Inc.,*
        No. C 06-7289 MHP, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010) ......................................22
22

23  *Tarlecki v. Bebe Stores, Inc.,*
        No. C 05-1777 MHP, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009)......................................19

24  *ThermaPure, Inc. v. Water Out Oregon, Inc.,*
25      No. C11-5859, 2013 WL 173013 (W.D. Wash. Jan. 16, 2013)...........................................14

26  *Whitty v. First Nationwide Mortg. Corp.,*
        No. 05-CV-1021H, 2007 WL 628033 (S.D. Cal. Feb. 26, 2007)............................................12
27

28

**STATE CASES**

*Amaral v. Cintas Corp. No. 2,*
  163 Cal. App. 4th 1157 (2008) ...................................................................23

*Californians for Responsible Toxics Mgmt. v. Kizer,*
  211 Cal. App. 3d 961 (1989) ......................................................................12

*Chavez v. City of Los Angeles,*
  47 Cal. 4th 970 (2010) ...............................................................................14

*Christian Research Inst. v. Alnor,*
  165 Cal. App. 4th 1315 (2008) .........................................................11, 12, 13

*ComputerXpress, Inc. v. Jackson,*
  93 Cal. App. 4th 993 (2001) .............................................................11, 12, 24

*Environmental Protection Info. Ctr. v. Cal. Dept. of Forestry and Fire Protection,*
  190 Cal. App. 4th 217 (2010) ....................................................................11

*Harman v. City and County of San Francisco,*
  158 Cal. App. 4th 407 (2007) ...............................................................17, 18

*Harrington v. Payroll Entertainment Services, Inc.,*
  160 Cal. App. 4th 589 (2008) ....................................................................16

*In re Consumer Privacy Cases,*
  175 Cal. App. 4th ................................................................................22, 23

*Kirby v. Immoos Fire Protection, Inc.,*
  53 Cal. 4th 1244 (2012) .............................................................................10

*Lealao v. Beneficial California, Inc.,*
  82 Cal. App. 4th 19 (2000) ........................................................................22

*Levy v. Toyota Motor Sales, U.S.A., Inc.,*
  4 Cal. App. 4th 807 (1992) ........................................................................11

*Mann v. Quality Old Time Service, Inc.,*
  139 Cal. App. 4th 328 (2006) ................................................................1, 11

*Meister v. Regents of University of California,*
  67 Cal. App. 4th 437 ................................................................................18

*Niederer v. Ferreira,*
  189 Cal. App. 3d 1485 (1987) ....................................................................18

*Pellegrino v. Robert Half Int'l, Inc.,*
  182 Cal. App. 4th 278 (2010) ....................................................................23

*Ramos v. Countrywide Home Loans, Inc.,*
  82 Cal. App. 4th 615 (2000) ...................................................................................22

*San Diego Police Officers Ass'n v. San Diego Police Dep't,*
  76 Cal. App. 4th 19 (1999) ....................................................................................11

*Sokolow v. County of San Mateo,*
  213 Cal. App. 3d 231 (1989) .................................................................................18

*Vo v. Las Virgenes Mun. Water Dist.,*
  79 Cal. App. 4th 440 (2000) ..................................................................................12

STATE STATUTES

Labor Code §§ 218.5 and 1194(a) ...........................................................................10

Labor Code § 226...............................................................................................5, 6, 15

Labor Code § 226(e) ..................................................................................................10

Labor Code § 226(h)..................................................................................................11

RULES

Federal Rule of Civil Procedure 23 ...............................................................4, 5, 23

Federal Rule of Evidence 408......................................................................................7

Rule 26(f)....................................................................................................................22

Rule 30(b)(6)....................................................................................................4, 15, 25

Rule 37.........................................................................................................................22

REGULATIONS

*eight percent.* Curiel Dec. ¶ 16 ...............................................................................19

OTHER AUTHORITIES

*Birdsall v. Starbucks,*
  No. 2:12-cv-06165-GAF-PJW, Dkt. 1 ....................................................................21

*Rodriguez v. West Pub. Corp.,*
  No. CV 05-3222 ......................................................................................................17

SUSPECTS

Labor Code .....................................................................................................................3

section 1194.................................................................................................10

section 218.5...............................................................................................10

*Perez v. Safety Kleen*.................................................................................12

PJH, 2010 WL 934100 (N.D. Cal. Mar. 15, 2010).................................12, 13, 17, 24

2010 WL 682096, at *4 (C.D. Cal. Feb. 3, 2010)..................................17

*Dukes v. Wal-Mart*....................................................................................23

## I. __INTRODUCTION__

Summer York seeks an astonishing $4.5 million in attorneys' fees and costs in a case she settled for far less than that, despite valuing her claims at more than *$860 million* before the Court overwhelmingly rejected them. Her motion ignores both the governing legal standards and the history of the litigation.

A party seeking fees and costs bears the burden of identifying those incurred in litigating the claims *on which she achieved success* because she "generally may not recover for work on causes of action on which [she] was unsuccessful." *Mann v. Quality Old Time Service, Inc.*, 139 Cal. App. 4th 328, 342 (2006). York defies this standard, instead asking the Court to blindly defer to her counsel's "professional judgment" while she demands every fee incurred and dollar spent, with no regard for what actually transpired in the lawsuit. The Court should not be so easily fooled.

York asserted numerous claims against Starbucks on behalf of 13 "distinct" subclasses—each one, in her words, reflecting a "distinct theory of liability." Dkt. 130 at 3. While she concedes that Starbucks policies "do not contain readily apparent unlawful provisions" (Mot. at 18), York nevertheless pursued her class claims until November 2011, when the Court overwhelmingly denied class certification, rejecting 12 of her 13 subclasses and leaving only one "relatively minor exception"—the "two-partner" claim. Dkt. 155 at 3. This "minor exception" was an afterthought until then, as York mentioned it nowhere in her complaint, barely addressed it in discovery, and devoted a single page to it in her class certification brief.

After the Court rejected 92 percent (12 of 13) of her class claims, York did virtually nothing. For eight months, she took no meaningful steps to advance what remained of her lawsuit, even declining to notify the class of the lone certified claim. While York reappeared on July 30, 2012, when she filed several motions, her activity lasted a mere *three months*, as the parties then reached a settlement. Moreover, this period was dominated by activity that had no bearing on York's purported "success." It

included, for example, York's motion for reconsideration of the class decision, which the Court denied as "thoroughly flawed" (Dkt. 192 at 7); York's motion to continue the trial schedule, which the Court denied because York had "not acted diligently in preparing for trial," since "for three months she did nothing" (*id.* at 1, 12-13); and the Court's decision to decertify—and reject as a matter of law—the lone certified claim.

York's motion must be judged against this backdrop, not her brazen claims of "remarkable" success and "efficiency."  When the proper standards are applied to what actually transpired, her demand is exposed as breathtakingly inflated.  York cannot, for example, recover fees and costs incurred in pursuing her "distinct" claims on which she was utterly *unsuccessful*, such as her claims for rest break violations (which she valued at $267 million), "off-the-clock" work ($258 million), or late final wages ($20 million). Nor may she recover time and money wasted on work like developing expert reports that the Court rejected as "not reliable" (Dkt. 155 at 22); gathering hundreds of declarations that the Court disregarded because they "present[ed] a considerably different picture" than York claimed (*id.* at 10, FN4); taking depositions in which she asked no questions about the claims she later settled; or fighting about a class notice that she never sent.  Nor may she recover for the time she squandered while "foot dragging" (Dkt. 206 at 8), filing "thoroughly flawed" motions (Dkt. 192 at 7), or neglecting to act "diligently" (*id.* at 1).  Nor may she recover for time spent drumming up a copy-cat lawsuit against Starbucks in violation of the Court's protective order, by using confidential information to funnel new plaintiffs to her counsel's former colleague.

Ultimately, the parties settled only two of York's many claims—the two-partner claim and her claim for wage statement violations based on a missing overtime rate— because she lost on all the rest.  To judge this "success," the Court need only compare the settlement amount ($3 million) to the damages and penalties York sought:  $860 million before the Court denied class certification, but still "tens of millions" thereafter.

In short, York's lawsuit was overwhelmingly unsuccessful, she incurred the vast majority of her fees and costs in pursuing her failed claims, and her motion includes no

information from which the Court could distinguish those unrecoverable fees and costs from those that *might* be recoverable.  On this record, any award could only be minimal.

## II.   BACKGROUND

### A.   York Commences This Action Asserting Numerous Claims.

York filed this lawsuit in December 2008, alleging violations of California's Labor Code, Unfair Competition Law, and Private Attorneys General Act ("PAGA"). Dkt. 1.  She claimed that Starbucks unlawfully failed to pay for work performed "off-the-clock," paid final wages late, failed to provide proper rest breaks, failed to provide proper meal breaks, and issued inaccurate wage statements.  *Id.*

York later clarified that her meal break cause of action actually encompassed several distinct claims.  For example, she alleged that Starbucks provided meal breaks too late, interrupted timely breaks, failed to provide second breaks on 10-hour shifts, and failed to provide "off duty" breaks when she worked with only one other employee—the "two-partner" circumstance.  Dkt. 88-1 at 21-22, 130 at 2.

York's wage statement cause of action also included several distinct claims. Thus, York claimed that her wage statements "were deficient in three respects:  (1) the statements did not properly identify her employer's name; (2) the statements did not provide the total number of hours worked; and (3) the statements failed to indicate the overtime rate."  Dkt. 207 at 1–2.

### B.   York Pursues Her Claims On Behalf Of 13 Subclasses.

York brought her lawsuit as a class action and eventually sought certification of 13 distinct claims on behalf of various "subclasses" of Starbucks employees.  Dkt. 88-1. From the beginning of discovery in 2009 until the Court decided class certification in November 2011, the litigation overwhelmingly focused on York's class claims, all of which the Court eventually rejected.

#### 1.   Discovery Almost Exclusively Concerned York's Failed Claims.

The parties commenced written discovery in February 2009.  York served substantial written discovery, almost all of which concerned the claims on which

Starbucks prevailed.  For example, she served 105 interrogatories, only *two* of which specifically concerned the pay rates listed on her wage statements, and *none* of which concerned the two-partner rule.  She also served 194 requests for production, only *one* of which concerned the pay rates, and *none* of which concerned the two-partner rule. *See* Curiel Dec. ¶ 2.[1]

York also served Rule 30(b)(6) deposition notices identifying 69 topics on which she demanded testimony.  *See* Curiel Dec. ¶ 4.  Starbucks presented three witnesses in response.  *Id.* ¶ 4.  Two of the witnesses, Robert Decker and Jackie Gintz, received no questions about the two-partner rule or wage statements.  *Id.* ¶ 4-6, Exs. A - B.  The third witness, Jana Rutt, testified about a number of Company policies, but only nine pages of her 157-page transcript include testimony about the two-partner claim or the pay rates listed on the wage statements.  *Id.* ¶ 4, 7, Ex. C.

York filed two discovery motions during this period, both of which primarily concerned her failed claims.  The first motion involved York's request for the names and contact information of putative class members.  This discovery pertained exclusively to York's "anticipated motion for certification under Federal Rule of Civil Procedure 23." Dkt. 28 at 2.  The second motion addressed 26 written discovery requests (Dkt. 42), only three of which related to the pay rates listed on wage statements or the two-partner claim.  *See* Curiel Dec. ¶ 12.

In addition to seeking discovery from Starbucks, York collected declarations from putative class members to support her class certification motion.  While she obtained more than 500 declarations in total, *not one of them* addressed the pay rates listed on Starbucks wage statements.  Dkt. 89

When select putative class members gave depositions in 2010, those depositions predominantly concerned the claims that the Court later ruled were not suitable for class

---

[1] The vast majority of York's discovery requests sought information regarding rest breaks, alleged off-the-clock work, final wages and other topics totally unrelated to the settled claims.  And while other requests concerned different aspects of meal breaks and wage statements, extremely few addressed the two-partner rule or the overtime rate in particular.  *See* Curiel Dec. ¶ 3.

4

1    treatment.  For example, the deposition of Anouria Ashe resulted in a 153-page

2    transcript, less than three pages of which concern wage statements or the two-partner

3    rule.  Curiel Dec. ¶ 8, Ex. D.  The deposition of Adrienne Filley resulted in a 49-page

4    transcript, less than two pages of which concern wage statements or the two-partner

5    rule.  *Id.* at ¶ 9, Ex. E.  And the deposition of Gustavo Lopez resulted in a 157-page

6    transcript, less than two pages of which concerned wage statements or the two-partner

7    rule.  *Id.* at ¶ 10, Ex. F.

8                    2.    The Pre-Certification Motions Concerned York's Failed Claims.

9         In September 2009, Starbucks moved for an order denying certification of York's

10   meal and rest break claims.  Dkt. 38.  The motion did not concern York's claim that her

11   wage statements failed to properly describe her overtime rate.  Nor did it specifically

12   identify her two-partner claim.  While the Court vacated the hearing on this motion so

13   that a related discovery dispute could be resolved (Dkt. 48), it eventually agreed with

14   Starbucks that these claims were not suitable for class treatment.

15        In November 2009, Starbucks moved for summary adjudication of York's claims

16   for "off-the-clock" work, late payment of final wages, and wage statement violations.

17   Dkt. 60.  The motion did not address the two-partner claim at all.  While the motion did

18   address York's claim regarding the overtime rate on her wage statements, York's 25-

19   page opposition devoted exactly four sentences to that claim.  Dkt. 61.  The Court

20   granted the motion in part, rejecting one of York's wage statement claims.  Dkt. 70.

21        Starbucks later moved for reconsideration, arguing that all of York's claims for

22   wage statement violations under Labor Code Section 226 failed because York had

23   suffered no "injury."  Dkt. 142.  The Court granted the motion in its entirety.  Dkt. 147

24   at 2.  As a result, York no longer had any claim for relief under Section 226.

25        The Court considered two additional motions during this period, but neither

26   required substantial effort.  In March 2010, Starbucks moved to strike putative class

27   member declarations that York's counsel had obtained without notifying the witnesses

28   of their rights.  Dkt. 75.  Magistrate Judge Walsh agreed that York's counsel had "failed

1  to warn" the witnesses as directed by the Court and "should have been more vigilant,"

2  but he denied the motion, finding no prejudice to Starbucks.  Dkt. 79.  Then, in July

3  2010, Starbucks filed a motion to stay York's wage statement claims in light of an

4  earlier, overlapping case.  York's opposition consisted of a 13-page brief without any

5  evidence (Dkt. 84), and the Court decided the motion without a hearing (Dkt. 93).

### 3.    The Class Certification Briefing Concerned York's Failed Claims.

7  York moved for class certification in July 2010, seeking certification of 13

8  "distinct" subclasses, each "keyed to a distinct theory of liability."  Dkt. 130 at 3.  Her

9  motion, like the discovery that preceded it, bore almost no relation to the settled claims.

10  One of the subclasses concerned rest breaks, two concerned final wages, two concerned

11  alleged "off-the-clock" work, and six concerned meal break claims distinct from the

12  two-partner claim (e.g., failure to provide two breaks on 10-hour shifts).  *Id*.  In fact, in

13  her 25-page motion, York devoted only *one* page to her two-partner claim.  *Id*. at 15, 21.

14  York filed reports from three experts in support of her motion.  One expert, Becky

15  Wu, conducted a survey of putative class members.  But her 42-question survey asked

16  no questions about wage statements and only one about the two-partner rule.  Dkt. 88-

17  10 at 22.  A second expert, Dr. Robert Fountain, analyzed time records but conducted no

18  analysis relevant to the two-partner or wage statement claims.  Dkt. 88-9 at 2–4.  The

19  third expert, Dr. Jon Krosnick, did not conduct any analysis at all.  Dkt. 88-8.

20  Starbucks filed an opposition to York's class motion and separately moved to

21  strike the Wu and Fountain reports.  Dkt. 103, 104.  The class motion was fully briefed

22  by September 17, 2010.  Dkt. 121.  The Court heard argument in January 2011 and took

23  the motion under submission.  Dkt. 129.  Twice in 2011, the Court invited further

24  briefing regarding the class motion.  Dkts. 130–31, 149, 152, 154.

### 4.    The Parties Mediated York's Class Claims.

26  The parties participated in mediation in November 2010, while the class

27  certification motion was pending.  Prior to the mediation, York's counsel sent Starbucks

28  a letter in which they estimated the monetary value of York's various claims.  *See* Curiel

Dec. ¶ 13 (Exh. G).  The total value, according to York's counsel, exceeded *$860 million*.  *Id.*  York attributed $267 million to the rest break claim, $258 million to the claim for "off-the-clock" work, $256 million to the meal break claims, $82 million to the wage statement claims, and $20 million to the final pay claim.[2]  *Id.*

## C.    The Court Overwhelmingly Denies Class Certification.

On November 23, 2011, the Court issued an order denying class certification of 12 of 13 of York's claims.  Dkt. 155.  The only "relatively minor exception" was York's "two-partner rule" claim.  *Id.* at 3.  In denying certification, the Court held, *inter alia*, that "Plaintiff's personal experience and evidence submitted regarding the experience of other retail store employees belies any argument that Starbucks' operational policies 'systematically generated' labor law violations," that "two of the purported 'subclasses' involve claims that have not been pled in the Complaint," and that another "subclass fails because Plaintiff is not typical of the members of that class."  *Id.* at 3.

The Court rejected the evidence that York had amassed during discovery.  Thus, the Court granted Starbucks motions to strike York's expert reports, holding that "the evidence is not reliable."  Dkt. 155 at 19.  The Court noted, for example, Wu's "numerous departures from established survey procedures and practices," as "Plaintiff's own witness [Dr. Krosnick] demonstrated."  *Id.* at 21-22.  The Court likewise determined that Dr. Fountain's report "should not be given any weight" (*id.* at 26) because, among other reasons, he made "no effort to insure the reliability of the data" he analyzed (*id.* at 24).  The Court was equally dismissive of York's putative class member declarations, noting that "the majority" of them "closely resemble each other and appear to be based on a form" and that, "when viewed individually," they "present a considerably different picture" than York claimed.  *Id.* at 10, n.4.

---

[2] In evaluating fee requests, "Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of plaintiff's success."  *A.D. v. California Highway Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013).

### D.   York Fails To Prosecute Her Remaining Claims.

Following the Court's class certification ruling, the litigation was largely inactive until the end of July 2012.  Aside from taking a 24-minute deposition in March 2012, York pursued no discovery during this eight-month period.  Curiel Dec. ¶ 5, 14.

The only notable activity between November 2011 and July 30, 2012, involved a dispute about who should receive notice of the lone certified claim.  Dkt. 165 at 1-2.  York filed a single, 10-page brief addressing this issue, which the Court resolved in March 2012 without a hearing.  *Id.*.  Starbucks then timely produced the class data.  Still, York did not send notice to the class.  Dkt. 178 at 1-2.

Months later, York filed an *ex parte* motion seeking more time to send the notice, and the Court denied it because of her undue delay:  "[York] has been in the possession of the names and addresses of all potential class members since April 10, 2012, to whom she was ordered to send class notice . . . .  Yet Plaintiff has not yet sent class notice—a responsibility that is entirely hers."  Dkt. 178 at 1–2 (Aug. 10, 2012 Order).

### E.   York Resumes Litigating Her Remaining Claims For Three Months.

York resumed litigating her remaining claims on July 30, 2012, but even then, many of the proceedings had no relation to her alleged success in this case.

First, on July 30, 2012, York filed a motion for reconsideration of the Court's decision denying class certification.  The Court denied the motion, finding that "York's arguments are thoroughly flawed" and that the Court had "already considered the question that Plaintiff now contends has not yet been answered."  Dkt. 192 at 7-8.

Second, also on July 30, York moved for a continuance.  Dkt. 172.  The Court denied this motion too, finding that York had "not acted diligently in preparing for trial," pointing to multiple dilatory acts, including missing the expert disclosure deadline, failing to send class notice, and waiting until the discovery deadline to request class member records.  Dkt. 192 at 13.  The Court explained that it was "incumbent upon"

York to act with diligence if she "truly believed that she could not possibly meet the Court's deadlines," and yet "*for three months she did nothing*." *Id.* (emphasis added).

Third, the parties spent considerable time in August and September 2012 briefing a joint stipulation concerning York's anticipated motion to compel production of class member time and wage records. York insisted on briefing this issue even though, as Starbucks pointed out, the Court's schedule precluded her from filing a motion. *See* Curiel Dec. ¶ 15. York eventually abandoned the motion. *Id.*

Fourth, in August 2013, Starbucks filed a motion for decertification and summary judgment of York's two-partner claim. Dkt. 181. The Court granted the motion in its entirety, finding that York had no evidence that Starbucks ever failed to provide her with an off-duty meal break. Dkt. 206 at 1–2, 9–10 (Nov. 1, 2012 Order). The Court further held that, "[i]n a case such as this, where the named plaintiff cannot maintain a claim for the only claim certified for class treatment, decertification is proper." *Id.* at 9. The Court also rejected York's claim for an injunction because, as she conceded, she did not have standing to seek that relief. *Id.* at 8-9. When York requested more time to find a new plaintiff, the Court refused to "foster further foot-dragging by Plaintiff." *Id.*

Aside from this motion practice—none of which contributed to York's alleged success—and preparing pretrial pleadings, the activity during this period involved only the parties' motions for summary judgment on York's claim under PAGA that her wage statements failed to list an overtime rate. Dkt. 170, 187. These motions were fully briefed by September 17, 2012. Dkt. 121. Notably, York's motion included a brief of a mere seven pages and a separate statement identifying only eight facts. Dkt. 170-1, 170-2. While the Court agreed with York that her wage statements failed to properly state the overtime rate, it denied her request "for the maximum penalties authorized under PAGA." Dkt. 170, 207 at 2-3.

## F.    The Parties Reach A Settlement.

On November 5, 2012, roughly three months after York began litigating her remaining claims, the parties informed the Court that "a settlement has been reached to

1  resolve the instant action in its entirety." Dkt. 209.  The settlement resolves York's
2  claims regarding the overtime rate on the wage statements and the two-partner rule.  The
3  settlement amount is $3 million, roughly $2.5 million of which is available to the
4  161,000 class members.  Dkt. 218-1, pp.4-38, 219.

5      In June 2013, the settlement administrator notified the class members of the
6  settlement and their right to receive a payment.  Fewer than 13,000 class members—
7  roughly 8 percent—elected to participate in the settlement.  Curiel Dec. ¶ 16.

8  ## III.  YORK'S REQUEST FOR ATTORNEYS' FEES SHOULD BE REJECTED.

9      In claiming entitlement to fees for nearly every hour they invested, with total
10 disregard for the fact that the lawsuit was largely unsuccessful, York's counsel ignores
11 both the governing legal standards and the history of the litigation.  For this reason,
12 among others discussed below, her motion should be rejected.  Indeed, any fee award
13 could appropriately be only a small fraction of the amount requested.

14 ### A.    Several Of The Fee Provisions York Cites Are Inapposite.

15     In demanding more than $4 million, York's counsel relies on several fee statutes
16 that simply cannot apply.  For example, they cite Labor Code sections 218.5 and
17 1194(a), which apply only to the "nonpayment of wages" and recovery of "minimum
18 wage" and "overtime compensation," respectively.  Cal. Lab. Code §§ 218.5, 1194(a).
19 But "neither section 1194 nor section 218.5 authorizes an award of attorney's fees to a
20 party that prevails on a [meal or rest break] claim."[3]  *Kirby v. Immoos Fire Protection,*
21 *Inc.*, 53 Cal. 4th 1244, 1248 (2012).  Nor do they apply to a wage statement claim, since
22 the only monetary relief available is a penalty, not a "wage."

23     York's reliance on Labor Code section 226(e) is similarly misplaced.  That statute
24 applies to wage statement claims only, so it cannot support a fee award based on York's
25 two-partner claim.  *See* Cal. Lab. Code § 226(e).  Moreover, even as to wage statement

---

[3] York contends that her two-partner meal break claim would permit recovery of unpaid wages because, during in-store meal breaks, employees were "not compensated for 'off-the-clock' work." Mot. at 5.  In fact, as York knows, in-store meal breaks are taken *on the clock*.  (Dkt. 155 at 6-7.)

claims, this statute authorizes relief only when a plaintiff proves an "injury" based on a violation. As the Court held, York suffered no injury. Dkt. 147 at 2.

Finally, York makes passing reference to Labor Code section 226(h), which provides for fees in connection with claims for injunctive relief. This section does not apply because the Court granted judgment for Starbucks on York's claim for an injunction after York conceded that she had no standing to seek that relief. Dkt. 206.

### B. York Failed To Prove Entitlement To Fees Under Any Statute.

Under any fee statute that could apply, York "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008); *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992) (party seeking fees has "burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount'").

"In determining the lodestar amount, a prevailing party generally *may not* recover for work on causes of action on which the party was unsuccessful." *Mann*, 139 Cal. App. 4th at 342 (reducing fee request by 50 percent to account for limited success) (emphasis added). In fact, "California law, like federal law, considers the extent of a plaintiff's success a *crucial factor* in determining the amount of a prevailing party's attorney fees." *Environmental Protection Info. Ctr. v. Cal. Dept. of Forestry and Fire Protection*, 190 Cal. App. 4th 217, 238 (2010) (emphasis added); *see also Harris v. Marhoefer*, 24 F. 3d 16 (9th Cir. 1994) (fees properly reduced by 50 percent where plaintiff did not succeed on several claims); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1018 (2001) (where plaintiff presents "'distinctly different claims for relief that are based on different facts and legal theories,' he or she cannot recover fees incurred in pursuing an unsuccessful claim") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)); *San Diego Police Officers Ass'n v. San Diego Police Dep't*, 76 Cal. App. 4th 19, 24 (1999) (court properly reduced fees where party some claims failed);

*Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 973 (1989) (no error in reducing fees by 35 percent based on plaintiff's limited success).[4]

The fee applicant bears the burden of proving the fees attributable to her successful claims. *ComputerXpress*, 93 Cal. App. 4th at 1020; *see also Whitty v. First Nationwide Mortg. Corp.*, No. 05-CV-1021H, 2007 WL 628033, at *14 (S.D. Cal. Feb. 26, 2007) (moving party "bear[s] the burden of providing documentation regarding the appropriate hours expended on their successful claim . . . "); *Christian Research Inst.*, 165 Cal. App. 4th at 1320 (fee motion "should allow the court to consider . . . how much time the attorneys spent on particular claims").[5]

*Perez v. Safety Kleen* applied this principle in similar circumstances.  No. C 05-5338 PJH, 2010 WL 934100 (N.D. Cal. Mar. 15, 2010).  That case was a meal break, rest break, and wage statement class action in which the plaintiffs achieved only limited success in light of unfavorable summary judgment and certification rulings.  The court awarded plaintiffs only 50 percent of their $1.6 million in requested fees in part because the evidence supporting the request did not specify the time spent on the successful

---

[4] York broadly claims that the lodestar should not be reduced regardless of a party's limited success, but the cases she cites say no such thing.  Mot. 7-9.  *Fischer* involved civil rights statutes not at issue here but still acknowledged that "'low fees or no fees'" may be due when a plaintiff "receives only limited or 'technical' success," as measured by comparing "the relief the plaintiff originally sought in his complaint with the relief he ultimately obtained."  *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119-20 (9th Cir. 2000) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  In *Las Virgenes*, the trial court did reduce the fees in light of the plaintiff's "unsuccessful two causes of action."  *Vo v. Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440, 444 (2000).  Moreover, the court of appeal declined to reduce the lodestar *not* because a reduction based on partial success is improper, but rather because the defendant had failed to provide a record of the trial proceedings from which fees could be assessed.  *Id.* at 447-48.  Finally, the *Beaty* court did not hold that a reduction is disfavored, but rather held that it simply could not determine whether the district court had exercised its discretion to reduce the lodestar.  *Beaty v. BET Holding, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000).

[5] While York's counsel urges the Court to defer to their "professional judgment" regarding which fees should be awarded (Mot. at 15-19), the cases they cite for this point are inapposite.  In *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), the court commented about the lawyer's "professional judgment" in evaluating whether fees were duplicative, not in deciding whether fees related to successful claims as opposed to unsuccessful claims.  And the *Reed* court did not hold that any "hours incurred in response to a party on the offensive are *per se reasonable*."  Rather, it simply explained that the opponent's hours may be "a useful guide in evaluating the appropriateness of time claimed."  *Reed v. Democratic Party of Wash. State*, 388 F.3d 1281, 1287 (9th Cir. 2004).

claims, as opposed to the time spent on the unsuccessful claims. *Id.* at *7. "[T]he failure to properly itemize time spent on all claims makes it impossible for the court to determine what work was performed in relation to the recoverable claims." *Id.* at *8.

This conclusion applies with greater force here. York made no effort to identify any fees incurred in litigating the only claims on which she can assert success. Nor has she offered any information from which the Court could distinguish any recoverable fees. Instead, York audaciously seeks *all* of the fees she incurred, without even acknowledging the many claims on which she achieved no success whatsoever.[6] York, of course, spent most of her time pursing these claims for which she recovered nothing:

- her claims for "off-the-clock" work, which she valued at $258 million and on which the Court denied class certification;

- her rest break claim, which she valued at $267 million and on which the Court denied class certification;

- her final pay claims, which she valued at $20 million and on which the Court denied class certification;

- her six meal break claims unrelated to the two-partner rule, which account for nearly all of her $256 million valuation and on which the Court denied certification; and

- her two other wage statement claims, which represent the vast majority of her $82 million valuation, and on which the Court granted judgment for Starbucks.

York's counsel may not simply ignore the fact that almost every claim was unsuccessful and then demand every penny that they invested. Nor may they claim that their unsuccessful claims are not, in fact, "distinct" from the settled claims, having insisted that each of the class claims "*was keyed to a distinct theory of liability*." Dkt. 130 at 3 (emphasis added); *see also Perez,* 2010 WL 934100, at *1, 8 (holding that

---

[6] York claims that her lodestar already reflects "a 10% discount," but she does not attribute this reduction to the fact that her lawsuit largely was unsuccessful. Mot. at 3:6, 11:11. Rather, she attributes the "discount" to her lawyers' inefficiency, noting that substantial work was performed by attorneys who were "not primarily involved with litigating the action." *Id.* at 11:14

unsuccessful meal and rest breaks claims were distinct from waiting time penalty and improper wage statement claims for purposes of awarding fees).  In short, the law requires that York's counsel prove the fees they incurred in prosecuting the claims on which they assert that York prevailed.  Having made no effort to do so, the Court has no ability to determine which fees are, in fact, recoverable.  Her total failure to even acknowledge—let alone attempt to meet—her burden would justify denying her request altogether.  *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 976 (2010) ("Here, we further conclude that, in light of plaintiff's minimal success and grossly inflated attorney fee request, the trial court did not abuse its discretion in denying attorney fees.").[7]

## C.     York's Fees Overwhelmingly Relate To Her Failed Class Claims.

If York had attempted to satisfy her burden of identifying the fees incurred in litigating the settled claims, it would be clear that a massive reduction is in order.  The history of this litigation shows without question that the vast majority of fees incurred relate to the claims for which York achieved no success whatsoever.[8]

### 1.     Prior To November 2011, York Pursued Her Failed Class Claims.

Until November 2011, the case almost exclusively concerned York's 13 "distinct" class claims.  Indeed, York contends that her counsel incurred *3,000 hours* in connection with class certification alone.  All this work bears no relation to the settled claims:

---

[7] Having made no evidentiary showing to address her burden of proving the fees and costs related to her "successful" claims, York is barred from doing so on reply. *See Davis v. Sundance Apartments,* No. CIV S-07-1922 FCD GGH, 2008 WL 3166479, at *3 (E.D. Cal. Aug. 5, 2008) (new evidence and argument in support of fee motion may not be introduced on reply); *ThermaPure, Inc. v. Water Out Oregon, Inc.,* No. C11-5859, 2013 WL 173013, at *1 (W.D. Wash. Jan. 16, 2013) (same); *see also Aviva USA Corp., v. Vazirani,* 902 F. Supp. 2d 1246, 1254 fn. 1 (D. Ariz. 2012) ("[i]t is well accepted that raising of new issues and submission of new facts in [a] reply brief is improper" since it deprives opponent of "any opportunity to respond.") (internal citations omitted).

[8] Because York was required to prove the fees she incurred in litigating the claims on which she purportedly prevailed, her attempt to justify spending 8,000 hours pursuing *all of her claims* is entirely irrelevant.  Remarkably, her expert, who apparently specializes in analyzing attorney fee awards, failed to even consider the degree to which York succeeded.  For this reason, among others, Starbucks will move to strike his report.  Moreover, the two cases York cites to justify her 8,000-hour investment— *Lemus v. H&R Block Enterprises,* No. 09-3179, 2012 U.S. Dist. LEXIS 128514 (N.D. Cal. Sep. 10, 2012), and *Harris v. Vector Mktg. Corp.*, No. 08-5198, 2011 WL 4831157 (N.D. Cal. Oct. 12, 2011)— stand in stark contrast to this action.  Both involved much more valuable settlements ($35 million in *Lemus* and $13 million in *Harris*) and fee awards paid out of a common fund.  And in neither case did the plaintiff overwhelmingly lose and then demand payment for every dollar in fees incurred.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

- York served hundreds of document requests and interrogatories, only three of which specifically concerned the settled claims.

- York deposed three Rule 30(b)(6) witnesses, only one of whom addressed either the two-partner claim or the pay rates listed on the wage statements—totaling nine pages of testimony.

- York filed two discovery motions, but one sought class member information for the "anticipated motion for certification," which the Court overwhelmingly denied, and the other involved 26 written discovery requests, only three of which related to the settled claims.

- The parties conducted class member depositions, but the witnesses answered few, if any, questions about the two-partner rule or wage statements.

- York opposed Starbucks motion for an order denying certification of York's claims, but the Court eventually agreed with Starbucks that those claims were not suitable for class treatment.

- York opposed Starbucks motion for summary adjudication of the claims for off-the-clock work, late final wages, and wage statement violations, but Starbucks ultimately prevailed on each, as the Court denied certification on all of them and granted judgment for Starbucks on the wage statement claims under Section 226.

- York's counsel collected hundreds of declarations to support her class motion, but *not one of them* addressed the pay rates listed on the wage statements, and, in any event, the Court afforded them no weight because they were "based on a form" and "present[ed] a considerably different picture" than York claimed.

- York's counsel retained three experts to support the class motion, but they said virtually nothing about the settled claims, and, in any event, the Court either rejected their work as "not reliable" (Wu and Dr. Fountain) or afforded it no weight whatsoever (Dr. Krosnick).

- York's counsel prepared a class certification motion, but all but one page was devoted to the failed claims, including the rest break claim, two final pay claims, two "off-the-clock" claims, and six "distinct" meal break claims.

All of this work indisputably concerned the numerous class claims that the Court rejected in November 2011.  At a minimum, this unrecoverable work includes the 3,000 hours York claims for "class certification," the 871 hours she claims for "depositions,"

and nearly all of the 386 hours she claims for "discovery."  Mot. at 11.  It also includes
the vast majority of the fees she claims for "motion practice/legal research" (1,747
hours), "case management" (375 hours), "investigation and legal research" (347 hours),
"litigation strategy" (163 hours), and "court appearances" (48 hours).  Mot. at 11.
Likewise, many of the nearly 700 hours York claims for "mediation" must relate to the
initial mediation, which concerned only her class claims—not those that later settled.

Simply put, York has identified *no* fees incurred prior to the Court's class
certification ruling that were related to the claims she settled.  She failed to identify any
fees related to the two-partner claim, which the Court initially certified but later
decertified and rejected as a matter of law.  Nor has she identified any fees incurred
during this period that are related to her claim for PAGA penalties based on her wage
statements' description of the overtime rate.  Both of these claims were a mere
afterthought in the litigation prior to the class certification decision.

In short, the docket and discovery record prove that the period prior to 2012
involved the vast majority of activity in this case and that, during that period, York
incurred extremely little in fees in litigating the claims that the parties later settled.  Any
fee award must reflect these incontrovertible facts.  *Harrington v. Payroll Entertainment
Services, Inc*., 160 Cal. App. 4th 589, 595 (2008) (in proposed class action for unpaid
wages, fee award limited to $500 where work pertained to failed motion for class
certification); *see generally Hensley v. Eckerhart*, 461 U.S. at 440 (vacating fee award in
class action where district court failed to exclude time spent on unsuccessful claims, and
finding "[w]here the plaintiff has failed to prevail on a claim that is distinct in all
respects from his successful claims, the hours spent on the unsuccessful claim should be
excluded in considering the amount of a reasonable fee").

2.   <u>York Incurred Virtually No Recoverable Fees In The Period
Following The Class Certification Decision.</u>

After November 2011, York largely failed to prosecute her remaining claims for a
period of eight months.  During this period, she took one 24-minute deposition but

pursued no other discovery.  The only other notable activity involved the dispute regarding the recipients of the class notice, but that issue involved little work, as it was decided based on 10-page briefs and without a hearing.  Moreover, even after the Court resolved the dispute, York's counsel inexplicably failed to send the class notice—"a responsibility that [was] entirely hers."  Dkt. 178 at 1–2.  Because York's counsel's lack of diligence rendered the notice issue a nullity, they should not recover any related fees. *See Jadwin v. Kern*, 767 F. Supp. 2d 1069, 1108-09 (E.D. Cal. 2011) (reducing lodestar to account for time spent on wasteful litigation tactics, including filing "unnecessary" motions and motions "without . . . legal basis"); *Rodriguez v. West Pub. Corp.*, No. CV 05-3222 R(MCx), 2010 WL 682096, at *4 (C.D. Cal. Feb. 3, 2010) (reducing lodestar to account for "work performed that conferred no benefits on the [c]lass").

       3.    <u>York Incurred Relatively Little In Recoverable Fees After July 2012.</u>

While York began litigating her remaining claims on July 30, 2012, this period of activity lasted only three months, as the parties reached a settlement in early November. Moreover, this period was dominated by work totally unrelated to York's "success:"

- York spent time litigating her motion for reconsideration of the class decision, which the Court rejected as "thoroughly flawed."  Dkt. 192 at 7.

- York filed a motion for a continuance, which the Court denied because she had "not acted diligently in preparing for trial."  *Id.*

- York spent considerable time briefing a joint stipulation concerning an anticipated motion to compel, which she later abandoned.

- York spent substantial time opposing Starbucks motion for decertification and summary judgment of the two-partner claim, which the Court granted in full.

York has no conceivable claim that she is entitled to the fees incurred in connection with any of this motion practice, none of which contributed to her alleged success.  *E.g., Harman v. City and County of San Francisco*, 158 Cal. App. 4th 407, 424-26 (2007) (trial court erred in failing to reduce fees to account for time spent on unsuccessful motion practice); *Perez,* 2010 WL 934100, at *8-10 (reducing fee award to

account for time spent litigating unsuccessful break claims).  Rather, the fees incurred after November 2011 that are even *potentially* recoverable should be limited to those incurred in briefing the PAGA summary judgment motions—including York's own seven-page brief—and preparing for trial.  York has identified no such fees.

### D.   Even The Fees Related To The Settled Claims Must Be Reduced.

Even if York had tried to meet her burden of proving the fees incurred in pursuing the claims on which she "succeeded," a major reduction of *those* fees would be due.

#### 1.   The Settlement Amount Reflects Extremely Limited "Success."

Again, a fee award must bear some relation to the party's degree of success.  *See Harman*, 158 Cal. App. 4th at 420; *Meister v. Regents of University of California*, 67 Cal. App. 4th 437, 454) (1998); *Sokolow v. County of San Mateo*, 213 Cal. App. 3d 231, 250 (1989).  Courts evaluate the degree of success by comparing the results obtained to the recovery actually sought.  For example, a court properly reduced the lodestar by 66 percent when, after protracted litigation, a plaintiff who originally sought $425,000 in damages settled for only $32,000.  *See Ingram v. Oroudjian*, 647 F.3d 925, 927-28 (9th Cir. 2011).  Likewise, when a plaintiff sought $5 million but recovered only $25,000, the court properly reduced the lodestar by 50 percent.  *See Harris v. Marhoefer*, 24 F.3d 16, 18-19 (9th Cir. 1994); *see also Morales v. Whole Foods Market, Inc*., No. C 12-01072 CRB, 2013 WL 3967639, at *1, 6 (N.D. Cal. Jul. 31, 2013) (reducing lodestar by 80 percent where plaintiff recovered only "modest monetary damages"); *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1507 (1987).

York's fee request bears no relation to these standards.  While she claims "success" on the settled claims, she does so in a vacuum, with no regard for what she sought to achieve.  When the settlement is placed in proper context, York's "success" can only be viewed as negligible.  Thus, based on her counsel's estimates, York's claims were potentially worth more than *$860 million*.  After the Court largely disposed of the case on class certification, York settled for roughly 0.3 percent of this amount.

Even after the class decision, according to York's counsel, the remaining wage statement claim was worth "*well into the tens of millions of dollars*," and her two-partner claim was worth an additional $3 million.[9]  Curiel Dec. ¶ 17.  In settling for a fraction of this amount, York compromised her remaining claims at a steep discount, in recognition of the problems she faced in trying to obtain a large award at trial and in defending it on appeal.  Dkt. 219 at 14.  Because York recovered only a small fraction of the amounts she sought, her fees should be dramatically reduced.

York's limited success is further illustrated by the class members' minimal participation in the settlement.  Low participation may justify a fee reduction because it suggests that "class members did not feel they were wronged" or "did not value the benefit high enough to warrant filing a claim."  *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (reducing fees where 18 percent of class members participated in settlement).  That is precisely the case here, where the participation rate is only *eight percent*.  Curiel Dec. ¶ 16.  This result is not surprising, since employees suffered no conceivable "injury" as a result of the wage statements lacking an explicit overtime rate (Dkt. 147 at 5-6) and already were paid for their time if they ever took a meal break in the store (Dkt. 155 at 6-7).

### 2.   The Agreement Confers No Other Noteworthy Value.

Again, York obtained no "injunction" because the Court ruled—and York conceded—that she lacked standing to seek such relief.  While the parties *agreed* to certain non-monetary measures, those measures reflect little significant value.

First, while Starbucks will include a numeric overtime rate in its wage statements, such action "can hardly be described as 'exceptional' within the meaning of applicable jurisprudence," given that York already "was aware that the overtime rate of pay was a

---

[9] According to York, 30 percent of the 90,000 employees who were eligible for PAGA penalties "typically" experienced two to four wage statement violations. Dkt. 219 at 13. Based on these estimates, and assuming three violations on average, the total potential penalties exceeded $13.5 million (27,000 employees times $500, representing $100 in penalties for an initial violation and $200 in penalties for the alleged subsequent violations).

time and a half her hourly rate." *McKenzie v. Federal Express Corp.*, No. CV 10-02420 GAF (PLAx), 2012 WL 2930201, at *8-9 (C.D. Cal. July 2, 2012) (fee request reduced where pay statement violations did not deprive employees of wages and missing information could be "determined . . . with modest effort"); Dkt. 147 at 5.

Second, while Starbucks agrees that its rest break policy will contain the term "major fraction thereof," this term represents no change whatsoever. Starbucks added this language to its policy in 2011, long before the parties reached a settlement. *See Cummings v. Starbucks*, No. CV-06345-MWF-FFM, Dkt. 63 (C.D. Cal.) at 8-15 (Opp. to Class Cert.), 63-2, 63-6 (Rutt Dec. ¶ 6, Ex. D - 2011 Partner Guide). Moreover, as Starbucks has explained at length in the related *Cummings* action, the Company has always scheduled rest breaks for every "major fraction" of a four-hour period. *Id*. The update to the written policy simply memorialized the long-standing practice.

Finally, with respect to the "two-partner rule," Starbucks merely agreed to utilize "on-duty" waivers "or implement other changes to eliminate potential violations," which York could not prove ever occurred. Dkt. 219-1, Exh. A at ¶ 17.9. Since Starbucks already pays employees if this circumstance ever arises (Dkt. 155 at 6-7), agreeing to attempt to avoid possible violations is akin to modifying a wage statement— not the sort of "changes to [employer's] personnel policies" that add "significant monetary value to class members." *McKenzie*, 2012 WL 2930201, at *9.

### E.   A Further Reduction Is Due Because York Violated A Court Order.

The Court has broad discretion to reduce a fee award based on the quality of representation. *E.g.*, *Jacquette v. Black Hawk County, Iowa*, 710 F.2d 455, 459 (8th Cir. 1983) (reduction based on counsel's "'misconduct' in conducting the litigation"); *Jadwin*, 767 F. Supp. 2d at 1131 (court may reduce lodestar based on unprofessional conduct). A further reduction is warranted here because York's counsel violated the Court's protective order by using confidential information to drum up a new lawsuit.

The Court's protective order states that all "Confidential Material" "will be for use in these proceedings only." Dkt. No. 21 at 3. It further states that "employee

personnel data and/or contact information" may be designated confidential. *Id*. at 2. When Starbucks produced class member contact information to York, it designated it "confidential" pursuant to the order. Curiel Dec. ¶ 18.

In April 2012, two of the putative class members whose contact information Starbucks produced—Rebecca Birdsall and Tahirah Thompson—filed a new lawsuit against Starbucks. They asserted the same claims as York (e.g., alleged "off-the-clock" work, break violations, non-compliant wage statements, and late final pay) on behalf of many of the same individuals (e.g., assistant managers in California). *Birdsall v. Starbucks*, No. 2:12-cv-06165-GAF-PJW, Dkt. 1. At deposition, Birdsall and Thompson testified that their lawsuit came about because York's counsel first contacted them and then referred them to Mark Yablonovich—a member of Initiative Law Group when the Court entered the protective order here—to file a new lawsuit. Curiel Dec. ¶ 19, ¶ 21, Ex. O (Thompson Tr. at 32:11-14 & 177:3-14), Ex. P (Birdsall Tr. at 25:23 – 29:17).

This scheme is the same as that perpetuated by these lawyers in *Clarke v. First Transit, Inc*., No. CV-07-06476 GAF (JCGx), Dkt. No. 142 (C.D. Cal. 2012). There, the Court sanctioned Initiative Law Group for using class member contact information to file a new mass action against First Transit, while referring the first action to Yablonovich for continued prosecution. This "sole act of <u>using</u> the confidential information to file [another] action constituted a sanctionable violation of the [protective order]." *Id*. at 21-23 ("[t]his violation has resulted in one of the situations that First Transit no doubt intended the [protective order] to avoid: ILG has used the protected information to file yet another massive lawsuit against First Transit.").

York's counsel's conduct is virtually identical here. As a result of their misuse of confidential information to file another action, Starbucks incurred nearly $200,000 in fees and costs in defending against the *Birdsall* lawsuit, until the plaintiffs abandoned their class claims after Starbucks identified the misconduct. Curiel Dec. ¶ 20; *Birdsall* Dkt. 23. As a sanction for this misconduct, Starbucks fees and costs should be offset against any fee award. *See Life Techs. Corp. v. Biosearch Techs., Inc*., No. C–12–00852

WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012) ("Rule 37 . . . grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f).").

### F.   The "Common Fund" Method Further Undermines York's Motion.

Even when a party seeks its lodestar, "courts in this state have, in effect, adopted the common federal practice of 'cross-checking' the lodestar against the value of the class recovery." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 45 (2000); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011) ("California courts use [the percentage-of-the-benefit] cross-check not only in conventional common fund cases but also in cases in which the defendant creates a common fund for the benefit of the class members and agrees to pay attorneys' fees separately"); *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615, 628 (2000).

"In performing [the] cross-check, courts use the Ninth Circuit benchmark of 25 percent for awards of attorney fees in common fund cases.  That is, the Lodestar award should typically be no more than 25% of the common fund." *McIntosh v. McAfee, Inc.*, No. C06–07694 JW, 2009 WL 673976, at *4 (N.D. Cal. Mar. 13, 2009) (citation omitted); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("25 percent of the fund [is] the 'benchmark'"); *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 n.13.

This Court's decision in *McKenzie*, where the plaintiff sought fees in excess of the "benchmark," is illustrative.  2012 WL 2930201, at *7.  There, the plaintiff recovered $8.25 million for a class of approximately 14,000 individuals and also obtained several remedial changes to the defendant's wage statements. *Id.* at *1–2.  The Court found these results to be "hardly . . . 'exceptional'" and declined to award fees higher than 25 percent of the settlement amount. *Id.* at *8, 11; *see also Suzuki v. Hitachi Global Storage Technologies, Inc.*, No. C 06-7289 MHP, 2010 WL 956896, at *5 (N.D. Cal. Mar. 12, 2010) (reducing lodestar from 100 percent of class settlement value to "benchmark 25%" in light of limited success).

York's settlement pales by comparison.  It involves less than half the money and more than 10 times the number of class members.  This result is far short of "exceptional."  Under the common fund approach, therefore, York's counsel would recover fees of "*no more than* 25%" of $3 million—or $750,000.  *McIntosh*, 2009 WL 673976, at *4 (emphasis added).  Of course, for all the reasons set forth above, York has failed to prove a recoverable lodestar even close to this amount.

## G.   York's Remaining Arguments Are Unavailing.

York's counsel argues that an award of more than $4 million is appropriate because this case was "complex."  Mot. at 10–19.  But the complexity they note overwhelmingly involved York's *unsuccessful* claims.  Moreover, in evaluating a fee motion in a similar case, this Court explained, as it had "previously noted, wage and hour litigation is not as legally complex as other types of litigation . . . ."  *McKenzie*, 2012 WL 2930201, at *10.  York's perspective of the one claim on which she achieved some measure of success—the claim that her wage statement should have included an express overtime rate—confirms this observation, as evidenced by her seven-page summary judgment motion.  Dkt. 170-1.  Indeed, the supposedly complex issues York cites are the same issues that the Court rejected in *McKenzie*—e.g., whether PAGA required proof of injury, whether PAGA is subject to Rule 23, and whether *Dukes v. Wal-Mart* impacted the class certification decision.  *McKenzie*, 2012 WL 2930201, at *9.

Nor should York's counsel be rewarded for pursing this case on a contingency basis.  "Class counsel's circumstances are a commonplace with all attorneys who serve as plaintiffs class counsel.  It is a risk that counsel voluntarily undertook and is not worthy of an exceptional award."  *McKenzie*, 2012 WL 2930201, at *11.[10]

---

[10] The cases York cites in which courts awarded a multiplier are plainly distinguishable because they did not involve plaintiffs whose claims overwhelmingly failed.  *See Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 285, 290-91 (2010) (case involved, *inter alia*, 12 summary judgment motions and 17 days of trial after which court granted judgment in plaintiff's favor on sole issue tried); *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 550, 552, 556-58 (settlement involved $10.75 million in class benefits and defendant *agreed* to amount of fees sought); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217-18 (2008) (contingent risks important to multiplier determination where claims were "*largely resolved in plaintiff's favor*'") (emphasis added).

**IV.   YORK'S REQUEST FOR COSTS SHOULD BE REJECTED.**

As with fees, York bears the burden of proving the costs she expended in litigating the claims on which she asserts success.  *See Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1047 (C.D. Cal. 2012) ("the Court may apportion costs on successful and unsuccessful claims."); *Perez*, 2010 WL 934100, at *10 (costs not allowed where requesting party fails to substantiate that they were incurred in connection with successful claim); *ComputerXpress*, 93 Cal. App. 4th at 649.

York completely ignores this burden, demanding every dollar she expended without acknowledging that her lawsuit overwhelmingly failed.  She identifies no costs that are related to the settled claims.  Nor does she provide any information from which the Court could distinguish the costs that may be recoverable from those that are certainly not.  Her request for costs should be flatly rejected.  *See generally Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (district court abused discretion by awarding costs that party failed to substantiate).

In ignoring their burden, York's counsel identified a number of substantial costs that bear absolutely no relation to any "success" York achieved.  For example, they claim more than $64,000 in costs paid to their experts, but none of the experts provided any opinion or analysis whatsoever regarding the settled claims.  Moreover, the Court either struck their reports as unreliable (Wu and Dr. Fountain) or afforded them no weight whatsoever (Dr. Krosnick).  Indeed, Dr. Krosnick merely provided a report stating that he could conduct a survey for use at trial (Dkt. 88-8)—*but then never did*. Dkt. 192 at 13 ("Had Plaintiff acted promptly and diligently . . . she would have completed, or nearly completed, the survey she claims to so desperately need.").  These expert costs are clearly not recoverable.  *See Sanford v. GMRI, Inc*., CV.S 04 1535 DFL CMK, 2005 WL 4782697, * 4 (E.D. Cal. Nov. 14, 2005) (reducing expert fees to account for time spent on unsuccessful claim); *Perez,* 2010 WL 934100, at *10.

York also claims an incredible amount—more than $72,000—for "Updat[ing] Contact Information" ($44,000) and "Postage and Mailings" ($28,000), but she provides

no explanation for why these costs were necessary to litigate the settled claims.  Her claim for these costs is especially puzzling, given that Starbucks produced updated contact information in April 2012, and York never sent notice of the lone certified claim. If York incurred these costs in connection with obtaining declarations for purposes of her class motion, they are not recoverable, because every class claim failed.

York also claims more than $43,000 in deposition-related costs, including travel, but most of these costs cannot be attributed to the settled claims.  For example, York's counsel traveled to Seattle for two Rule 30(b)(6) depositions that were totally unrelated to the settled claims.  And while some class members gave testimony in connection with York's class motion, those depositions barely touched on the settled claims.

Finally, York claims several other categories of costs—legal research, document management, copying, and telephone costs—that certainly apply equally (if not predominantly) to her failed claims, too.  Thus, managing documents relating to a final paycheck sampling has no bearing on the settled claims.  The same is true for any research or investigation regarding the many "operational policies" upon which York unsuccessfully sought certification.  York may not lay claim to all these costs without attempting to distinguish those that actually relate to her purported success.

Because York incurred most of her costs in pursuing her failed claims, and because she has provided no information that would permit the Court to distinguish those costs that may be recoverable from those that certainly are not, she has not met her burden.  Her request, therefore, should be rejected.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, York's request for attorney's fees and costs should be rejected and any amount awarded should be dramatically reduced.

Dated:  September 13, 2013

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By   */s/ Gregory W. Knopp*
Gregory W. Knopp
Attorneys for Defendant Starbucks Corporation

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 2400, Los Angeles, California 90067.  On September 13, 2013, I served the foregoing document(s) described as: **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 13, 2013 at Los Angeles, California.

Carmen Ayala
[Print Name of Person Executing Proof]

*/s/ Carmen Ayala*
[Signature]